AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |  |
|---|---|---|
| ) | | |
| ) | | |
| ) | | |
| ) | | |
| _____ ) | | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| | ) | |
| | ) | |
| _____ ) | | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                                          *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*
                                                                                            .


My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .


I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

_____ Division

|   |   |   |
|---|---|---|
| | ) | Case No. _____ |
| | ) | |
| | ) | *(to be filled in by the Clerk's Office)* |
| | ) | |
| _____ | ) | |
| *Plaintiff(s)* | ) | |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) | |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) | |
| *please write "see attached" in the space and attach an additional* | ) | |
| *page with the full list of names.)* | ) | |
| **-v-** | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |
| *(Write the full name of each defendant who is being sued.  If the* | ) | |
| *names of all the defendants cannot fit in the space above, please* | | |
| *write "see attached" in the space and attach an additional page* | | |
| *with the full list of names.)* | | |

## COMPLAINT AND REQUEST FOR INJUNCTION

I.     **The Parties to This Complaint**

   A.     **The Plaintiff(s)**

   Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

|   |   |
|---|---|
| Name | _____ |
| Street Address | _____ |
| City and County | _____ |
| State and Zip Code | _____ |
| Telephone Number | _____ |
| E-mail Address | _____ |

   B.     **The Defendant(s)**

   Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title *(if known)*.  Attach additional pages if needed.

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

Defendant No. 1

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 2

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 3

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 4

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  *(check all that apply)*

❐ Federal question                    ❐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

_____

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff,  *(name)* _____, is a citizen of the State of *(name)* _____ .

b.    If the plaintiff is a corporation

The plaintiff,  *(name)* _____, is incorporated under the laws of the State of *(name)* _____ ,

and has its principal place of business in the State of *(name)* _____ .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

The defendant,  *(name)* _____ , is a citizen of the State of *(name)* _____ . Or is a citizen of *(foreign nation)* _____ .

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

      b.     If the defendant is a corporation

The defendant, *(name)* _____, is incorporated under

the laws of the State of *(name)* _____, and has its

principal place of business in the State of *(name)* _____.

Or is incorporated under the laws of *(foreign nation)* _____,

and has its principal place of business in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.     The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

_____

## III. Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the injunction or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.     Where did the events giving rise to your claim(s) occur?

_____

B.     What date and approximate time did the events giving rise to your claim(s) occur?

_____

C. What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

The business relationship was formed on deceptive business practices and false statements of services to be provided and fees being all inclusive by Georgia Morhbacher on behalf of Cloud Kitchens. In my brief the details of the aforementioned communications resulting in the approved transaction by my son Teo Powell who funded the business initially from his brokerage account. In addition the company operates in unsafe practices as there are no twenty four hour facilities managers that are qualified HVAC Osha certified facilities manager to shut off gas line in the event of an emergency gas leak or water issues. The promise of nightly general kitchen cleaning (all equipment and floors), weekly hood cleaning and quarterly deep cleaning, marketing, application assistance, and signage were lies. Also charged operational fees prior to any equipment being delivered or me taking complete possession of the space. Charging licensing fees of $3600 monthly in addition to $2000 operational fees and a storage fee of 250 per rack but cannot explain what it is that they are licensing since you cannot license commercial space.

## IV. Irreparable Injury

Explain why monetary damages at a later time would not adequately compensate you for the injuries you sustained, are sustaining, or will sustain as a result of the events described above, or why such compensation could not be measured.

The business model they have imposed with the assistance of their partnership with Tryotter.com is one that gurantees high turn-over of merchants within the building. Not even the franchises that have contracted with them are satisfied and have left their facilities such as TGIFridays left during the month of November acknowledging that their fees for licensing were bogus and the additional fees hidden incurred were not what was promised during the sales pitch. The merchant such as myself can never become profitable because Otter system is used to control sales flow and since Cloud does not advertise or market on your business as stated in the sales presentation you wont pickup the foot traffic needed to sustain the monthly cost in which they rely on and they intentionally donot respond during the onboarding process immediately to take up the time you would have to withdraw from the contract upon discovering the issues mentioned because that would result in a refund of the initial deposit. The organization targets a specific group of consumers as well that are less educated in business but have dream of becoming a food business owner. Merchants are bankrupt or return to prior fields and I

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

I am seeking damages of $200,000 which would include the money given to cloud thus far of $12,259.22 the equipment fees I paid of $4,704.00 and the cost of Food $3,314.00and the additional damages requested in compensatory, and nominal damages. I am also requesting an investigation into Cloud as they are the same executives who left Weworx prior to charges being brought against the company they left and formed this one but also own City Storage systems, LLC an a host of other subsidiaries across the country. The company needs to have the merchants they lease to speak with investigators to share their experience and the pattern of deceptive sales tactics will become very transparent as we all had different sales persons. To temporarily bar the licensing fees until it is determined what it is that the company is licensing you for and to review how many cleints have been illegally evicted without court paperwork. How many sales were effected by the Otter system being turned off on them during business for lack of payment of an invoice within the same month? And, How many have been affected by Otter being down offline or their sales flow experieince with otter directing the sales traffic.

## VI.   **Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   **For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:   _____

Signature of Plaintiff   _____

Printed Name of Plaintiff   _____

### B.   **For Attorneys**

Date of signing:   _____

Signature of Attorney   _____

Printed Name of Attorney   _____

Bar Number   _____

Name of Law Firm   _____

Street Address   _____

State and Zip Code   _____

Telephone Number   _____

E-mail Address   _____

UNITED STATES DISTRICT COURT
*For the*
District of New Jersey


ZENA L. POWELL AKA                    )
THE SOUL KITCHEN                      )
                                      )
        *Plaintiff(s),*               )
                                      )
        -v-                           )
                                      )      Civil Action No. 2:21-CV-20456-CCC-
                               ESK
                                      )
CLOUD KITCHENS INC DBA 500            )
CORTLANDT ST BEL LLC & OTTER          )
COMPUTER INC.                         )
                                      )
        *Defendant(s),*               )      **IN SUPPORT OF COMPLAINT**
                                             **REQUEST FOR AN INJUNCTION**
                                             JURY TRIAL DEMAND

# TABLE OF CONTENTS

Introduction........................ .. ... .. ................... . ......................

Statement of facts........................ . ........................ . ... ............

      Georgia Mohrbacher and Zena L. Powell …………... ... ..... ...
      Onboarding Team…………………………………………..
      Kira Sedgewick and Zena L. Powell………………..... .. ....
      Kip Beach and Zena Powell…………………………………

Violations Alleged for Relief...........................................

      The Soul Kitchen should be Granted Relief
      Determining that Georgia Mohrbacher, Kira Sedgewick,
      Laura Collections & Billing Specialist, and Kip Beach Regional director
      acting in their official capacity for Cloud Kitchens DBA
      500 Cortlandt St Bell LLC and Otter Computer Inc. as co-conspirators
      with Cloud Kitchens Is in violation of the FTC Act Section 5(a)
      Unfair or Deceptive trade Practices, Title 18 U.S.C. §1341
      Frauds and Swindles, Title 18 U.S.C. §1038 (b)
      False information and Hoaxes, Title 15 U.S.C. §45 (b) Consumer review
      Protection, and The Lanham Act under section 43(a)
      False or misleading advertising. The State of New Jersey
      Real estate License act N.J.S.A. 45:15-16.45
      Submission of applicant to the courts; methods of service,
      45:15-16.46 Violations by brokers, salespeople; fines, penalties
      And The State of New Jersey Consumer Fraud Act
      56:8-1 and 56:8-2 An act concerning consumer fraud its
      prevention and penalties thereof.

1.  Federal Violations Alleged for Relief
      Federal Trade Commission Act Section 5(a)…………………………
      Unfair and Deceptive Business Practices…………………………….
      ................................................
      18 U.S.C. §1038 (b) False information and Hoaxes…………………
      15 U.S.C. §45 (b) Consumer review Protection………………….....
      The Lanham Act under section 43(a)
      False or misleading advertising…………………………………….

2.  Second New Jersey State Codes Violation Alleged for Relief
      The State of New Jersey Real estate License act:
      N.J.S.A. 45:15-16.45
      Submission of applicant to the courts; methods of service……………

45:15-16.46 Violations by brokers, salespeople; fines, penalties……..
The State of New Jersey Consumer Fraud Act
N.J.S.A. 56:8-1 and 56:8-2 An act concerning consumer fraud its
prevention and penalties thereof
JERSEY EVICTION LAW
N.J.S.A. 2A:18-53 Removal of tenant in certain cases; jurisdiction
N.J.S.A. 2A:18-56 Proof of notice to quit prerequisite to judgment
N.J.S.A. 2A:18-57 Judgment for possession; warrant for removal;
issuance
N.J.S.A. 2A:18-58 Execution of warrant; use of force
N.J.S.A. 2A:18-59 Review; Landlord liable for unlawful proceedings
N.J.S.A. 2A:18-61.64. Report of violation, investigations, penalties
N.J.S.A. 2A:18-61.65. Violations considered as consumer fraud

-
Conclusion and Prayer for Relief ..... . ...... ...............................................

EXHIBITS

A. Email Correspondence with Georgia Mohrbacher and onboarding team

B. Email Correspondence and text messages with Kira Sedgewick
and onboarding team

C. Licensing Agreement Signed, KSA Order Form, KSA Terms & Conditions,
Cloud Kitchens Proposal materials, Letter of Termination and request to vacate
space
of Agreement by December 17, 2021

D. Exhibit example of approved licensing agreement by
Securities Exchange Commission

E. Sales Reports from Door Dash merchant portal.

F. FTC consumer fraud complaint

G. Attorney General Complaint for Consumer Fraud

H. Invoices for Cloud Kitchens from July through October.

## INTRODUCTION

The Plaintiff, Zena L. Powell, also referred to herein as "The Soul Kitchen" or "Plaintiff " was presented with a sales presentation on Juy 20th, 2021 by Georgia Mohrbacher A salesperson from Cloud Kitchens herein referred to as "Defendant 1" and accompanied by two other cloud employees Shyanne Gaston and Sawyer Daly of Cloud onboarding team via a Zoom meeting that took place at 1:30 pm. The Plaintiff was then received a contract to sign from Georgia Mohrbacher on July 23rd, 2021 and had reservations about the services not being listed that were stated verbally during the sales presentation and submitted questions in regard to those services stated verbally. (SEE EXHIBIT A) Georgia Mohrbacher a representative of Cloud Kitchens replied stating that the language is standard because the company services a large number of clients the contract is standard and provided a material handout stating that the services discussed in the sales presentation and on the handout are guaranteed and the nightly general cleaning and weekly hood cleaning of our kitchen workspace is included. The Defendant(s) assured the Plaintiff verbally during the first meeting and thereafter verbally that those services will be provided and included as a portion of the fees incurred monthly for utilization of the space and there are no additional fees incurred outside of the monthly fees stated. The Plaintiff, Zena L. Powell, then entered into a Licensing Agreement with Cloud Kitchens Inc. on July 27th, 2021to obtain a commercial kitchen space in a shared workspace environment for merchants seeking to launch a Ghost Kitchen restaurant. Cloud Kitchens Inc. is a company that provides two hundred square foot commercial kitchen space pre-fitted with the required washing sinks, as well as Hood ventilation system for use by the licensee. Otter is a computer software firm that works directly as a Third-Party vendor for Cloud Kitchens Delivery hub system for the restaurant industry across all delivery and pickup platforms. i.e(Door Dash, Grubhub, Ubereats, etc,.) The company controls the sales flow for each restaurant by integrating each platform under their proprietary software and provide tablets and a printer for all platforms to be delivered on one Otter tablet versus multiple tablets for each delivery platform. The Business relationship between Cloud Kitchens and Otter computer company under Cloud Kitchens current business model is designed to deliver high turnover of merchants through lack of sales and increase profitability of Cloud Kitchens Inc. through such turnover resulting in Cloud becoming a Billion Dollar

company within a five-year span from 2016 – 2021. The services stated verbally to each merchant during the sales presentation and advertised on their national commercial are not delivered as understood by the consumer and therefore cause undue hardship to consumers seeking economic opportunity in ownership but lacking in depth business knowledge in launching a food brand, menu, marketing, and administrative applications required to launch a restaurant. Otter assists in the current business model by driving the sales flow and taking merchants on and off of delivery platforms without their knowledge. The current turnover rate is what makes the business model thrive not the actual success of merchants expanding to other locations but rotating merchants in and out of current spaces through out the year retaining any money owed from the $7200.00 deposit required to obtain the kitchen and charging operational fees the first hidden fee prior to the merchant taking possession of the space but using the access date of the contract as the basis for this action not the actual date of possession and adjusting the access date to the date of actual possession. The next hidden fee is the fee charged for storage space which is stated clearly to be included in monthly cost which is outlined in Cloud Kitchens Proposal SEE EXHIBIT (C).

The Plaintiff, Zena L. Powell, has sustained physical and financial injury due to the actions of Cloud Kitchens Inc. and Otter computer company Inc. herein referred to as "Defendant(s)" by utilizing deceptive business practices, providing misleading information, and omission of information directly caused physical injury to a disabled person, the Plaintiff by not providing the general nightly cleaning services in a restaurant environment and financial injury by omitting the additional fees charged monthly. The Plaintiff has paid a total of $12, 259.22 to the Defendant(s) since September 10th, 2021 through to present and is currently in arrears for $4,620.23 for November and $4,500.00 for December. The Plaintiff has not paid the invoices due to lack of revenue and being sick from having to assume duties that were stated would be included in the agreement.

In this Affidavit in support of the complaint Plaintiff, Zena L. Powell, seeks relief determining that the Defendant(s), Cloud Kitchens Inc. and Otter Computer Company Inc. are liable under Federal and State consumer laws of protection. If the relief sought is granted the only issue for trial would be the Plaintiff's request for an official federal inquiry, size of the damages awarded, and any other relief the Judge deems necessary.

## STATEMENT OF FACTS

### GEORGIA MOHRBACHER

On July 19th, 2021 the Plaintiff, Zena L. Powell scheduled a sales presentation in a Zoom meeting with Georgia Mohrbacher of Cloud Kitchens Inc. for 7-20-2021 at 1:30 pm. On the Zoom meeting call we went over what the organization is offering and how it is offered and the Plaintiff inquired about the details of the fees incurred monthly asking what they include and stated its more then a brick and mortar space monthly for lease so it would not be worth it to venture in with this type of operation and the Defendant(s) stated that there is a monthly promotion they are running that would still include all the services presented of general nightly cleaning, weekly hood cleaning and quarterly deep cleaning, secured premises, storage, and all the requirements to operate a food

establishment as stated in the materials and verbally. That there is a cleaning service provided for the cleaning of your kitchens and common areas, and that with all the services including limited marketing locally and the availability of signage in front of the store to increase brand visibility. The Defendants sales representative stated that with the monthly promotion I could take advantage of the offer for the next 4 months based at $3600.00 monthly and then the normal payments of $5500.00 monthly would be required to maintain the contract. The Plaintiff then stated to Defendant(s) Georgia Mohrbacher that The Plaintiff is disabled and the at the money was coming from the Plaintiff's Sons brokerage account and if the services stated were in any way not what was presented there would be a litigation because the Plaintiff would then be placed in a compromising position physically and financially and would not be able to make the business successful. The Defendant(s) assured the Plaintiff both overt the phone and through email that all the services stated were inclusive of the monthly recurring fees and that if the Plaintiff has any issues or question's please feel free to reach out and Georgia Mohrbacher would be happy to answer them at any point after signing the agreement. The Defendant state during the presentation there were only 2 kitchens left thus the reason for her diligent follow-up to complete the contract and the Plaintiff thanked her for ensuring she received one of the last kitchens available. The Defendant(s) stated that the onboarding team will be reaching out for the next steps in moving forward with the process and initially stated that if there were any issues with the launch date it can be adjusted down the line which is the official access date on the contract. SEE EXHIBIT (C) The Plaintiff, Zena L. Powell completed payment of the security deposit on July 29th, 2021 but the actual first hidden fee was the $216.00 surcharge for payment through the online Otter system that is provided to make your payments and manage your account on including your restaurant accounts.

**ONBOARDING TEAM**

The next steps the Plaintiff received an email welcoming the Zena L. Powell to Cloud Kitchens and introducing the onboarding team of Jordan Palacios for Kitchen planning, and Shyanne Gaston for setting up the Delivery platforms and integration with the Defendant(s) Kitchen Technology Cloud utilizes which is Otter computer software. In addition to a reminder of the key date of Access to the Kitchen which should have been September 1st, 2021and an introduction to the facilities Manager Kira Sedgewick via email. On August 31st, 2021 Zena L. Powell, The Plaintiff emailed Kira and copied Georgia Mohrbacher requesting the launch date be pushed back as stated prior to the initial signing and after the signing of the agreement and the response was that the launch date could not be pushed back and stated that if there was an issue of payment they will push the billing back to two weeks to September 15th, 2021 but there is nothing that can be done to change the launch date after escalating the matter. An invoice was received for operating fees on September 5th, 2021 and no keys or possession of the

had taken place. The second hidden fee was the operating expenses not expressed during the sales presentation when asked were there any additional cost outside of the deposit and what would be paid in October as the first month of billing and Georgia Mohrbacher replied no to the question posed by the Plaintiff. The Plaintiff, after expressing dissatisfaction with the omission of the billing; sent an email replying to the Defendant(s) expressing the fees not being communicated prior to signing the agreement even when asked specifically by the Plaintiff in the initial sales call. `The invoice for operational expenses was paid and on September 10th, 2021 in the amount of $1098.67. The Plaintiff then made arrangements with Kira Sedgewick to pick up the keys for the kitchen on September 15th, 2021 and upon arrival met with Hadiya the facilities supervisor. Hadiyah was asked to show The Plaintiff around the facility and then informed Plaintiff of the facility rules, and the location of storage dry and cold. Hadiyah then informed The Plaintiff of the facility fees for storage monthly which was the third hidden fee of $250.00 per rack which is stated to be included in the monthly cost SEE EXHIBIT (C) (Cloud Kitchen Proposal Materials)

During this time frame the onboarding members and the sales person were promoted and the menu planning and menu submitted originally changed to Momoh Pujeh as of August 6th, from Shyanne Gaston and Momoh Pujeh was the new point of contact in which the menu and brand was submitted for upload both on the Google link they provided originally for the menu upload and directly via email delivered to Momoh Pujeh by August 13th, 2021 a total of 6 submission 3 via email and 3 through the online google upload link they provided originally. The menu was uploaded and launched the Brand on September 15, 2021 in spite of the emails and everyone being copied on the email trail and requesting the launch date be changed via email. The false launch prompted calls for orders coming through and initially ruined the Brand launch sales numbers. The Soul Kitchen brand was not officially opened until after the Health Department Approved the application for a local food business. The approval did not take place until October after the last application submission on September 27th, 2021 to the City of Belleville. The menu was also finalized on the 27th of September with Shyanne Gaston and the Delivery date of the Kitchen Equipment had already taken place and was confirmed prior with Kira Sedgewick for September 16th, 2021. There were many corrections I made during this time to the menu myself and had to fix on all platforms due to the incompetent communication and lack of attention to detail by the onboarding specialist which had changed hands multiple times from Shyanne Gaston to Momoh Pujeh to Alyssa Parbhoo none of whom actually picked up the phone to call me and be proactive in an industry where it is required as all deadlines are time sensitive to launch dates. It was impossible to get a direct number for any administrators that were assigned to assist you in your launch for timely responses regarding your brand launch and upon responding would not have the correct details as submitted for launching the brand The Soul Kitchen.

## KIRA SEDGEWICK

The Plaintiff , Zena L. Powell upon the introduction via email to Kira Sedgewick did not meet the facilities manager until September 16th, 2021 during which time the equipment for the kitchen the Plaintiff was renting was delivered to the facility by Superior Commercial Kitchens, Inc. after delivery the Plaintiff worked with Kira Sedgewick to complete the health Department application as it was returned twice as being incorrect initially, and the second submission needed to be completed a third time on a new application for clarity and under municipal regulation all applications must be originals completed in blue or black ink and no notes or crossing out. In compliance with what the Health department requested the Plaintiff completed a third application submitted and accepted on September 27th, 2021 via Kira Sedgewick. The approval was complete by October 8th, 2021 which was the first day of business for The Soul Kitchen.

The invoice for October which should have been the first payment was received by the Plaintiff on October 10th, 2021 in the amount of $3,635.49 and did not have any sales as of yet on the delivery hub provided by otter due to the false launch of the brand and customers ordering when the kitchen was not yet open. The week of October 11th through the 17th there was a total sale's on otter under Door Dash of $140.00 and upon observing the lack of sales on the Otter system the Plaintiff took matters into their own hands and contacted the delivery platforms to received tablets directly so they can increase the sales and control advertising campaigns directly from the merchant portal for the Delivery platform directly like Door Dash and Uber eats. The Plaintiff received the Door Dash tablet first on October 25th, 2021 and immediately returned the Otter tablet and printer to the runner for Kira Sedgewick and upon the return of the tablet was contacted by Kira Sedgewick stating that the Delivery Hub Kitchen Technology must be used and that it is apart of my contract that I signed after being told via email that merchants can opt out at anytime as stated by the Defendant(s) sales representative Georgia Mohrbacher it was just an option merchants are not bound to use the Kitchen Tech but it is advised for the merchants to use it instead of having multiple tablets for various delivery platforms and makes it easier for the runners to pickup orders and know who is arriving and what is still being prepared for delivery. SEE EXHIBIT (B) At this time the Plaintiff began to inquire as to what the licensing fees were for and requested an itemization prior to the October payment as the space in front of the building for advertising brand awareness and informing consumers the facility is no longer a kidney clinic but a food complex hosting ghost kitchen brands that sell food to consumers. After the initial email to Kira Sedgewick about the licensing fees and the services not being provided such as the nightly general cleaning of the kitchen and coming to the realization that the general kitchen cleaning discussed was not what was being done but the cleaning staff comes in and cleans the floor by sweeping, mopping each kitchen with the same un-sanitized water was the extent of cleaning merchants kitchens each night and that the general cleaning of the equipment was not ever going to be done by them as stated originally it posed a problem immediately and was addressed in multiple emails, text, and phone calls directly to Kira Sedgewick and then

directly corporate via their sales number online and reaching a senior level executive in the California office by the name of Ramiro Garcia on October 14th, 2021 regarding the fees thus far not mentioned in the sales presentation and regarding the licensing fee itself and what is was they are licensing because in the state of New Jersey Licensing agreements that are for commercial space have advertising space attached to that for the rate of which Cloud Kitchens Inc. was charging and it was stated that space for your restaurant name would be located in the front of the building to promote the brand awareness and the facility. Instead of our names Cloud Kitchens also has a website for the merchants called Belleville Bites as an additional option for pickup orders where they place you on their Flipdish Kiosk located in the front of the Building lobby for customers to order and they must order from the Bellvillebites.com website where Cloud receives an additional fee in the form of your sales percentage ranging from 4% to 9% but not the 3% originally stated in the contract agreement. The Bellvillebites.com website is what they promote for all the merchant stores on that platform. The Plaintiff initially desired to be on this platform but was again dissatisfied with the incompetent roll out of The Soul Kitchen brand after seeing it on the platform as of October 25th, 2021 and the pricing being wrong and everything from image on the screen the Plaintiff sent an email asking to be removed from the Flipdish platform on November 18th, 2021 to Kira Sedgwick which was hostile since The Plaintiff had also sent a message to Otter as of October 25th, 2021 rescinding any permissions to my delivery platforms and requesting to opt out of the integration of the platforms into Otter system. The Plaintiff then received email from Kira Sedgewick regarding returning the Otter tablet expressing we must use the tablet system and the Plaintiff stated they would not be using the system as they get no sales on the system and therefore will remain using tablets and printer provided directly by the delivery hubs.

As of December 2nd, 2021 There was an incident where there was a gas leak and the facility had to close. When the facility reopened the next day and I was present the certified electrician who was looking at the heating system with the contractor hired by cloud stated that the heating system was piped wrong that the smell the merchants had encountered all the time there was actually gas escaping from one portion of the pipe that was not light during the initiation of the heating system being turned on. When Kira Sedgewick was asked if the individual contracted was licensed and if so can she provide a card to the Plaintiff she ignored the request and stated the individual was licensed. Just prior to the week of the gas leak during the month of November the facility had to close due to no water. None of these revenue days were deducted from the merchants for loss of revenue beyond their control based on Cloud Kitchens being liable for the maintenance of the commercial facility. Furthermore, the promise a secure environment is null and void when in fact the facility side entrance is always open prior to 10:30pm in the evening and anyone can walk into the facility, with only 5 days of security footage at a time to prevent Cloud Kitchens Inc. from incriminating themselves with violations of both Federal and State laws which would be reflected in the security footage if kept longer than 5 days. The current facilities manager Kira Sedgewick was never there up until Hadiya the supervisor left the company as of December and is

never able to be reach during these emergencies there is no one in the building certified to shut off the main gas line or water main to the building. There is no cleaning staff during the day only the staff that shows up during the evening to sweep and mop the floors for each kitchen and nothing else. Kira is not OSHA or HVAC certified and the regional director whom is Kip Beach is managing other facilities much further away making it impossible for him to respond to any emergencies immediately.

## **KIP BEACH**

The Plaintiff spoke with Kip Beach as of December 14th, 2021 in regards to the current situation and informed him of all the issues with this deal and the current arrears and what would be a feasible solution for both parties to amicably walk away. And The Plaintiff stated clearly in short of getting all the money paid directly to Cloud Kitchens Inc. returned this would be litigated for the fraudulent misrepresentation of the services provided and omissions of fees assessed after signing the agreement which was implicitly asked prior to signing and had a direct impact on the client by not providing the services in totality stated within the presentation, Cloud Kitchen Proposal, and Terms and Conditions of the KSA order form. The Plaintiff explained that each employee in executive roles claims they do not know what the sales representative has stated but all the merchants after discussing the issue were told the same things during their sales presentation and by different salespeople at different times and have no connection with each other prior to launching a business within the Cloud Kitchens Facility. Kip Beach then stated he would take the information back to the higher ups and see if he could get the transaction approved for us to both walk away peacably and then I received the email today at 1:13 pm with the termination letter attached for me to be out as of tomorrow December 17th, 2021 between 9am – 5pm as stated SEE EXHIBIT (C).

The aforementioned was and is the result the Plaintiff stated would occur if the services stated were not in place from the very beginning of the agreement due to the Plaintiff being disabled and stated to cloud that they were in breach in October and throughout November from the emails between Georgia Mohrbacher through to the emails with Kira Sedgewick and requesting itemization of charges and what the money paid monthly is utilized for by Cloud Kitchens Inc. when each kitchen is only 200 Square feet with the exception of Bare Burger Kitchen who has two kitchens converted to one and is also set to leave by January of 2022 due to the hidden fees and lack of services first provided in the sale presentation but did not want to do so prior to their contract end date to avoid litigation per senior level management that was there in October when I started and began inquiring to other merchants as to what their experience was so far and what the sales environment looks like since they have opened did they find themselves profitable and were they happy with the services not being provided originally stated in the sales presentation and the answer was the same from kitchen 1

Beyond hummus, 2 Smoking of Meats, now 3 Earthly Spice Kati Roll Express, 5 The nugget Spot, 17 Tiam, 20 Fire Ass Thai, 21 Mama Cecily's Asian Cuisine, 22 Tamago Poke, now 23 Blake & Kylies Creole Kitchen. The other 3 merchants left are dealing with it until their contracts have expired Kitchen 6 Cutters Smokery, Kitchen 10 Baba Burger, Kitchen 9 Panera, and Kitchen 11 Top Taste Jamaican 2 is an extension of their brick-and-mortar locations but still not happy with the deceptive practices, and 12 a new Peruvian kitchen also dissatisfied with the services not being provided as promised in the sales presentation. The other merchants have stated all if they could leave and get their money back and go elsewhere without being sued for the remainder of the contract and losing their money vested altogether, they would but once you have signed the contract you do not find out about what is not being done until you launch your restaurant and are already locked in to the agreement. By then you have been charged as we all were for the period we have not yet occupied the kitchen or launched and not as stated during the sales pitch and solicitation to sign all under pressure as they state to you there are only 2 kitchens left the others are all taken so you must grab it if you want it immediately which in turn is a complete lie as they rotate out the less educated business owners who do not know how to market or grow their business through advertising and marketing campaigns. The other vendors are not making any profit and between the fees charged by Cloud's third-party vendors that were originally stated to be partners that provided the services stated in the sales presentation and the fees were all inclusive of those services that were charged monthly to the merchant under the current licensing agreement.

## VIOLATIONS ALLEGED FOR RELIEF

### FIRST VIOLATIONS

**Federal Trade Commision Act Section 5(a) Unfair and Deceptive Business Practices ARTICLE 2 U.C.C. §2-601 Buyer's Rights on Improper Delivery, ARTICLE 2 U.C.C. §2-609 Right to Adequate Assurance of Performance, 18 U.S §1038 (b) False information and Hoaxes, 15 U.S.C. §45 (b) Consumer Review Protection, The Lanham Act under section 43(a) False or misleading advertising**

Plaintiff re-alleges and repleads all of the allegations in the Introduction and Statement of Facts of this Brief and incorporate them by reference. The Plaintiff was deceived into signing the contract through the omission of the information specific verbal and written inquiries were discussed with regards to any additional fees, start date of monthly fees, services provided as set forth in the Terms and Conditions of the KSA and Cloud Kitchens Proposal submitted by Georgia Mohrbacher resulting in health and financial hardship causing undue injury to the consumer. In accordance with the Federal Trade Commission Act Section 5(a) Unfair practices are where an act or practice (1) causes or is likely to cause substantial injury to the consumer, (2) cannot be

reasonably avoided by consumers, and (3) is not outweighed by countervailing benefits to the consumer or competitors and Deceptive practices are where (1) a representation, omission, or practice misleads
or is likely to mislead the consumer (2) a consumer's interpretation of the representation, omission, or practice is considered reasonable under the circumstances; and (3) the misleading representation, omission, or practice is material. Defendant(s) failure to clearly inform customers of contract provisions that permit a change in the terms and conditions of an agreement. Failure to Inform consumers in a clear and timely manner about any fees, penalties, or other charges (including charges for any force-placed products) that have been imposed, and the reasons for their imposition. Failed to tailor advertisements, promotional materials, disclosures and scripts to take account of the sophistication and experience of the target audience. Made claims, representations or statements that mislead members of the target audience about the cost, value, availability, cost savings, benefits, or terms of the product or service.

The aforementioned would be confirmed during discovery and deposition testimony by former and present merchants of Cloud kitchens Inc. as all merchant's cannot be untruthful about the events that lead them into the agreement and formerly do not know each other. In evaluating whether a representation, omission or practice is deceptive, the Agencies will look at the entire advertisement, transaction, or course of dealing to determine how a reasonable consumer would respond. Written disclosures may be insufficient to correct a misleading statement or representation, particularly where the consumer is directed away from qualifying limitations in the text or is counseled that reading the disclosures is unnecessary. Likewise, oral disclosures or fine print may be insufficient to cure a misleading headline or prominent written representation. SEE EXHIBIT (A) emails between salesperson Georgia Mohrbacher and the Plaintiff Zena L. Powell discussing the language of the contract and the Georgia Mohrbacher stirring me away from my understanding of the contract and upon telephone contact stating that the language is standard and to sign the agreement as it had just become the last kitchen left since our discussions. That as the representative she would forward me the materials providing what services were included in the contract upon signing and that they have never just put any merchant out although it was one of my concerns during the telephone conversation stating that they could just terminate the use of the space at will for any reason without notice to the licensee. Georgia Mohrbacher stated that has never happened it was just standard contract the company used in place of a leasehold agreement as it was less binding and this conversation took place on July 24th, 2021 both telephonically and over the email.

Under Section 43(a) of the Lanham Act, a claim can be made against a defendant for false or misleading advertising. For a claim against a defendant for false advertising, the following elements are met and the plaintiff must show: (1) defendant made false or misleading statements as to his own products (or another's); (2) actual deception, or at least a tendency to deceive a substantial portion of the intended audience; (3) deception is material in that it is likely to influence purchasing decisions; (4) the advertised goods travel in interstate commerce; and (5) a likelihood of injury to plaintiff. However, the plaintiff does not have to prove actual injury.

In 1971 Hastings Law Journal published Volume 22 issue 5 "A Private Right of Action under the Federal Trade Commission Act" emphasizing the limited protections of the act for individual consumers since its inception in 1926. In 1938Wheeler-Lea Amendment changed the scope of the framework of the act providing for consumer protections but still there was no uniform law of unfair competition and deceptive trade practices to allow individual consumers to bring an action for private relief into federal courts. At the time the article was published the occurrence of consumer fraud trends had increased and were growing in particular praying on the poor and financially unsophisticated consumer. Since that time a number of laws under federal code both United States Code and Uniform Commercial Code have been implemented providing for such rights to the individual consumer. Within this brief the measures by which misrepresentation must be proven are clearly outlined in the email communications and the advertising materials provided by the Defendant(s) which are as follows:

1. A representation was made
2. The Claim was false
3. The claim was known to be false
4. The Plaintiff relied on this information to make an informed consumer decision
5. The representation was made with the intent of influencing the Plaintiff
6. The Plaintiff suffered a material loss

The aforementioned is for Fraudulent misrepresentation, but I am not limiting the scope of liability of the Defendant(s) to the aforementioned factors, as negligent misrepresentation, or innocent misrepresentation has caused a material breach in the licensing agreement and undue financial and physical injury to the Plaintiff. As previously stated earlier within the brief the Plaintiff informed the salesperson Georgia Mohrbacher of their current disabilities and make specific inquiries as to what a general cleaning is during the Sales meeting of July 20th, 2021. The statement made by the salesperson Georgia Mohrbacher was that a total cleaning of your entire kitchen is done each night and that all you have to do is tend to your immediate kitchen cooking equipment and service wares if any. " Frederico, 507 F.3d at 200" Schechter v. Hyundai Motor Am., Civil Action No.: 18-13634 (FLW), 11 (D.N.J. Jul. 29, 2019)

The Breach occurred in connection with the omission regarding the prorated operating fees for September 2021. SEE EXHIBIT(H) INVOICES In addition The Plaintiff's Buyer rights for improper delivery of services were violated upon the preceding actions stated within this brief. the relief sought within this brief will be shown for such entitlement based on the facts " Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009). The omission based claims The Plaintiff is not required to plead issues that were or may have been concealed by the Defendants. "An ascertainable loss under the NJCFA is one that is 'quantifiable or measurable,' not 'hypothetical or illusory.'" Id. at 185" Schechter v. Hyundai Motor Am., Civil Action No.: 18-13634 (FLW), 16 (D.N.J. Jul. 29, 2019)
The Plaintiff has Ascertainable loss as set forth in N.J.S.A. 56:8-19, which authorizes a statutory remedy for "[a]ny person who suffers any ascertainable loss of moneys or

property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act." D'Agostino v. Maldonado, 216 N.J. 168, 184-85 (2013). The protections of the Consumer Review Protection act and the 14th Amendment affording me equal and equitable protections under the law of the United States constitution have been violated and when reported to the agencies that are implemented to protect consumers from these acts alleged in this brief and/or actions and enforce the aforementioned laws the response is negligent, and no actions are taken to protect the people in which the Federal Agencies serve. The instructions are to take up your own civil action in court against the offender as an individual consumer placing the Burden on the Judicial branch of government to remedy the unlawful action.

With respect to the Uniform Commercial Code Laws violated section 2-601 Buyer Rights on Improper Delivery and section 2-609 Right to Adequate Assurance of Performance the Plaintiff re-alleges the violations affirmed in the aforementioned and re-alleges the same factual violations for this section of Uniform Commercial Code violations. In addition to Title 15 of the United States code section 45 (b) and the Lanham Act section 43 (a) identify the violations mentioned in preceding sections and are enforced by the case law quoted within this brief. The BPL formula for proving Breach and the 6-point test of Intent constitute Consumer Fraud under the first alleged violation of the FTC Act section 5 (a). There must be a representation, omission, or practice that misleads or is likely to mislead the consumer. An act or practice may be found to be deceptive if there is a representation, omission, or practice that misleads or is likely to mislead the consumer. Deception is not limited to situations in which a consumer has already been misled. Instead, an act or practice may be found to be deceptive if it is likely to mislead consumers. A representation may be in the form of express or implied claims or promises and may be written or oral. Omission of information may be deceptive if disclosure of the omitted information is necessary to prevent a consumer from being misled. In determining whether an individual statement, representation, or omission is misleading, the statement, representation, or omission will not be evaluated in isolation. The Agencies will evaluate it in the context of the entire advertisement, transaction, or course of dealing to determine whether it constitutes deception. Acts or practices that have the potential to be deceptive include: making misleading cost or price claims; using bait-and-switch techniques; offering to provide a product or service that is not in fact available; omitting material limitations or conditions from an offer; selling a product unfit for the purposes for which it is sold; and failing to provide promised services. The representation, omission, or practice must be material. A representation, omission, or practice is material if it is likely to affect a consumer's decision regarding a product or service. In general, information about costs, benefits, or restrictions on the use or availability of a product or service is material. When express claims are made with respect to a financial product or service, the claims will be presumed to be material. Similarly, the materiality of an implied claim will be presumed when it is demonstrated that the institution intended that the consumer draw certain conclusions based upon the claim. Claims made with the knowledge that they are false will also be presumed to be material.

Assessing whether an act or practice is unfair; An act or practice is unfair where it (1) causes or is likely to cause substantial injury to consumers, (2) cannot be reasonably avoided by consumers, and (3) is not outweighed by countervailing benefits to consumers or to competition. The act or practice must cause or be likely to cause substantial injury to consumers. To be unfair, an act or practice must cause or be likely to cause substantial injury to consumers. Substantial injury usually involves monetary harm. An act or practice that causes a small amount of harm to a large number of people may be deemed to cause substantial injury. An injury may be substantial if it raises a significant risk of concrete harm. Trivial or merely speculative harms are typically insufficient for a finding of substantial injury. Emotional impact and other more subjective types of harm will not ordinarily make a practice unfair.

## New Jersey Statute Violations

**N.J.S.A. 45:15-16.45 Submission of applicant to the courts; methods of service 45:15-16.46 Violations by brokers, salespeople; fines, penalties N.J.S.A. 56:8-1 & 56:8-2 An act concerning consumer fraud its prevention and penalties thereof**
**N.J.S.A. 2A:18-53 Removal of tenant in certain cases; jurisdiction**
**N.J.S.A. 2A:18-56 Proof of notice to quit prerequisite to judgment**
**N.J.S.A. 2A:18-57 Judgment for possession; warrant for removal; issuance**
**N.J.S.A. 2A:18-58 Execution of warrant; use of force**
**N.J.S.A. 2A:18-59 Review; Landlord liable for unlawful proceedings**
**N.J.S.A. 2A:18-61.64. Report of violation, investigations, penalties**
**N.J.S.A. 2A:18-61.65. Violations considered as consumer fraud**

Plaintiff would like to reiterate the legal arguments in the aforementioned Sections and have listed the cited New Jersey State statutes in alignment with all the First
Violations Alleged for Relief.

To obtain the benefit of a license agreement, the property owner must ensure that its agreement with the prospective user of the premises is indeed a license and not a lease. This is not necessarily an easy task to accomplish. Merely calling the agreement a "license" will not make it so. Whether an agreement is held to be a license and not a lease will depend on the presence or absence in the agreement of the three essential characteristics of a real estate license: 1) a clause allowing the licensor to revoke "at will"; 2) the retention by the licensor of absolute control over the premises; and 3) the licensor's supplying to the licensee all of the essential services required for the licensee's permitted use of the premises. The Third essential characteristic was not met in this agreement and is maintained by the merchants in cleaning their own kitchens, purchasing their own janitorial supplies for such use and use of bathrooms shared in the work space, as well as, developing their own marketing and menus, hood extraction weekly is not done, no security on the premises and the facility is not secure during prime operating hours, protections against theft in the shared work space, and are non-compliant with certified OSHA and HVAC facilities manager available 24 hours for immediate emergencies.

The Plaintiff reaffirms the violations constituting Consumer Fraud under the New Jersey State Annotated Laws

N.J.S.A. 45:15-16.45 Submission of applicant to the courts; methods of service

a.  For purposes of this act, an applicant for registration submitted to the commission shall be deemed as submission, by the applicant, to the jurisdiction of the Courts of the State of New Jersey.

b.  In addition to the methods of service provided for in the Rules Governing the Courts of the State of New Jersey, service may be made by delivering a copy of the process to the person in charge of the office of the commission at its office, but that service shall not be effective unless the plaintiff, which may be the commission in a proceeding instituted by it:

(1)  Sends a copy of the process and the pleading by certified mail to the defendant or respondent at his last known address; and

(2)  The plaintiff's affidavit of compliance with this section is filed in the case on or before the return day of the process, if any, or within the time as the court allows.

c.  If any person, including any nonresident of this State, engaged in conduct prohibited by this act and has not filed a consent of service of process and personal jurisdiction over him cannot otherwise be obtained in this State, that conduct authorizes the commission to receive service of process in any noncriminal proceedings against him or his successor which grows out of that conduct and which is brought under this act with the same force and validity as if served on him personally.  Notice shall be given as provided in subsection a. of this section.

N.J.S.A. 45:15-16.46 Violations by brokers, salespeople; fines, penalties

a.  Any broker or salesperson who violates any of the provisions of this act shall, in addition to the penalties set forth herein, be subject to the penalties as set forth in R.S.45:15-17.

b.  Any person who violates any provision of this act or any person who, in an application for registration filed with the commission, makes any untrue statement of a material fact or omits to state a material fact shall be fined not less than $250, nor more than $50,000, per violation.

c.  The commission may levy and collect the penalties set forth in subsection b. of this section after affording the person alleged to be in violation of this act an opportunity to appear before the commission and to be heard personally or through counsel on the alleged violations and a finding by the commission that

said person is guilty of the violation. When a penalty levied by the commission has not been satisfied within 30 days of the levy, the penalty may be sued for and recovered by, and in the name of, the commission in a summary proceeding pursuant to "the penalty enforcement law" (N.J.S.2A:58-1 et seq.).

 d.  The commission may, in the interest of justice, compromise any civil penalty, if in its determination the gravity of the offense or offenses does not warrant the assessment of the full fine.

N.J.S.A.  45:15-16.52 Applicability of act.

4. a.  This act shall not apply to any of the following:

(1)   Timeshare plans, whether or not an accommodation or component site is located in the State, consisting of 10 or fewer timeshare interests;

(2)   Timeshare plans, whether or not an accommodation or component site is located in this State, the use of which extends over any period of three years or less.  For purposes of determining the term of a timeshare plan, the period of any automatic renewal shall be included , unless a purchaser has the right to terminate the purchaser's participation in the timeshare plan at any time and receive a pro rata refund, or the purchaser receives a notice, not less than 30 days, but not more than 60 days, prior to the date of renewal, informing the purchaser of the right to terminate at any time prior to the date of automatic renewal ;

(3)   Timeshare plans, whether or not an accommodation or component site is located in the State, under which the prospective purchaser's total financial obligation will be equal to or less than $3,000 during the entire term of the timeshare plan;

 (4)   Component sites of specific timeshare interest multi-site timeshare plans that are neither located in nor offered for sale in this State, except that these component sites are still subject to the disclosure requirements of section 10 of this act;

(5)   Offers or dispositions of securities or units of interest issued by a real estate investment trust regulated under any State or federal statute;

 (6)   Offers or dispositions of securities currently registered with the Bureau of Securities within the Division of Consumer Affairs in the Department of Law and Public Safety.

b.   A person shall not be required to register as a developer under this act if:

(1)   The person is an owner of a timeshare interest who has acquired the timeshare interest for the person's own use and occupancy and who later offers it for resale in a single or isolated transaction; or

(2)   The person is a managing entity or an association that is not otherwise a developer of a timeshare plan in its own right, solely while acting as an association or under a contract with an association to offer or sell a timeshare interest transferred to the association through foreclosure, deed in lieu of foreclosure, or gratuitous transfer, if such acts are performed in the regular course of, or as an incident to, the management of the association for its own account in the timeshare plan.

c.   If a developer has already registered a timeshare plan under this act, the developer may offer or dispose of an interest in a timeshare plan that is not registered under this act if the developer is offering a timeshare interest in the additional timeshare plan to a current timeshare interest owner of a timeshare interest in a timeshare plan created or operated by that same developer subject to the rules and regulations adopted by the commission.

d.   The commission may, from time to time, pursuant to any rules and regulations adopted pursuant to this act, exempt from any of the provisions of this act any timeshare plan, if it finds that the enforcement of this act with respect to that plan is not necessary in the public interest, or required for the protection of purchasers, by reason of the small amount of the purchase price or the limited character of the offering.

N.J.S.A. 56:8-1 & 56:8-2 An act concerning consumer fraud its prevention and penalties thereof

56:8-1
(a) The term "advertisement" shall include-the attempt directly or indirectly by publication, dissemination, solicitation. endorsement or circulation or in any other way to induce directly or indirectly any person to enter or not enter any obligation or acquire any title or interest in any merchandise or to increase the . consumption thereof or to make any loan:

(b) The term "Attorney General" shall mean the Attorney General of the State of New Jersey or any person acting on his behalf;

(c) The term "merchandise" shall include any objects, wares, goods, commodities, services or anything offered~ directly or indirectly, to the public for sale;

(d) The term "person" as used in this act shall include any natural person or his legal representative\:l partnership', corpO')'ation,

company, trust, business entity or association, and any agent,
employee, salesman~ partner, officer, director, member, stockholder,
associate, trustee thereof;

(e) The term, "sale" shall include any sale, rental, or distribution,
offer for sale) rental, or distribution or attempt,
directly or indirectly, to sell, rent or distribute.

56:8-2.
The act use or employment by any person of any
unconscionable commercial practice, deception, fraud, false pretense,
false promise, misrepresentation, or the knowing, concealment, suppression
or; omission, in connection with the sale or advertisement of any
merchandise or real estate or with the subsequent performance of such
person as aforesaid, whether or nor any person has in fact been misled,
deceived or damaged thereby, is declared to be an unlawful practice;
provided, however, that nothing herein contained shall apply to the
Owner or publisher of newspapers) magazines, publications or printed
matter wherein such advertisement when the owner, publisher or
operator has no knowledge of the intent, design or purpose of the
advertiser.

The Plaintiff Re-alleges the violations of this act in the communications between
Georgia Mohrbacher and The Plaintiff questioning the language of the contract
and receiving assurance from the Defendant(s) that the contract was just
standard and that they are not in the practice of evicting viable businesses
reaffirming during the verbal telephonic conversation that the services stated will
be provided.

N.J.S.A. 2A:18-53 Removal of tenant in certain cases; jurisdiction

Except for residential lessees and tenants included in section 2 of this act, any
lessee or tenant at will or at sufferance, or for a part of a year, or for one or more
years, of any houses, buildings, lands or tenements, and the assigns, under
tenants or legal representatives of such tenant or lessee, may be removed from
such premises by the Superior Court, Law Division, Special Civil Part in an action
in the following cases:

a. Where such person holds over and continues in possession of all or any part
of the demised premises after the expiration of his term, and after demand made
and written notice given by the landlord or his agent, for delivery of possession
thereof. The notice shall be served either personally upon the tenant or such
person in possession by giving him a copy thereof or by leaving a copy of the
same at his usual place of abode with a member of his family above the age of
14 years.

b. Where such person shall hold over after a default in the payment of rent, pursuant to the agreement under which the premises are held.

c. Where such person (1) shall be so disorderly as to destroy the peace and quiet of the landlord or the other tenants or occupants living in said house or the neighborhood, or (2) shall willfully destroy, damage or injure the premises, or (3) shall constantly violate the landlord's rules and regulations governing said premises, provided, such rules have been accepted in writing by the tenant or are made a part of the lease; or (4) shall commit any breach or violation of any of the covenants or agreements in the nature thereof contained in the lease for the premises where a right of re-entry is reserved in the lease for a violation of such covenants or agreements, and shall hold over and continue in possession of the demised premises or any part thereof, after the landlord or his agent for that purpose has caused a written notice of the termination of said tenancy to be served upon said tenant, and a demand that said tenant remove from said premises within three days from the service of such notice. The notice shall specify the cause of the termination of the tenancy, and shall be served either personally upon the tenant or such person in possession by giving him a copy thereof, or by leaving a copy thereof at his usual place of abode with some member of his family above the age of 14 years.

N.J.S.A. 2A:18-56 Proof of notice to quit prerequisite to judgment

No judgment for possession in cases specified in paragraph "a." of section 2A:18-53 of this Title shall be ordered unless:

a. The tenancy, if a tenancy at will or from year to year, has been terminated by the giving of 3 months' notice to quit, which notice shall be deemed to be sufficient; or

b. The tenancy, if a tenancy from month to month, has been terminated by the giving of 1 month's notice to quit, which notice shall be deemed to be sufficient; or

c. The tenancy, if for a term other than at will, from year to year, or from month to month, has been terminated by the giving of one term's notice to quit, which notice shall be deemed to be sufficient; and

d. It shall be shown to the satisfaction of the court by due proof that the notice herein required has been given.

N.J.S.A. 2A:18-57 Judgment for possession; warrant for removal; issuance

If no sufficient cause is shown to the contrary when the action comes on for trial, the court shall issue its warrant to any officer of the court, commanding him to remove all persons from the premises, and to put the claimant into full possession thereof, and to levy and make the costs out of the goods and chattels of the person in possession.

No warrant of removal shall issue until the expiration of 3 days after entry of judgment for possession, except as provided for in chapter 42 of this Title.

The Plaintiff Re-alleges the violations and affirms that a termination letter was issued for the notice to quit on December 8th 2021 and no court proceedings have been filed with the Essex County court house special Civil division Landlord Tenant for the removal of Zena L. Powell DBA as The Soul Kitchen.

N.J.S.A. 2A:18-58 Execution of warrant; use of force

An officer, to whom a warrant is issued by virtue of this article, shall obey the command of and faithfully execute the same, and may, if necessary to the execution thereof, uses such force as may be necessary.

N.J.S.A. 2A:18-59 Review; Landlord liable for unlawful proceedings

Proceedings had by virtue of this article shall not be appealable except on the ground of lack of jurisdiction. The landlord, however, shall remain liable in a civil action for unlawful proceedings under this article.

N.J.S.A. 2A:18-61.64. Report of violation, investigations, penalties

a. A tenant or prospective tenant may report a violation of the provisions of P.L. 2002, c.133 (C.2A:18-61.62 et al.) to the Director of the Division of Consumer Affairs in the Department of Law and Public Safety. The director shall investigate any complaint within 10 days of receipt of the complaint.
b. If the director determines that a violation of this act has occurred:

(1) a penalty may be assessed against the landlord in an amount equal to six times the monthly rental sought to be imposed upon a tenant in contravention of the "Notice of Rent Protection Emergency"; or
(2) any penalties for violations of the New Jersey Consumer Fraud Act, P.L.1960, c.39 (C.56:8-1 et al.)
may be sought by the director.

c. Notwithstanding the provisions of subsections a. and b. of this section, a tenant shall have the right to petition a court of competent jurisdiction to terminate a lease containing a provision in violation of the provisions of P.L. 2002, c. 133 (C.2A:18-61.62 et al.).

N.J.S.A. 2A:18-61.65. Violations considered as consumer fraud

Any violation of P.L.2002, c. 133 (C. 2A:18-61.62 et al.) shall be considered a violation of the New Jersey Consumer Fraud Act, P.L.1960,c.39(C.56:8-1 et seq.).

## **CONLCUSION AND PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for a judgment in favor of a fair and just resolution as follows:

1. Issue a judgment declaring that the acts of the Defendant(s) described herein Violate

Federal Trade Commission Act Section 5(a) Unfair and Deceptive Business Practices ARTICLE 2 U.C.C. §2-601 Buyer's Rights on Improper Delivery, ARTICLE 2 U.C.C. §2-609 Right to Adequate Assurance of Performance, 18 U.S §1038 (b) False information and Hoaxes, 15 U.S.C. §45 (b) Consumer Review Protection, The Lanham Act under section 43(a) False or misleading advertising. The New Jersey State Statutes as follows N.J.S.A. 45:15-16.45 Submission of applicant to the courts; methods of service 45:15-16.46 Violations by brokers, salespeople; fines, penalties N.J.S.A. 56:8-1 & 56:8-2 An act concerning consumer fraud its prevention and penalties thereof
N.J.S.A. 2A:18-53 Removal of tenant in certain cases; jurisdiction
N.J.S.A. 2A:18-56 Proof of notice to quit prerequisite to judgment
N.J.S.A. 2A:18-57 Judgment for possession; warrant for removal; issuance
N.J.S.A. 2A:18-58 Execution of warrant; use of force
N.J.S.A. 2A:18-59 Review; Landlord liable for unlawful proceedings
N.J.S.A. 2A:18-61.64. Report of violation, investigations, penalties
N.J.S.A. 2A:18-61.65. Violations considered as consumer fraud

The Magnitude of the Real Estate market has called for these types of license agreements in lieu of a Lease agreement to circumvent Landlord tenant Law but in the State of New Jersey The Law applies to both at will tenancy and year to year. The new agreements also allow large companies like Cloud to circumvent hiring certified individuals who are bound by license to conduct business for real property commerce with full disclosure. But the threshold is that each state is different in its application of their real property laws and the applications and their definitions are applied as needed from State to State. By Cloud Kitchens Inc. not observing such laws and attempting to circumvent Federal violations and State laws for Special civil matters makes the Licensing agreement they currently have invalid as it has a California Arbitration clause specifically directing consumers to the California Association of Arbitration for mediation and it is not the current Arbitration Clause or laws that is applicable in the state in which they actively do business New Jersey for the current matter.

2. Require the Defendants to revamp their current Licensing agreement to reflect New Jersey Real property laws and all their remedies for at will tenancy.

3. Require the Defendants to stay within the guidelines of pricing under New Jersey Property laws for usage of space per Square foot or Flat Fee.

4. Require the Defendants to use Salespeople registered with the State of New Jersey Real Estate licensing Board which bounds non-broker salespeople to a standard of conduct under New Jersey Law for the usage and distribution of residential or commercial property.

5. Launch a formal federal inquiry into the business relationships between Cloud and its partners in relation to formulating a pyramid business model that through misrepresentation stirs the consumer into contracts that create failing businesses due to lack of services rendered under current misleading and deceptive sales practices. As a result of these actions creating high turnover for the current properties within a ninety-day period a business owner will incur $12,000 to $15,000 in expenses for a 200 square foot kitchen which is beyond price gauging. At the rate of turnover with 24 kitchens minimum in each space doing this at least 4 times per year the Cloud kitchen earns $1,152,000.00 roughly per year and this is not including their partners which are supposed to be included in the services rendered but are disclosed after signing that there are small fees apart from KATOM. The aforementioned numbers with just one facility located in each state as they currently do have the Owner grosses $57,600,000.00 per year and that is on the low estimated end.

5.  Nominal, Compensatory damages and Consequential damages to be awarded to
The Johnson-Powell Group, LLC according to proof at trial;

4. For such other and further relief as the Court may deem just, proper, and appropriate.

**Demand for Jury**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Rule 38-1 of the

Local Rules, Plaintiff demands trial by jury for all the issues pleaded herein so triable.

December 17th, 2021

Respectfully Submitted:

By: *Zena L. Powell*

Zena L. Powell

Address:      20 Howard Drive
              Apt. V
              Bergenfield, NJ, 07621
Telephone:    (551) 275-3771 mobile
              (201) 374-2159 home
Email:        teoteojohnson@outlook.com

# EXHIBIT

# A

**From:** Georgia Mohrbacher
**Sent:** Monday, July 19, 2021 2:49 PM
**To:** teo johnson
**Subject:** Re: CloudKitchens x Zena // Post Tour

Hi Zena,

Looking forward to checking in tomorrow at 1:30 pm. I will call you at that time at 5512753771

Best,
Georgia


**Georgia Mohrbacher**
**Partnerships | New York**
**Cloud Kitchens**
email: georgia.mohrbacher@cloudkitchens.com
w: (914) 214-9765

**Schedule a time to speak with me**


On Tue, Jul 13, 2021 at 9:55 AM Georgia Mohrbacher <georgia.mohrbacher@cloudkitchens.com> wrote:
Sounds good, thank you. If you can provide me the business address I will be able to complete the contract.

Thank you!
Georgia

**Georgia Mohrbacher**
**Partnerships | New York**
**Cloud Kitchens**
email: georgia.mohrbacher@cloudkitchens.com
w: (914) 214-9765

**Schedule a time to speak with me**


On Tue, Jul 13, 2021 at 9:50 AM teo johnson <teoteojohnson@outlook.com> wrote:
I would review with my attorney and I look forward to speaking with you after to complete the contract and discuss any potential changes if possible. I appreciate your diligent response.

Thank you,

Zena Powell

Get Outlook for iOS

**From:** Georgia Mohrbacher <georgia.mohrbacher@cloudkitchens.com>
**Sent:** Tuesday, July 13, 2021 9:33:57 AM
**To:** teo johnson <teoteojohnson@outlook.com>
**Subject:** Re: CloudKitchens x Zena // Post Tour

Zena - At your convenience can you please send me the following:

1. The address you would like to list as the business address. It is fine if you want to use your home address.
2. Let me know if you would like to sign as an LLC on the contract (Soul Kitchen) or sign as a Sole Proprietorship under your name. Either is totally fine.

Thanks!


**Georgia Mohrbacher**
**Partnerships | New York**
**Cloud Kitchens**
email: georgia.mohrbacher@cloudkitchens.com
w: (914) 214-9765

**Schedule a time to speak with me**


On Tue, Jul 13, 2021 at 9:24 AM Georgia Mohrbacher <georgia.mohrbacher@cloudkitchens.com> wrote:

Hi Zena,

That is great news. I see you have some time booked with me on 7/20. I will send the contract out that morning so you can review and we can discuss any final questions on that call. August 15 is fine for start date.

Please let me know if you have questions in the meantime and enjoy your vacation!

Georgia


**Georgia Mohrbacher**
**Partnerships | New York**
**Cloud Kitchens**
email: georgia.mohrbacher@cloudkitchens.com
w: (914) 214-9765

**Schedule a time to speak with me**

On Tue, Jul 13, 2021 at 6:34 AM teo johnson <teoteojohnson@outlook.com> wrote:
I will be returning in the 19th for me to pay for contract and I would like to change it to August 15th opening date. I appreciate all your assistance and look forward to working with your organization.

Thank you,

Zena Powell

Get Outlook for iOS

**From:** Georgia Mohrbacher <georgia.mohrbacher@cloudkitchens.com>
**Sent:** Thursday, July 1, 2021 2:22:19 PM
**To:** teoteojohnson@outlook.com <teoteojohnson@outlook.com>
**Subject:** CloudKitchens x Zena // Post Tour

Hi Zena,

Thank you for taking the time to meet with me! It was very insightful learning more about your business and expansion plans. Happy you were able to see how CloudKitchens will help you scale and open a new location very quickly, with a low commitment, and with minimal labor due to the facility's efficiency/automation. Looking forward to checking in at **11 am on Thursday, July 8.**

I've attached a deck we reviewed for the Belleville location. I have highlighted below our concessions that we are currently giving for each facility before launch.

**Belleville Facility (Launch: Aug 1 2021)**
*License Fee*
*Standard Price: $4000/mo*
*Special Offer: $3700/mo*
*First month FREE*
*ROEs*
*$1800/mo + electricity*
*Processing Fee*
*3% (Only for food runner orders)*
*Refundable Security Deposit*
*Standard: 3 months license fee*
*Special Offer: 2 months license fee $7400*
*Set-Up Fee*
*Standard: $2500*
*Special Offer: $0 (waived)*

*\*ROEs: Gas, Internet, Janitorial, Cleaning Supplies, Grease Removal/Trap Cleaning, Trash Removal, Shared Area Cleaning (CAM), Pest Control, Security, Water/Sewage, Hood Cleaning / Hood + Ansul Inspection, Snow Clearing*

Below is a screenshot of what is also included in the contract at no additional cost

✅ Our **Onboarding team** can assist with setting you up on your delivery platforms of choice and connect them with our Kitchen Tech**. We don't have preferential OFO rates.**

✅ You will get **access to exclusive material and webinars** on how to run a successful delivery business.

✅ Photos are a critical part of your success, we can provide **guidance on how you take/source good photos**.

✅ We provide **guidance on how you can create and optimize your Menu or Brands** for delivery.

✅ We provide **guidance on how you can set up promotions** to grow your delivery sales.

✅ Through Otter (our Kitchen Tech partner) you will **Self-Service tools and 24/7 tech support** for managing your store (86-ing, pausing your store, etc.) and how to get in touch with OFOs for claims (canceled orders, disputes).

Please reach out with any questions, thank you.

**Georgia Mohrbacher**
**Partnerships | New York**
**Cloud Kitchens**
email: georgia.mohrbacher@cloudkitchens.com
w: (914) 214-9765

**Schedule a time to speak with me**

**From:** Georgia Mohrbacher via DocuSign
**Sent:** Wednesday, July 21, 2021 8:46 AM
**To:** Zena Powell
**Subject:** Please Sign: Documents for your Signature



**Georgia Mohrbacher**
georgia.mohrbacher@cloudkitchens.com

Hi There,

Please see the documents attached for your signature. If you have any questions on the documents or if there's anything you require help with, please let us know.

**Do Not Share This Email**
This email contains a secure link to DocuSign. Please do not share this email, link, or access code with others.

**Alternate Signing Method**
Visit DocuSign.com, click 'Access Documents', and enter the security code:
48F6D1B3ADE249D7A8BC67037A063D843

**About DocuSign**
Sign documents electronically in just minutes. It's safe, secure, and legally binding. Whether you're in an office, at home, on-the-go -- or even across the globe -- DocuSign provides a professional trusted solution for Digital Transaction Management™.

**Questions about the Document?**
If you need to modify the document or have questions about the details in the document, please reach out to the sender by emailing them directly.

**Stop receiving this email**
Report this email or read more about Declining to sign and Managing notifications.

If you are having trouble signing the document, please visit the Help with Signing page on our Support Center.

Download the DocuSign App

This message was sent to you by Georgia Mohrbacher who is using the DocuSign Electronic Signature Service. If you would rather not receive email from this sender you may contact the sender with your request.

**From:** Georgia Mohrbacher
**Sent:** Saturday, July 24, 2021 11:46 AM
**To:** teo johnson
**Subject:** Re: CloudKitchens Final Offer // Soul Kitchen

Hi Zena,

Thanks for your questions. I have attached our official material on what is included in this agreement.

Because CloudKitchens has hundreds of clients, (a few dozen just at this facility!) we don't do any custom contract addendums. Because it is a license agreement, it is more like signing up for a service, than a lease and therefore there isn't much individual negotiation on terms.

I completely understand your desire to see all the services spelled out clearly. You can rest assured that everything in that attachment is included in your agreement.

Please let me know if you'd like to hop on a call to discuss further. I will give you a call Monday afternoon if I don't hear from you.

Thank you!
Georgia


**Georgia Mohrbacher**
**Partnerships | New York**
**Cloud Kitchens**
email: georgia.mohrbacher@cloudkitchens.com
w: (914) 214-9765

**Schedule a time to speak with me**


On Fri, Jul 23, 2021 at 12:21 PM teo johnson <teoteojohnson@outlook.com> wrote:

> I would not opt out of this it simplifies the process of cost effective operations. The only issue I had is the detail of the support services provided in the language of the contract and that being just a little more clear in language.
>
>
>
> Sent from Mail for Windows 10
>
>
>
> Zena L. Powell
>
> Teo Johnson

20 Howard Drive

Bergenfield, NJ, 07621

PH: 201-374-2159

Zena MOBILE: 551-275-3771

Teo MOBILE: 646-546-9455

EMAIL: teoteojohnson@outlook.com

---

**From:** Georgia Mohrbacher <georgia.mohrbacher@cloudkitchens.com>
**Sent:** Thursday, July 22, 2021 11:15:31 AM
**To:** teo johnson <teoteojohnson@outlook.com>
**Subject:** Re: CloudKitchens Final Offer // Soul Kitchen

Hi Zena,

Do you have any questions so far about the contract?

There is one article in there I want to clarify for you:

| Beta Products Fees: | *Some Delivery Hubs are equipped with the Digital Platform. If available and you use the Digital Platform you shall pay a Program Fee of 4% of the Total Order, and a Credit Card Processing Fee of 2.9% of the Total Order as further described in Section 14 (in addition to the Processing Services Fee). You may terminate your use of (or opt back into) the Digital Platform by providing three (3) days written notice to Licensor or by checking this box* ☐ |
| --- | --- |

This refers to the pickup and takeout provider we are using in the facility, Flipdish. There will be a Flipdish tablet inside the lobby that people can order takeout and pickup from. The fees listed above are the processing fees that Flipdish takes for that service. You can opt out of this if you'd like, it is optional to be on this service.

Looking forward to speaking with you tomorrow at noon. Thank you!

**Georgia Mohrbacher**
**Partnerships | New York**
**Cloud Kitchens**
email: georgia.mohrbacher@cloudkitchens.com
w: (914) 214-9765

**Schedule a time to speak with me**

On Wed, Jul 21, 2021 at 8:46 AM Georgia Mohrbacher <georgia.mohrbacher@cloudkitchens.com> wrote:

Hi Zena,

Great speaking with you yesterday. I just sent over the License agreement via DocuSign. Please let me know if you have any questions or concerns about the contract. Looking forward to checking in for contract signing on **Friday, 7/23 at 12 p**m. I'll give you a call then.

To recap my proposal:

Initial deposit: $7,200
Monthly License Fee: $3,600
Monthly Operational Fee: $1,800
Total monthly fee: $5,400

JULY PROMOTION
If you are able to sign by 7/30, I can offer:

- First month of license fee FREE
- Next 3 months: Charged 50% of license fee (aka **$1800/mo** for months 2-4)
- * Please note you will still pay the operational expense during this time

**Key Dates**
**By 7/30** or sooner: Contract signed and $7200 deposit submitted
**8/1-8/30**: Kitchen and Digital onboarding
**9/1**: Access date to your kitchen, start cooking!

9/1-9/30: $0 license fee, $1800 operational expense
10/1-10/31: $1800 license fee + $1800 operational expense
11/1-11/30: $1800 license fee + $1800 operational expense
12/1-12/31: $1800 license fee + $1800 operational expense
1/1 : Full license fee of $3600 resumes

**Georgia Mohrbacher**
**Partnerships | New York**
**Cloud Kitchens**
email: georgia.mohrbacher@cloudkitchens.com
w: (914) 214-9765

**Schedule a time to speak with me**

**From:** teo johnson
**Sent:** Friday, July 23, 2021 12:13 PM
**To:** Georgia Mohrbacher
**Subject:** RE: CloudKitchens Final Offer // Soul Kitchen

YES! I See the contract but it does not state the specific services provided that were discussed in the presentation it only provides for a general statement. I would like to know it if there is an additional addendum that was states the services provided by the organization outside of the licensing and operational cost. Those are the services that I would like in detail to review included in the contract language as it is very broad to the term support in its current language.

Please advise as to the options for customizing the contract where the language of what services for support to the merchant are specifically provided and what is not specifically provided.

Thank you,

Sent from Mail for Windows 10

Zena L. Powell
Teo Johnson
20 Howard Drive
Bergenfield, NJ, 07621
PH: 201-374-2159
Zena MOBILE: 551-275-3771
Teo MOBILE: 646-546-9455
EMAIL: teoteojohnson@outlook.com

**From:** Georgia Mohrbacher
**Sent:** Thursday, July 22, 2021 11:15 AM
**To:** teo johnson
**Subject:** Re: CloudKitchens Final Offer // Soul Kitchen

Hi Zena,

Do you have any questions so far about the contract?

There is one article in there I want to clarify for you:



This refers to the pickup and takeout provider we are using in the facility, Flipdish. There will be a Flipdish tablet inside the lobby that people can order takeout and pickup from. The fees listed above are the processing fees that Flipdish takes for that service. You can opt out of this if you'd like, it is optional to be on this service.

Looking forward to speaking with you tomorrow at noon. Thank you!

**Georgia Mohrbacher**
**Partnerships | New York**
**Cloud Kitchens**
email: georgia.mohrbacher@cloudkitchens.com
w: (914) 214-9765

**Schedule a time to speak with me**


On Wed, Jul 21, 2021 at 8:46 AM Georgia Mohrbacher <georgia.mohrbacher@cloudkitchens.com>
wrote:

Hi Zena,

Great speaking with you yesterday. I just sent over the License agreement via DocuSign. Please let me
know if you have any questions or concerns about the contract. Looking forward to checking in for
contract signing on **Friday, 7/23 at 12 p**m. I'll give you a call then.

To recap my proposal:

Initial deposit: $7,200
Monthly License Fee: $3,600
Monthly Operational Fee: $1,800
Total monthly fee: $5,400

JULY PROMOTION
If you are able to sign by 7/30, I can offer:

- First month of license fee FREE
- Next 3 months: Charged 50% of license fee (aka **$1800/mo** for months 2-4)
- * Please note you will still pay the operational expense during this time


**Key Dates**
**By 7/30** or sooner: Contract signed and $7200 deposit submitted
**8/1-8/30**: Kitchen and Digital onboarding
**9/1**: Access date to your kitchen, start cooking!

9/1-9/30: $0 license fee, $1800 operational expense
10/1-10/31: $1800 license fee + $1800 operational expense
11/1-11/30: $1800 license fee + $1800 operational expense
12/1-12/31: $1800 license fee + $1800 operational expense
1/1 : Full license fee of $3600 resumes

**Georgia Mohrbacher**
**Partnerships | New York**
**Cloud Kitchens**
email: georgia.mohrbacher@cloudkitchens.com

w: (914) 214-9765

**Schedule a time to speak with me**

**From:** Georgia Mohrbacher
**Sent:** Saturday, July 24, 2021 11:46 AM
**To:** teo johnson
**Subject:** Re: CloudKitchens Final Offer // Soul Kitchen

Hi Zena,

Thanks for your questions. I have attached our official material on what is included in this agreement.

Because CloudKitchens has hundreds of clients, (a few dozen just at this facility!) we don't do any custom contract addendums. Because it is a license agreement, it is more like signing up for a service, than a lease and therefore there isn't much individual negotiation on terms.

I completely understand your desire to see all the services spelled out clearly. You can rest assured that everything in that attachment is included in your agreement.

Please let me know if you'd like to hop on a call to discuss further. I will give you a call Monday afternoon if I don't hear from you.

Thank you!
Georgia


**Georgia Mohrbacher**
**Partnerships | New York**
**Cloud Kitchens**
email: georgia.mohrbacher@cloudkitchens.com
w: (914) 214-9765

**Schedule a time to speak with me**


On Fri, Jul 23, 2021 at 12:21 PM teo johnson <teoteojohnson@outlook.com> wrote:

> I would not opt out of this it simplifies the process of cost effective operations. The only issue I had is the detail of the support services provided in the language of the contract and that being just a little more clear in language.
>
>
>
> Sent from Mail for Windows 10
>
>
>
> Zena L. Powell
>
> Teo Johnson

20 Howard Drive

Bergenfield, NJ, 07621

PH: 201-374-2159

Zena MOBILE: 551-275-3771

Teo MOBILE: 646-546-9455

EMAIL: teoteojohnson@outlook.com

---

**From:** Georgia Mohrbacher <georgia.mohrbacher@cloudkitchens.com>
**Sent:** Thursday, July 22, 2021 11:15:31 AM
**To:** teo johnson <teoteojohnson@outlook.com>
**Subject:** Re: CloudKitchens Final Offer // Soul Kitchen

Hi Zena,

Do you have any questions so far about the contract?

There is one article in there I want to clarify for you:

| Beta Products Fees: | Some Delivery Hubs are equipped with the Digital Platform. If available and you use the Digital Platform you shall pay a Program Fee of 4% of the Total Order, and a Credit Card Processing Fee of 2.9% of the Total Order as further described in Section 14 (in addition to the Processing Services Fee). You may terminate your use of (or opt back into) the Digital Platform by providing three (3) days written notice to Licensor or by checking this box ☐ |
| --- | --- |

This refers to the pickup and takeout provider we are using in the facility, Flipdish. There will be a Flipdish tablet inside the lobby that people can order takeout and pickup from. The fees listed above are the processing fees that Flipdish takes for that service. You can opt out of this if you'd like, it is optional to be on this service.

Looking forward to speaking with you tomorrow at noon. Thank you!

**Georgia Mohrbacher**
**Partnerships | New York**
**Cloud Kitchens**
email: georgia.mohrbacher@cloudkitchens.com
w: (914) 214-9765

**Schedule a time to speak with me**

On Wed, Jul 21, 2021 at 8:46 AM Georgia Mohrbacher <georgia.mohrbacher@cloudkitchens.com> wrote:

Hi Zena,

Great speaking with you yesterday. I just sent over the License agreement via DocuSign. Please let me know if you have any questions or concerns about the contract. Looking forward to checking in for contract signing on **Friday, 7/23 at 12 p**m. I'll give you a call then.

To recap my proposal:

Initial deposit: $7,200
Monthly License Fee: $3,600
Monthly Operational Fee: $1,800
Total monthly fee: $5,400

JULY PROMOTION
If you are able to sign by 7/30, I can offer:

- First month of license fee FREE
- Next 3 months: Charged 50% of license fee (aka **$1800/mo** for months 2-4)
- * Please note you will still pay the operational expense during this time


**Key Dates**
**By 7/30** or sooner: Contract signed and $7200 deposit submitted
**8/1-8/30**: Kitchen and Digital onboarding
**9/1**: Access date to your kitchen, start cooking!

9/1-9/30: $0 license fee, $1800 operational expense
10/1-10/31: $1800 license fee + $1800 operational expense
11/1-11/30: $1800 license fee + $1800 operational expense
12/1-12/31: $1800 license fee + $1800 operational expense
1/1 : Full license fee of $3600 resumes

**Georgia Mohrbacher**
**Partnerships | New York**
**Cloud Kitchens**
email: georgia.mohrbacher@cloudkitchens.com
w: (914) 214-9765

**Schedule a time to speak with me**

**From:** Georgia Mohrbacher
**Sent:** Thursday, July 22, 2021 11:15 AM
**To:** teo johnson
**Subject:** Re: CloudKitchens Final Offer // Soul Kitchen

Hi Zena,

Do you have any questions so far about the contract?

There is one article in there I want to clarify for you:



This refers to the pickup and takeout provider we are using in the facility, Flipdish. There will be a Flipdish tablet inside the lobby that people can order takeout and pickup from. The fees listed above are the processing fees that Flipdish takes for that service. You can opt out of this if you'd like, it is optional to be on this service.

Looking forward to speaking with you tomorrow at noon. Thank you!

**Georgia Mohrbacher**
**Partnerships | New York**
**Cloud Kitchens**
email: georgia.mohrbacher@cloudkitchens.com
w: (914) 214-9765

**Schedule a time to speak with me**

On Wed, Jul 21, 2021 at 8:46 AM Georgia Mohrbacher <georgia.mohrbacher@cloudkitchens.com> wrote:

Hi Zena,

Great speaking with you yesterday. I just sent over the License agreement via DocuSign. Please let me know if you have any questions or concerns about the contract. Looking forward to checking in for contract signing on **Friday, 7/23 at 12 p**m. I'll give you a call then.

To recap my proposal:

Initial deposit: $7,200
Monthly License Fee: $3,600
Monthly Operational Fee: $1,800
Total monthly fee: $5,400

JULY PROMOTION
If you are able to sign by 7/30, I can offer:

- First month of license fee FREE
- Next 3 months: Charged 50% of license fee (aka **$1800/mo** for months 2-4)
- * Please note you will still pay the operational expense during this time

**Key Dates**
**By 7/30** or sooner: Contract signed and $7200 deposit submitted
**8/1-8/30**: Kitchen and Digital onboarding
**9/1**: Access date to your kitchen, start cooking!

9/1-9/30: $0 license fee, $1800 operational expense
10/1-10/31: $1800 license fee + $1800 operational expense
11/1-11/30: $1800 license fee + $1800 operational expense
12/1-12/31: $1800 license fee + $1800 operational expense
1/1 : Full license fee of $3600 resumes

**Georgia Mohrbacher**
**Partnerships | New York**
**Cloud Kitchens**
email: georgia.mohrbacher@cloudkitchens.com
w: (914) 214-9765

**Schedule a time to speak with me**

**From:** teo johnson
**Sent:** Friday, July 23, 2021 12:21 PM
**To:** Georgia Mohrbacher
**Subject:** RE: CloudKitchens Final Offer // Soul Kitchen

I would not opt out of this it simplifies the process of cost effective operations. The only issue I had is the detail of the support services provided in the language of the contract and that being just a little more clear in language.

Sent from Mail for Windows 10

Zena L. Powell
Teo Johnson
20 Howard Drive
Bergenfield, NJ, 07621
PH: 201-374-2159
Zena MOBILE: 551-275-3771
Teo MOBILE: 646-546-9455
EMAIL: teoteojohnson@outlook.com

**From:** Georgia Mohrbacher <georgia.mohrbacher@cloudkitchens.com>
**Sent:** Thursday, July 22, 2021 11:15:31 AM
**To:** teo johnson <teoteojohnson@outlook.com>
**Subject:** Re: CloudKitchens Final Offer // Soul Kitchen

Hi Zena,

Do you have any questions so far about the contract?

There is one article in there I want to clarify for you:



| Beta Products Fees: | Some Delivery Hubs are equipped with the Digital Platform. If available and you use the Digital Platform you shall pay a Program Fee of 4% of the Total Order, and a Credit Card Processing Fee of 2.9% of the Total Order as further described in Section 14 (in addition to the Processing Services Fee). You may terminate your use of (or opt back into) the Digital Platform by providing three (3) days written notice to Licensor or by checking this box ☐ |

This refers to the pickup and takeout provider we are using in the facility, Flipdish. There will be a Flipdish tablet inside the lobby that people can order takeout and pickup from. The fees listed above are the processing fees that Flipdish takes for that service. You can opt out of this if you'd like, it is optional to be on this service.

Looking forward to speaking with you tomorrow at noon. Thank you!

**Georgia Mohrbacher**
**Partnerships | New York**
**Cloud Kitchens**
email: georgia.mohrbacher@cloudkitchens.com
w: (914) 214-9765

**[Schedule a time to speak with me](#)**

On Wed, Jul 21, 2021 at 8:46 AM Georgia Mohrbacher <[georgia.mohrbacher@cloudkitchens.com](mailto:georgia.mohrbacher@cloudkitchens.com)> wrote:

> Hi Zena,
>
> Great speaking with you yesterday. I just sent over the License agreement via DocuSign. Please let me know if you have any questions or concerns about the contract. Looking forward to checking in for contract signing on **Friday, 7/23 at 12 p**m. I'll give you a call then.
>
> To recap my proposal:
>
> Initial deposit: $7,200
> Monthly License Fee: $3,600
> Monthly Operational Fee: $1,800
> Total monthly fee: $5,400
>
> JULY PROMOTION
> If you are able to sign by 7/30, I can offer:
>
> - First month of license fee FREE
> - Next 3 months: Charged 50% of license fee (aka **$1800/mo** for months 2-4)
> - * Please note you will still pay the operational expense during this time
>
> **Key Dates**
> **By 7/30** or sooner: Contract signed and $7200 deposit submitted
> **8/1-8/30**: Kitchen and Digital onboarding
> **9/1**: Access date to your kitchen, start cooking!
>
> 9/1-9/30: $0 license fee, $1800 operational expense
> 10/1-10/31: $1800 license fee + $1800 operational expense
> 11/1-11/30: $1800 license fee + $1800 operational expense
> 12/1-12/31: $1800 license fee + $1800 operational expense
> 1/1 : Full license fee of $3600 resumes
>
> **Georgia Mohrbacher**
> **Partnerships | New York**
> **Cloud Kitchens**
> email: [georgia.mohrbacher@cloudkitchens.com](mailto:georgia.mohrbacher@cloudkitchens.com)
> w: (914) 214-9765

**[Schedule a time to speak with me](#)**

**From:** Georgia Mohrbacher
**Sent:** Wednesday, July 21, 2021 8:46 AM
**To:** teo johnson
**Subject:** CloudKitchens Final Offer // Soul Kitchen

Hi Zena,

Great speaking with you yesterday. I just sent over the License agreement via DocuSign. Please let me know if you have any questions or concerns about the contract. Looking forward to checking in for contract signing on **Friday, 7/23 at 12 p**m. I'll give you a call then.

To recap my proposal:

Initial deposit: $7,200
Monthly License Fee: $3,600
Monthly Operational Fee: $1,800
Total monthly fee: $5,400

JULY PROMOTION
If you are able to sign by 7/30, I can offer:

- First month of license fee FREE
- Next 3 months: Charged 50% of license fee (aka **$1800/mo** for months 2-4)
- * Please note you will still pay the operational expense during this time


**Key Dates**
**By 7/30** or sooner: Contract signed and $7200 deposit submitted
**8/1-8/30**: Kitchen and Digital onboarding
**9/1**: Access date to your kitchen, start cooking!

9/1-9/30: $0 license fee, $1800 operational expense
10/1-10/31: $1800 license fee + $1800 operational expense
11/1-11/30: $1800 license fee + $1800 operational expense
12/1-12/31: $1800 license fee + $1800 operational expense
1/1 : Full license fee of $3600 resumes

**Georgia Mohrbacher**
**Partnerships | New York**
**Cloud Kitchens**
email: georgia.mohrbacher@cloudkitchens.com
w: (914) 214-9765

**Schedule a time to speak with me**

**From:** no-reply@tryotter.com
**Sent:** Tuesday, July 27, 2021 10:14 AM
**To:** teoteojohnson@outlook.com
**Subject:** Welcome to CloudKitchens! Your invoice is ready for payment



otter

# Welcome to CloudKitchens, Zena!

## CloudKitchens uses Otter to power your restaurant

CloudKitchens partners with Otter to help manage your new delivery kitchen.

Manage invoices and pay your bills

Customize your delivery kitchen

Connect your delivery services

**Your one-time refundable fee is ready for review**

**From:** Georgia Mohrbacher via DocuSign
**Sent:** Wednesday, July 21, 2021 8:46 AM
**To:** Zena Powell
**Subject:** Please Sign: Documents for your Signature



Georgia Mohrbacher sent you a document to review and sign.

**REVIEW DOCUMENTS**

**Georgia Mohrbacher**
georgia.mohrbacher@cloudkitchens.com

Hi There,

Please see the documents attached for your signature. If you have any questions on the documents or if there's anything you require help with, please let us know.

**Do Not Share This Email**
This email contains a secure link to DocuSign. Please do not share this email, link, or access code with others.

**Alternate Signing Method**
Visit DocuSign.com, click 'Access Documents', and enter the security code:
48F6D1B3ADE249D7A8BC67037A063D843

**About DocuSign**
Sign documents electronically in just minutes. It's safe, secure, and legally binding. Whether you're in an office, at home, on-the-go -- or even across the globe -- DocuSign provides a professional trusted solution for Digital Transaction Management™.

**Questions about the Document?**
If you need to modify the document or have questions about the details in the document, please reach out to the sender by emailing them directly.

**Stop receiving this email**
Report this email or read more about Declining to sign and Managing notifications.

If you are having trouble signing the document, please visit the Help with Signing page on our Support Center.

Download the DocuSign App

This message was sent to you by Georgia Mohrbacher who is using the DocuSign Electronic Signature Service. If you would rather not receive email from this sender you may contact the sender with your request.

**From:** Georgia Mohrbacher
**Sent:** Tuesday, July 27, 2021 5:27 PM
**To:** teo johnson
**Subject:** CloudKitchens Invoice and Next Steps

Hi Zena,

I'm so excited you are coming on board, thank you for signing promptly! You should have received an email from noreply@otter.com to set up your billing account. Please let me know ASAP if you cannot find this email (check spam!) and I will look into it.

Once logged in, you will be able to view your invoice for your security deposit. When you click in to the invoice there will be a link on the right hand side that says "Pay manually via wire transfer". Once you've wired the money from your bank, please forward the confirmation to billing@cloudkitchens.com and copy me.

This article explains the process as well, but I am more than happy to get on Zoom with you to walk through the process or answer questions.
https://cloudkitchens.zendesk.com/hc/en-us/articles/360054488074-How-do-I-pay-my-invoice-


Once we receive confirmation of your wire, I will send you a kickoff email that will introduce you to your kitchen an digital onboarding teams and we will set up a Welcome call to get everything started!


Thank you!
Georgia

**Georgia Mohrbacher**
**Partnerships | New York**
**Cloud Kitchens**
email: georgia.mohrbacher@cloudkitchens.com
w: (914) 214-9765

**Schedule a time to speak with me**

**From:** teo johnson
**Sent:** Wednesday, August 4, 2021 4:38 PM
**To:** Kira Sergacheva
**Subject:** Re: Intro to Kira - Belleville K4 Soul Kitchen

Ok, sounds good. I am on my way

Get Outlook for iOS

**From:** Kira Sergacheva <kira.sergacheva@cloudkitchens.com>
**Sent:** Wednesday, August 4, 2021 4:36:46 PM
**To:** teo johnson <teoteojohnson@outlook.com>
**Subject:** Re: Intro to Kira - Belleville K4 Soul Kitchen

Sure, stop by any time before 9pm. I'm leaving now but our site supervisor Hadiyah will be here.


On Wed, Aug 4, 2021 at 4:20 PM teo johnson <teoteojohnson@outlook.com> wrote:
Anytime today is fine if I could come now I would appreciate it anytime this evening

Get Outlook for iOS

**From:** Kira Sergacheva <kira.sergacheva@cloudkitchens.com>
**Sent:** Wednesday, August 4, 2021 3:21:51 PM
**To:** teo johnson <teoteojohnson@outlook.com>
**Subject:** Re: Intro to Kira - Belleville K4 Soul Kitchen

Hi Teo,

totally. What time are you thinking?


On Wed, Aug 4, 2021 at 2:25 PM teo johnson <teoteojohnson@outlook.com> wrote:

-Hi Kira,


I would love to stop by today. If that is possible.


Thanks,

Sent from Mail for Windows 10


Zena L. Powell

20 Howard Drive

Bergenfield, NJ, 07621

PH: 201-374-2159

Zena MOBILE: 551-275-3771

Teo MOBILE: 646-546-9455

EMAIL: teoteojohnson@outlook.com

---

**From:** Kira Sergacheva
**Sent:** Wednesday, August 4, 2021 10:35 AM
**To:** Georgia Mohrbacher
**Cc:** teo johnson; Sawyer Daly
**Subject:** Re: Intro to Kira - Belleville K4 Soul Kitchen


Hi Zena,


Very nice to connect with you. Just let me know when you would like to stop by.


Best,


Kira

On Wed, Aug 4, 2021 at 9:59 AM Georgia Mohrbacher <georgia.mohrbacher@cloudkitchens.com> wrote:

Hi Kira,

I'd like to introduce you to Zena who will be in Kitchen 4 with her concept, Soul Kitchen! Zena, you can coordinate with Kira for when you would like to stop by the facility.

I've cc'd Sawyer in case Zena has any equipment specific questions.

Thanks all,

Georgia

**Georgia Mohrbacher**
**Partnerships | New York**

**Cloud Kitchens**
email: georgia.mohrbacher@cloudkitchens.com

w: (914) 214-9765

**Schedule a time to speak with me**

**From:** Francisco Arias
**Sent:** Tuesday, August 10, 2021 1:22 PM
**To:** teo johnson
**Cc:** Eric Abrams; priority@katom.com; Sarah Lawrence; Harry Westerman; Justin Ruiz; Kitchen Onboarding US; Sawyer Daly
**Subject:** Re: Katom: BEL_500 Cortlandt St - K4 - The Soul Kitchen


Hi Zena,

I just sent you a calendar invite for **Tuesday 8/10/2021 at 5:00 P.M.** with the zoom link embedded.

Best,
Francisco

On Tue, Aug 10, 2021 at 9:59 AM teo johnson <teoteojohnson@outlook.com> wrote:
I am located in kitchen 4 I will need restaurant and kitchen equipment and I would like to speak to some to someone as soon as possible.

Get Outlook for iOS

**From:** Francisco Arias <francisco.arias@cloudkitchens.com>
**Sent:** Monday, August 9, 2021 11:58:28 AM
**To:** teoteojohnson@outlook.com <teoteojohnson@outlook.com>; Eric Abrams <eabrams@katom.com>; priority@katom.com <priority@katom.com>; Sarah Lawrence <slawrence@katom.com>
**Cc:** Harry Westerman <harry.westerman@cloudkitchens.com>; Justin Ruiz <justin.ruiz@cloudkitchens.com>; Kitchen Onboarding US <kitchenonboarding-us@cloudkitchens.com>; Sawyer Daly <sawyer.daly@cloudkitchens.com>
**Subject:** Katom: BEL_500 Cortlandt St - K4 - The Soul Kitchen

Hi Zena,

I  hope all is well with you.

I would like to introduce you to Katom, our trusted equipment vendor who will also be able to help you with your equipment selection and layout.

To ensure the success of our customers, we have partnered with Katom who will guarantee low prices, in addition to their expertise in the equipment selection process. They will find the best kitchen equipment for you, your menu, and your new kitchen. Their extensive inventory spans from the most cost-effective to premium brands, and offer special pricing to Cloud Kitchens licensees across their in-house brands. Their predictable delivery times will help streamline your kitchen onboarding process, which will mean less hassle and lower costs to do what you are passionate about.

Please get back to me with your availability on Tuesday or Wednesday, so that I can coordinate a meeting with Katom's team.  Feel free to call me on (424) 781-2646 if you have any questions before you want to schedule a meeting.

In the meantime, feel free to explore Katom's extensive range and fantastic prices.

*to access the Cloud Kitchens x KaTom special discounts and price-matching please create an account with the link above

Best,
Francisco Arias
(424) 781-2646

**From:** teo johnson
**Sent:** Tuesday, August 31, 2021 11:15 AM
**To:** Georgia Mohrbacher
**Cc:** Kira Sergacheva; Sawyer Daly; Phil Aroian; Kip Beach
**Subject:** Re: Push back launch date

Georgia I am confused you stated to me my first rental payment would not be due until October and that was all I had to pay with regard to services and kitchen space. Please clarify if I am not understanding

Get Outlook for iOS

**From:** Georgia Mohrbacher <georgia.mohrbacher@cloudkitchens.com>
**Sent:** Tuesday, August 31, 2021 9:51:20 AM
**To:** teo johnson <teoteojohnson@outlook.com>
**Cc:** Kira Sergacheva <kira.sergacheva@cloudkitchens.com>; Sawyer Daly <sawyer.daly@cloudkitchens.com>; Phil Aroian <phil.aroian@cloudkitchens.com>; Kip Beach <kip.beach@cloudkitchens.com>
**Subject:** Re: Push back launch date

Good morning Zena,

Thank you for your email. I escalated the matter internally and we are unable to move the access date / commencement date given our process enables licensees to get launched in 30 days and did not appear to create any delays on our side. However, I understand that unforeseen events and delays can happen. In order to help you out on cost, we will delay charging the operational expenses (gas, water, cleaning, waste management etc) until you launch. This means you will pay absolutely nothing until September 15.

Keep in mind, the month of September you pay $0 license fee already and then only half price for the next 3 months.

Thank you,
Georgia

**Georgia Mohrbacher**
**Partnerships | New York**
**Cloud Kitchens**
email: georgia.mohrbacher@cloudkitchens.com
w: (914) 214-9765

**Schedule a time to speak with me**

On Sat, Aug 28, 2021 at 9:31 AM teo johnson <teoteojohnson@outlook.com> wrote:

It's not Teo it is Zena Powell teo is my brother and I was told by Georgia if there was any issue it would not be a problem to push my launch date back so now I am confused. Cause I don't sign agreements or do business with companies that seem like they are out to take my money and not work with me during the process and I expressed that before I signed the contract you mentioned Kira. I need to push back the launch dat to 9/15 and I have also CC'd Georgia because this was not what I was told to  during signing. If I have to pay rent due 10/1 then not being up and running by 9/1 is a problem I did not stated this business to have an issue with launch date clearly when the town is not going to approve my application within two weeks. And I still have equipment to be delivered and setup for teat run service. Please let me know what the decision is so I can know what steps to take moving forward because I have not even started yet and I do not like the tone that Kira set in her email and that is not the type of organization that was presented to me prior to signing and paying for the space. I understand and do business appropriately but not with companies that are not sociably conscious to their consumer base and current clients needs during launch and operations.

Get Outlook for iOS

**From:** Kira Sergacheva <kira.sergacheva@cloudkitchens.com>
**Sent:** Wednesday, August 25, 2021 5:48:33 PM
**To:** teo johnson <teoteojohnson@outlook.com>; Sawyer Daly <sawyer.daly@cloudkitchens.com>
**Subject:** Re: Push back launch date

Hi Teo,

Very nice to connect with you!

Unfortunately, we can't push the access date as it's outlined in the kitchen service agreement.

You mentioned that your paperwork was submitted but your equipment won't be delivered until you get approval from the town. You can totally schedule the equipment delivery as soon as our kitchen onboarding team and you approve your layout. The city will mostly look at your menu and food preparation processes. We had many operators who delivered their equipment while their health application was still reviewed by the city and it was fine.

Let me know if you would like to jump on the call with me about your equipment delivery.

Best,
Kira

On Wed, Aug 25, 2021 at 3:16 PM teo johnson <teoteojohnson@outlook.com> wrote:

Hi Kira,

I need to launch for 9/15 instead and Sawyer said to reach out to you because my paperwork was submitted but my equipment won't be delivered until I get the approval from the town. Which won't be until the first or second week of September. I just don't want any to lose any time and then my rent is due as soon as I launch in the space two weeks after. Please let me know what my options are. Sawyer told me to reach out to you.

Thank you,

Get Outlook for iOS

**From:** Kira Sergacheva
**Sent:** Tuesday, September 14, 2021 10:06 AM
**To:** teo johnson
**Subject:** Re: DELIVERY DATE IS CONFIRMED FOR 9/16/2021

Hi Zena,

Thank you for letting me know. As a reminder, here are some important details about
the equipment delivery:

- You **must be on site** to receive delivery
- We recommend selecting white glove service from your delivery supplier. Cloudkitchens team DOES NOT help moving the equipment.
- All delivery trucks must have a lift-gate to lower equipment to ground level
- We do not have a forklift on site
- A pallet jack is available for equipment move-in
- A lot of equipment comes in crates. You have to have the tools to break the crates
- All crates/pallets need to be discarded INTO the dumpsters on site.

I will be on-site on 9/16 and will help you with the move.

Best,

Kira

On Mon, Sep 13, 2021 at 5:19 PM teo johnson <teoteojohnson@outlook.com> wrote:

Greetings Kira,


The delivery date is confirmed for 9/16 he will confirm the exact time for me on 9/15/2021 as to when they will be there for me to receive the delivery.



Thank you



Sent from Mail for Windows 10



Zena L. Powell

20 Howard Drive

Bergenfield, NJ, 07621

PH: 201-374-2159

Zena MOBILE: 551-275-3771

Teo MOBILE: 646-546-9455

EMAIL: teoteojohnson@outlook.com

# EXHIBIT B

**From:** Kira Sergacheva
**Sent:** Monday, September 27, 2021 4:04 PM
**To:** teo johnson
**Subject:** Re: Notes from the Health Department

thanks!

On Mon, Sep 27, 2021 at 3:43 PM teo johnson <teoteojohnson@outlook.com> wrote:
  Okay I will redo it when I get there in RD in South Hackensack PICKING UP WALL HAND TOWEL

  Get Outlook for iOS

  **From:** Kira Sergacheva <kira.sergacheva@cloudkitchens.com>
  **Sent:** Monday, September 27, 2021 3:23:20 PM
  **To:** teo johnson <teoteojohnson@outlook.com>
  **Subject:** Re: Notes from the Health Department

  Hi Zena!

  Health department asked you to submit a new application filled out excluding their handwritten notes, otherwise, it's very hard to read.

  Regarding the food donation, please see more notes from Health Department below:

  "Meals (if meant to be consumed hot) must be logged daily, before leaving the location & upon arrival to the shelter. These hot held meals must be transported with PROPER means of hot holding at 135 degrees F or ABOVE.   Temperature abuse and improper food handling makes up the majority of foodborne illness outbreaks. **Adjust the application if this step-by step food log process is not documented in there.**"

  Best,

  Kira

  On Sat, Sep 25, 2021 at 4:02 PM teo johnson <teoteojohnson@outlook.com> wrote:

    Hi Kira,


    She is correct but I will not be donating any pre-prepped salads or sandwiches. This will actually be hot food and it will be all food from the steam table each day and I will also keep a log because you have to do a waste management log for writing off the cost of food not sold on my taxes that was expensed for sale may have been donated instead of discarded as unsold food for the day. There will be no salads or anything of that nature sold and everything is made to order except for the steam table food that will be heated and kept in a transport catering warmer in covered tins to maintain the

temperature of the food and the Shelter provide me a  receipt with date and time of drop off of the food.

I asked Teaneck do they provide anything that states it is not required and he said no if I am not selling the food the office will not provide anything to me because it is not required. She can call and confirm with them he stated but they do not provide anything in writing. But all food will be logged period as I keep A detailed record of Date of purchase for each category of food and purchasing schedule as well in My Excell Book For The Soul Kitchen Purchasing Schedule I Developed to ensure fresh ingredients and nothing will sit in my freezer longer then 2 Days not 3. Because I want to ensure the freshest ingredients I will be making purchases every few days and My seafood will come From The suppliers I provided. I am only buying fresh meats and produce nothing frozen. I will be freezing the burger I make by hand only for service upon opening then all burgers are made by hand and put in the Fridge for the days service the only items being kept are things like soups and Mac and cheese I am even making my rice every morning

Sent from Mail for Windows 10

Zena L. Powell

Teo Johnson

20 Howard Drive

Bergenfield, NJ, 07621

PH: 201-374-2159

Zena MOBILE: 551-275-3771

Teo MOBILE: 646-546-9455

EMAIL: teoteojohnson@outlook.com

---

**From:** Kira Sergacheva
**Sent:** Friday, September 24, 2021 2:01 PM
**To:** teo johnson
**Subject:** Re: Notes from the Health Department

Hi Zena,

I explained to Health Department that Teaneck didn't require anything from you for donating food. But they sent me the following:

*We had some retail food establishments in another town who donated foods*

*They donated hot breakfast sandwiches and basically used time & temperature control to make sure the sandwiches were properly reheated and kept at 135F during the 2 hour sale time that they were on the floor.  After 2 hours they would be placed in walk-in freezer and cooled down using appropriate bench marks.  All these times and temperatures were recorded in logs and items were delivered **frozen** to food banks.*

*If the retail food establishment plans on donating salads and other foods to pantries then they need to follow a similar plan ensuring these packaged salads are prepped, cooled and maintained at 41 or below during sale time AND provide adequate cold holding means during transportation that will keep these products at 41 or below.  Temperatures should be recorded in log throughout day, before the product leaves the facility and when it reaches its destination to ensure there is no time temperature abuse.*

*These prepackaged salads should have proper labeling and a use by date (I recommend no more than 3 days from the day it was packaged)."*

I can only suggest you either provide confirmation from Teaneck Health Department or implement a similar procedure to the above one.

Let me know,

Kira

On Fri, Sep 24, 2021 at 11:50 AM Kira Sergacheva <kira.sergacheva@cloudkitchens.com> wrote:

Hi Zena,

I forwarded your responses to the Health Department. In Belleville, the health department doesn't stop by before the opening. They approve you based on your application. Once you are approved by health, we can schedule your business license inspection which is performed by the building code department. It's an easy inspection, you just need all of your equipment set up for it.

The health department stops by within 3 months of opening. Since we opened in July nobody stopped by yet.

I hope we can schedule your business license inspection early next week!

Best,

Kira

On Thu, Sep 23, 2021 at 8:08 PM teo johnson <teoteojohnson@outlook.com> wrote:

Hi Kira,

Please let me know when she is ready to stop by for the inspection. I answered all the questions as I know what she was looking for weather I actually knew how to store and lable my food using the FIFO method.

Sent from Mail for Windows 10

Zena L. Powell

Teo Johnson

20 Howard Drive

Bergenfield, NJ, 07621

PH: 201-374-2159

Zena MOBILE: 551-275-3771

Teo MOBILE: 646-546-9455

EMAIL: teoteojohnson@outlook.com

---

**From:** Kira Sergacheva
**Sent:** Monday, September 20, 2021 11:58 AM
**To:** teo johnson
**Subject:** Re: Notes from the Health Department

Hi Zena,

Following up on the notes from the Health Department.

Best,

Kira

On Thu, Sep 16, 2021 at 4:10 PM Kira Sergacheva <kira.sergacheva@cloudkitchens.com> wrote:

> Hi Zena!

> Please see the notes from the Health Department. You should address them and I will forward your response to them.

> Thanks,

Kira

**From:** teo johnson
**Sent:** Thursday, October 14, 2021 11:17 AM
**To:** Alyssa Parbhoo
**Cc:** Shyanne Gaston; Kira Sergacheva
**Subject:** Re: Welcome to CloudKitchens, Soul Kitchen! K4 - New Jersey Belleville

Please call me or we are going to have a legal problem I am tired of the emails which takes to long you have to be diligent and business is about timing not waiting for emails period. I need to speak with some one today. Immediately my business is as not placed on the kiosk for flipdish and if I had to do everything myself then the services I paid for on boarding must be applied elsewhere. Secondly I need an itemized of invoice of what the operational cost are going to and detailing what I am paying for for my financials period also unprofessional. This operation is about to have a problem if we don't get this ironed out cause I have never lost any case and I would hate to have to file a case. I am not appreciative of whatever is going on with promotions the end users clients should not be suffering

Get Outlook for iOS

**From:** Alyssa Parbhoo <alyssa.parbhoo@cloudkitchens.com>
**Sent:** Thursday, October 14, 2021 10:05:43 AM
**To:** teo johnson <teoteojohnson@outlook.com>
**Cc:** Shyanne Gaston <shyanne.gaston@cloudkitchens.com>; Kira Sergacheva <kira.sergacheva@cloudkitchens.com>
**Subject:** Re: Welcome to CloudKitchens, Soul Kitchen! K4 - New Jersey Belleville

Good morning,

Are you referring to the delivery platform fees or operational fees? I apologize for any miscommunications, but definitely happy to help with any Digital Onboarding needs or questions.

On Wed, Oct 13, 2021 at 7:06 PM teo johnson <teoteojohnson@outlook.com> wrote:
Ultimately, Kira has been the one forthcoming and state exactly what the operations are but it is unfortunate that we were mislead and not provided the opportunity to make a more informed decision had we known about the cost outside of you monthly fees

Get Outlook for iOS

**From:** Alyssa Parbhoo <alyssa.parbhoo@cloudkitchens.com>
**Sent:** Wednesday, October 6, 2021 2:54:02 PM
**To:** teo johnson <teoteojohnson@outlook.com>
**Cc:** Shyanne Gaston <shyanne.gaston@cloudkitchens.com>; Kira Sergacheva <kira.sergacheva@cloudkitchens.com>
**Subject:** Re: Welcome to CloudKitchens, Soul Kitchen! K4 - New Jersey Belleville

Hello,

I tried calling the number on file (551) 275-3771, but was unable to reach you. Feel free to give me a call at (646) 386-8220 at your earliest convenience, and I would be happy to answer any questions when it comes to Digital Onboarding.

To answer your questions, please see below.

- Your Otter tablet should be delivered to you today. I just provided the logins to Kira and emailed them to you as well. I am looping Kira here so she can assist you with getting your tablet.
    - Username: The1SoulKitchen@gmail.com
    - Password: soulkitchen123
- The corporate address can be changed by calling UberEats at (833) 275-3287 or emailing restaurants@uber.com, or we can assist with requesting this change.
- As for the emails you are receiving about someone logging into your account, I believe this is Otter refreshing the system to check for changes. This does not mean there is someone externally accessing your information necessarily. If the emails are bothersome, I might suggest a filter, but I do of course understand your concern for security purposes.

Please feel free to let me know when you would like the store to be set live and I would be happy to assist. As well, if you received your logins for Grubhub, please share those as well. Thank you!

On Wed, Oct 6, 2021 at 2:27 PM teo johnson <teoteojohnson@outlook.com> wrote:
Hello Shyanne,

Someone is logging into my account and I don't have any tablet for otter for anything what is going on? I have not received any tablet and for some reason these services have the wrong address as my corporate address but the right location address door dash and Uber eats why do they have a Sandiego address attached to my file what is being provided to them please someone call me ASAP.

Get Outlook for iOS

**From:** teo johnson <teoteojohnson@outlook.com>
**Sent:** Saturday, October 2, 2021 5:14:12 PM
**To:** Shyanne Gaston <shyanne.gaston@cloudkitchens.com>
**Cc:** Alyssa Parbhoo <alyssa.parbhoo@cloudkitchens.com>
**Subject:** RE: Welcome to CloudKitchens, Soul Kitchen! K4 - New Jersey Belleville

I fixed it but I still have not received a tablet and was not logged in when they stated I was so I need to know who and where has the tablet gone I will contact them as well. I stayed home in anticipation of receipt of the tablet as I received a phone call that stated it was being delivered.

Sent from Mail for Windows 10

Zena L. Powell

Teo Johnson

20 Howard Drive

Bergenfield, NJ, 07621

PH: 201-374-2159

Zena MOBILE: 551-275-3771

Teo MOBILE: 646-546-9455

EMAIL: teoteojohnson@outlook.com

---

**From:** Shyanne Gaston
**Sent:** Friday, October 1, 2021 3:16 PM
**To:** teo johnson
**Cc:** Alyssa Parbhoo
**Subject:** Re: Welcome to CloudKitchens, Soul Kitchen! K4 - New Jersey Belleville

of course! @Alyssa Parbhoo can integrate your accounts into Otter!

On Fri, Oct 1, 2021 at 3:09 PM teo johnson <teoteojohnson@outlook.com> wrote:

  Thank you! Because they were coming through my phone like gangbusters.

  Sent from Mail for Windows 10

  Zena L. Powell

  Teo Johnson

  20 Howard Drive

Bergenfield, NJ, 07621

PH: 201-374-2159

Zena MOBILE: 551-275-3771

Teo MOBILE: 646-546-9455

EMAIL: teoteojohnson@outlook.com

**From:** Shyanne Gaston
**Sent:** Wednesday, September 29, 2021 1:14 PM
**To:** teo johnson
**Cc:** Momoh Pujeh; Kira Sergacheva; Alyssa Parbhoo
**Subject:** Re: Welcome to CloudKitchens, Soul Kitchen! K4 - New Jersey Belleville

Good Afternoon,

Thank you for bringing this to our attention. Please keep us up to date on what you and UberEats have discussed. Their system will temporarily deactivate your account or we can set your hours to 4-5 am on Sundays. So you are open but won't receive orders. It is a common practice for us to set hours at 4-5am on Sundays because that time and day has the best chance of orders not being placed. Please let us know if you want to change the hours or work something else out with UberEats.

Best,

On Tue, Sep 28, 2021 at 7:57 PM teo johnson <teoteojohnson@outlook.com> wrote:

Ok but Uber eats is a real problem I am not open and they are taking orders And I have reached out to them instead of pausing the orders indefinitely they are trying to put me as temporarily closed which sends out the wrong marketing message if they don't fix this we have a problem because I don't even know who the customers are to call them back.

Get Outlook for iOS

**From:** Shyanne Gaston <shyanne.gaston@cloudkitchens.com>
**Sent:** Monday, September 27, 2021 2:14:20 PM
**To:** teo johnson <teoteojohnson@outlook.com>
**Cc:** Momoh Pujeh <momoh.pujeh@cloudkitchens.com>; Kira Sergacheva
<kira.sergacheva@cloudkitchens.com>; Alyssa Parbhoo <alyssa.parbhoo@cloudkitchens.com>
**Subject:** Re: Welcome to CloudKitchens, Soul Kitchen! K4 - New Jersey Belleville

Good Afternoon,

Hope you had a great weekend. You are completely set up on UberEats. Doordash is in the last
stages of completing your account. You will get an email to set up your password, once they are
finished on their end. Can you please send me the copy of your signed Grubhub contract. I will try
and get Grubhub to move quicker on your brand. UberEats, Doordash and Grubhub are the only
platforms we can monitor progress on. Once you have your Chownow credentials, please send over
and we can integrate that into Otter as well.

Any other delivery platforms you are working with please send over the credentials if it integrates
into Otter. The list of platforms that integrate with Otter is here. If we do not integrate with a
platform you are using, there is a manual entry portion you would do. This allows our runners to
know that there is an order that needs to be processed outside of the Otter integrations.

Best,

On Sun, Sep 26, 2021 at 12:17 PM teo johnson <teoteojohnson@outlook.com> wrote:

I am promoting today and through out the next few day by sending out menu flyers to build my
customer base out prior to opening this coming week Kira stated I would be inspected this week
and My EIN SAWYER HAS AND SO DO YOU I SENT IT IN THE GROUP EMAIL CALLED ZENA UPDATE
ITS IN THAT EMAIL STRING I HAD RESPONDED TO SAWYER WITH ALL THOSE DOCUMENTS AND
COPIED EVERYONE

Get Outlook for iOS

**From:** Shyanne Gaston <shyanne.gaston@cloudkitchens.com>
**Sent:** Friday, September 24, 2021 11:24:36 AM
**To:** teo johnson <teoteojohnson@outlook.com>
**Cc:** Momoh Pujeh <momoh.pujeh@cloudkitchens.com>; Kira Sergacheva
<kira.sergacheva@cloudkitchens.com>
**Subject:** Re: Welcome to CloudKitchens, Soul Kitchen! K4 - New Jersey Belleville

Good Morning,

Hope you are doing well! I wanted to follow up with you on your progress thus far. Have you
received your Grubhub contract? I also need your EIN for Doordash. Kira let me know you wanted
to partner with Chownow. We do not onboard operators with Chownow. Please use this link to
sign up for Chownow.

Best,

Best,

On Fri, Sep 17, 2021 at 2:00 PM Shyanne Gaston <shyanne.gaston@cloudkitchens.com> wrote:

Hello,

Here is your digital onboarding update. Your UberEats account is set in our system! You should
have received a Grubhub contract, please review and sign as soon as possible. I am still waiting for
your EIN to send to Doordash.

Best,

On Mon, Sep 13, 2021 at 9:41 AM teo johnson <teoteojohnson@outlook.com> wrote:

I will be submitting the other menus to you by 2 pm today


Get Outlook for iOS

---

**From:** Shyanne Gaston <shyanne.gaston@cloudkitchens.com>
**Sent:** Friday, September 10, 2021 2:06:24 PM
**To:** teo johnson <teoteojohnson@outlook.com>
**Cc:** Momoh Pujeh <momoh.pujeh@cloudkitchens.com>
**Subject:** Re: Welcome to CloudKitchens, Soul Kitchen! K4 - New Jersey Belleville


Hello,


Our menu team had a question about your menu. Some menu items say "with 2 sides". Should the team pull all the sides from your sides category to be modifiers for those items?


The Doordash team needs your EIN and the Grubhub team is working through a large backlog. They are behind and we appreciate your patience getting you set up on Grubhub.


Best,


On Thu, Sep 2, 2021 at 4:33 PM Shyanne Gaston <shyanne.gaston@cloudkitchens.com> wrote:

Sounds good! Thank you for the update!


On Thu, Sep 2, 2021 at 3:29 PM teo johnson <teoteojohnson@outlook.com> wrote:

Apologies for the delay in getting the others out but I was not feeling well and wanted let you know I am working on the menus still and putting them in the form provided.

Get Outlook for iOS

---

**From:** Shyanne Gaston <shyanne.gaston@cloudkitchens.com>
**Sent:** Thursday, September 2, 2021 3:26:13 PM
**To:** teo johnson <teoteojohnson@outlook.com>
**Cc:** Jordan Palacios <richard.jordanpalacios@cloudkitchens.com>; Georgia Mohrbacher <georgia.mohrbacher@cloudkitchens.com>; Sawyer Daly <sawyer.daly@cloudkitchens.com>; Momoh Pujeh <momoh.pujeh@cloudkitchens.com>
**Subject:** Re: Welcome to CloudKitchens, Soul Kitchen! K4 - New Jersey Belleville

Thank you! This will be sent to our team to build your menu!

On Thu, Sep 2, 2021 at 3:21 PM teo johnson <teoteojohnson@outlook.com> wrote:

Uber eats credentials are as follows

Username: teoteojohnson@outlook.com

Password: Mother3443!zpow

Get Outlook for iOS

---

**From:** Shyanne Gaston <shyanne.gaston@cloudkitchens.com>
**Sent:** Thursday, September 2, 2021 3:19:29 PM
**To:** teo johnson <teoteojohnson@outlook.com>
**Cc:** Jordan Palacios <richard.jordanpalacios@cloudkitchens.com>; Georgia Mohrbacher <georgia.mohrbacher@cloudkitchens.com>; Sawyer Daly <sawyer.daly@cloudkitchens.com>; Momoh Pujeh <momoh.pujeh@cloudkitchens.com>
**Subject:** Re: Welcome to CloudKitchens, Soul Kitchen! K4 - New Jersey Belleville

Hello Zena,

I believe Momoh sent you the Doordash form to complete. Grubhub is working on their backlog as fast as they can! If you send us your UberEats credentials we can go in and have the team build your menu on the account.


Best,


On Wed, Sep 1, 2021 at 11:56 AM teo johnson <teoteojohnson@outlook.com> wrote:

Greetings! Shyanne,


I received the email to finish setting up for The Soul Kitchen from Uber but nothing from anywhere else and My menu is not posted inside the Uber account yet. Please advise as to the status of the menu.


I will be submitting the other two menus and The New brands online today as well and to directly via email so that you can have them to submit for uploading.


Thank you,




Sent from Mail for Windows 10


Zena L. Powell

20 Howard Drive

Bergenfield, NJ, 07621

PH: 201-374-2159

Zena MOBILE: 551-275-3771

Teo MOBILE: 646-546-9455

EMAIL: teoteojohnson@outlook.com

---

**From:** Shyanne Gaston <shyanne.gaston@cloudkitchens.com>
**Sent:** Monday, August 30, 2021 4:59:53 PM
**To:** teo johnson <teoteojohnson@outlook.com>
**Cc:** Jordan Palacios <richard.jordanpalacios@cloudkitchens.com>; Georgia Mohrbacher
<georgia.mohrbacher@cloudkitchens.com>; Sawyer Daly
<sawyer.daly@cloudkitchens.com>; Momoh Pujeh <momoh.pujeh@cloudkitchens.com>
**Subject:** Re: Welcome to CloudKitchens, Soul Kitchen! K4 - New Jersey Belleville


My apologies. I will connect with Momoh.


Thank You,


On Mon, Aug 30, 2021 at 2:11 PM teo johnson <teoteojohnson@outlook.com> wrote:

I only have the other 2 brands to submit today online I just finished the menus over the
weekend and secured BOP INSURANCE


Get Outlook for iOS

---

**From:** teo johnson <teoteojohnson@outlook.com>
**Sent:** Monday, August 30, 2021 2:11:16 PM
**To:** Shyanne Gaston <shyanne.gaston@cloudkitchens.com>
**Cc:** Jordan Palacios <richard.jordanpalacios@cloudkitchens.com>; Georgia Mohrbacher
<georgia.mohrbacher@cloudkitchens.com>; Sawyer Daly
<sawyer.daly@cloudkitchens.com>; Momoh Pujeh <momoh.pujeh@cloudkitchens.com>
**Subject:** Re: Welcome to CloudKitchens, Soul Kitchen! K4 - New Jersey Belleville

I also submitted photos

Get Outlook for iOS

---

**From:** teo johnson <teoteojohnson@outlook.com>
**Sent:** Monday, August 30, 2021 2:10:56 PM
**To:** Shyanne Gaston <shyanne.gaston@cloudkitchens.com>
**Cc:** Jordan Palacios <richard.jordanpalacios@cloudkitchens.com>; Georgia Mohrbacher <georgia.mohrbacher@cloudkitchens.com>; Sawyer Daly <sawyer.daly@cloudkitchens.com>; Momoh Pujeh <momoh.pujeh@cloudkitchens.com>
**Subject:** Re: Welcome to CloudKitchens, Soul Kitchen! K4 - New Jersey Belleville

I submitted my brand online multiple times the first one and setup my dashboard

Get Outlook for iOS

---

**From:** teo johnson <teoteojohnson@outlook.com>
**Sent:** Monday, August 30, 2021 2:10:04 PM
**To:** Shyanne Gaston <shyanne.gaston@cloudkitchens.com>
**Cc:** Jordan Palacios <richard.jordanpalacios@cloudkitchens.com>; Georgia Mohrbacher <georgia.mohrbacher@cloudkitchens.com>; Sawyer Daly <sawyer.daly@cloudkitchens.com>; Momoh Pujeh <momoh.pujeh@cloudkitchens.com>
**Subject:** Re: Welcome to CloudKitchens, Soul Kitchen! K4 - New Jersey Belleville

Please call me emails only and no contact via phone prolongs any process in any business but I am heading over to the location to iron out the onboard for the brands and setup delivery of my equipment with Kira

Get Outlook for iOS

---

**From:** teo johnson <teoteojohnson@outlook.com>
**Sent:** Monday, August 30, 2021 2:08:45 PM
**To:** Shyanne Gaston <shyanne.gaston@cloudkitchens.com>
**Cc:** Jordan Palacios <richard.jordanpalacios@cloudkitchens.com>; Georgia Mohrbacher <georgia.mohrbacher@cloudkitchens.com>; Sawyer Daly <sawyer.daly@cloudkitchens.com>; Momoh Pujeh <momoh.pujeh@cloudkitchens.com>
**Subject:** Re: Welcome to CloudKitchens, Soul Kitchen! K4 - New Jersey Belleville

I submitted to momoh

Get Outlook for iOS

---

**From:** teo johnson <teoteojohnson@outlook.com>
**Sent:** Monday, August 30, 2021 2:08:01 PM
**To:** Shyanne Gaston <shyanne.gaston@cloudkitchens.com>
**Cc:** Jordan Palacios <richard.jordanpalacios@cloudkitchens.com>; Georgia Mohrbacher <georgia.mohrbacher@cloudkitchens.com>; Sawyer Daly <sawyer.daly@cloudkitchens.com>; Momoh Pujeh <momoh.pujeh@cloudkitchens.com>
**Subject:** Re: Welcome to CloudKitchens, Soul Kitchen! K4 - New Jersey Belleville

Shyanne I have been completed it and have the screen shot and have been submitted to no oh since you stated you were no longer the point of contact

Get Outlook for iOS

---

**From:** Shyanne Gaston <shyanne.gaston@cloudkitchens.com>
**Sent:** Monday, August 30, 2021 1:47:44 PM
**To:** teo johnson <teoteojohnson@outlook.com>
**Cc:** Jordan Palacios <richard.jordanpalacios@cloudkitchens.com>; Georgia Mohrbacher <georgia.mohrbacher@cloudkitchens.com>; Sawyer Daly <sawyer.daly@cloudkitchens.com>; Momoh Pujeh <momoh.pujeh@cloudkitchens.com>
**Subject:** Re: Welcome to CloudKitchens, Soul Kitchen! K4 - New Jersey Belleville

Hello,

I wanted to follow up with you since the form to start the digital onboarding process has not been completed yet. Here is the form to start the onboarding process with the delivery platforms! Please complete this as soon as possible.

Best,

On Wed, Aug 4, 2021 at 3:19 PM Shyanne Gaston <shyanne.gaston@cloudkitchens.com> wrote:

Hello Zena,

Thank you for joining the call today. I really enjoyed our conversation and learning more about what your vision is for Soul Kitchen. Please watch the video as it covers most of what we chatted about today.

We are planning to launch [number of brands] brands using the CK Assisted onboarding route. Below you may find the next important dates for your onboarding:

| Submit your First brand | Attend the Launch Webinar | Attend the Otter/Support Webinar | Kitchen Access Date | |
|---|---|---|---|---|
| 08/09/2021 | Register Here | Register Here | 09/01/2021 | |

Here is the presentation we went over.
Here is the form to complete to start the onboarding process with the delivery platforms!

I will follow up with you around August 16th to make sure we stay as close to the timeline as possible. We are super excited to launch your brands across digital platforms. Please feel free to reach back to me with any questions you may have.

Best,

--

Shyanne Gaston

*Onboarding Specialist*


On Wed, Aug 4, 2021 at 12:17 PM Georgia Mohrbacher
<georgia.mohrbacher@cloudkitchens.com> wrote:

Hi Zena,


Please see link below to the articles around menu optimization we discussed on this morning's call.


https://cloudkitchens.zendesk.com/hc/en-us/articles/360052300353-How-to-Optimize-Your-Menu


**Georgia Mohrbacher**
**Partnerships | New York**

**Cloud Kitchens**
email: georgia.mohrbacher@cloudkitchens.com

w: (914) 214-9765


**Schedule a time to speak with me**


On Mon, Aug 2, 2021 at 9:08 AM Georgia Mohrbacher
<georgia.mohrbacher@cloudkitchens.com> wrote:



CloudKitchens'

# Thank you for partnering with us!

Hi Zena,

Welcome to the CloudKitchens family! We are excited to have the Soul Kitchen join us at New Jersey - Belleville 500 Cortlandt Street.

We'd love to get started by introducing you to our team and walking through our onboarding process in detail during a Welcome Call. **I will reach out to get that scheduled shortly.**

**Kitchen Onboarding**

Meet **Jordan Palacios**, from the Kitchen Onboarding team. They will ensure your kitchen is planned, permitted, and ready to operate. In order to keep you on schedule, please compile the following documents before the call:

1. **Detailed list of Food Service Equipment** that you plan to bring to your kitchen.

2. **Specification "Cut Sheets"**, one for each piece of equipment (learn more)

**Digital Onboarding**

Meet **Shyanne Gaston**, from the Digital Onboarding team. They will guide you to set up your accounts on the delivery platforms, and get them connected to our Kitchen Technology. Please take the following steps before the call:

1. **Watch this video** to familiarize yourself with the process

2. **Complete a draft of your menu** (with prices)

**Key Dates**

Please remember that your Kitchen Access Date is **9/1/2021**.

- Reimbursable Operating Expenses (ROEs) and Storage Fees (if applicable) will start on this date.

- Your monthly License Fee will start 30 days after your Access Date.

• We look forward to working together and speaking with you soon!

Georgia Mohrbacher

**Georgia Mohrbacher**
**Partnerships | New York**

**Cloud Kitchens**
email: [georgia.mohrbacher@cloudkitchens.com](mailto:georgia.mohrbacher@cloudkitchens.com)

w: (914) 214-9765

**Schedule a time to speak with me**

--

Shyanne Gaston

*Onboarding Specialist*

--

Shyanne Gaston

*Onboarding Specialist*

--

Shyanne Gaston

*Onboarding Specialist*

--

Shyanne Gaston

*Onboarding Specialist*

--

Shyanne Gaston

*Onboarding Specialist*

--

Shyanne Gaston

*Onboarding Specialist*

--

Shyanne Gaston

*Onboarding Specialist*

--

Shyanne Gaston

*Onboarding Specialist*

--

Shyanne Gaston

*Onboarding Specialist*

--

Shyanne Gaston

*Onboarding Specialist*

--

Shyanne Gaston

*NE Onboarding Coordinator*

***Still Need Help?***
**Otter/ Delivery Platform:** Live Chat *via Otter Tablet*, 1-70-HEY-OTTER, or hello@tryotter.com
**Billing or Collections:** Billing@cloudkitchens.com
**Flipdish:** Help@flipdish.com
**Customer Success Resources:** Use this link here

--

Shyanne Gaston

*NE Onboarding Coordinator*

***Still Need Help?***

**Digital Onboarding***:* Use this link here

**Kitchen Onboarding***:* Use this link here

**Customer Success Resources:** Use this link here
**Otter/ Delivery Platform:** Live Chat *via Otter Tablet*, 1-70-HEY-OTTER, or hello@tryotter.com

--
Best,
Alyssa
CLOUD KITCHENS
Alyssa Parbhoo
Digital Onboarding Specialist
Schedule time with me here!

--
Best,
Alyssa

CLOUD
KITCHENS

Alyssa Parbhoo
Digital Onboarding Specialist
Schedule time with me here!

**From:** teo johnson
**Sent:** Thursday, November 18, 2021 5:30 PM
**To:** Kira Sergacheva
**Subject:** Re: [Action Required]: CloudKitchens invoice is 1 day past due

Hello Kira,

WTF IS WRONG WITH YOUR STAFF ARE THEY DIMB OR WHAT? Why would you people use my private flipdish account and link it to your terminal instead of setting up one as you stated you would. I did not give you permission to do that I gave you permission to setup a flipdish and link it to your terminal and provide me with the information which never happened. And again what I was suppose to have paid for as apart of services provided that were pitched for the deal. So it is official I have had it with the dumb inefficient and incompetent actions of your company and team who is definitely not in any kind of corporate compliance and so you should read the example of what a licensing contract is suppose to include and that it is still an implied commercial lease when dealing with real property and is regulated by the securities exchange and other organizations. This is entirely too much you have cost me a tremendous amount of business from the very beginning with me not being open and you guys launched my store in September and with the delivery platforms and with otter I have had Enuff all of this is going on another report I am sick of this nonsense

Get Outlook for iOS

**From:** Kira Sergacheva <kira.sergacheva@cloudkitchens.com>
**Sent:** Wednesday, November 17, 2021 5:20:30 PM
**To:** teo johnson <teoteojohnson@outlook.com>
**Subject:** Re: [Action Required]: CloudKitchens invoice is 1 day past due

Hi Zena,

I just checked your invoice and agreement again. You were right about the incorrect amount. I just voided the old invoice and sent you a new one. Let me know if you have any questions. We will make sure it won't happen again.

Best,

Kira

On Tue, Nov 16, 2021 at 10:28 AM Kira Sergacheva <kira.sergacheva@cloudkitchens.com> wrote:
 Hi Zena,

 I double-checked the invoice and it is correct.

 Best,

 Kira

On Thu, Nov 11, 2021 at 11:47 AM teo johnson <teoteojohnson@outlook.com> wrote:
His invoice is wrong please refer to my original agreement and I will forward that email as well I am not paying this it need to be corrected immediately let me attach the 12 page agreement here
Get Outlook for iOS

**From:** no-reply=tryotter.com@notifications.citystoragesystems.com <no-reply=tryotter.com@notifications.citystoragesystems.com> on behalf of no-reply@tryotter.com <no-reply@tryotter.com>
**Sent:** Thursday, November 11, 2021 12:03 AM
**To:** teoteojohnson@outlook.com
**Subject:** [Action Required]: CloudKitchens invoice is 1 day past due

## otter

Hi Soul Kitchen

Our records show that your invoice for 500 CORTLANDT STREET BEL LLC is past due. Please click the "Pay Now" button below to submit payment.

**$6,420.23**

Due Nov 10, 2021

**Location**

500 CORTLANDT STREET BEL LLC

500 Cortlandt St
Belleville, NJ, 07109

Pay Invoice

You must pay your outstanding balance in full within 6 days of receiving this notice. Please pay as soon as possible in order to avoid further escalation of your account, which may include disconnection of services due to non-payment. If you have paid by paper check or believe that you have received this notice in error, please immediately contact our Billing Department through the contact information noted below.

Button not working? Click the following link below:
https://manager.tryotter.com/billing/135988bd-a46a-43fd-bb71-6fcf281b3768/invoice/89433e31-8010-48c1-8fba-efd16d6ccc51

**We're here to help**

If you have any questions regarding billing, please email us at billing@cloudkitchens.com.

Best,
CloudKitchens team

Otter. All Rights Reserved.
Privacy Policy | Terms & Conditions

**From:** Kira Sergacheva
**Sent:** Thursday, December 2, 2021 6:43 PM
**To:** Kip Beach; Hadiyah McKenzie
**Subject:** Follow Up on Last Night

Dear Operators,

I want to follow up in regards to last night's incident involving PSE&G and the Fire Department. To summarize, there was no active gas leak in the building and this morning we identified and fixed the cause of the smell. Last night, we followed the direction provided by the Fire Department and closed the building to err on the side of caution. Please see the details below:

This morning we had our regular HVAC maintenance company inspect the equipment on the roof. Upon further investigation, the technician found that the reported smell was coming from 1 heating unit. That heating unit uses gas, but when it was released it didn't ignite into the burner because of a crossed wire in the unit. Because it didn't ignite, the unit shut off and tried again in half an hour. The fumes from that heating unit were perceived as a gas leak smell. The unit has been adjusted this morning so nobody should feel any smells anymore. If you still do, please let me know.

I would like you for your patience and understanding last night. Your safety is our top priority and I believe it's better to be safe than sorry.

I will discount your December invoice by 1 day of license fee, and 1 day of operating expenses to offset some of your losses.

Please let me know if you have any questions.

Best,
Kira

**From:** teo johnson
**Sent:** Thursday, December 16, 2021 7:09 PM
**To:** Kip Beach
**Subject:** RE: Your November Outstanding balance - FINAL NOTICE

Greeting! Kip,

Any attempt to illegally evict me without going to court will be met with a phone call to the Sheriffs Department at which time it will be deemed illegal to do so no matter what contract is in place under New jersey State Law and has been confirmed by the County Court House and the Belleville police department. California Law does not apply here in this state and cannot be enforced in the state of New Jersey all Landlords Licensors anyone dealing in commercial property have guidelines under New Jersey State Annotated law that must be adhered to per the Special civil Division of Essex County. Any attempt to unlawfully evict me from a space without proceeding to court will result in additional immediate legal action and may result in criminal implications for your employee(s). Any attempt to change locks or deny access without having the appropriate legal document and being executed by the proper Authorities is a violation of New Jersey State Law and subject to whatever penalties are imposed by the courts.

A termination letter is not the proper documentation in this state for an eviction but notice of intent and cannot be applied under the frequency of one week but must consist of the same time frame allotted during the agreement of 30 days minimum which again is directly guided by New Jersey State Annotated Law.

Thank you,

Sent from Mail for Windows 10

Zena L. Powell
20 Howard Drive
Bergenfield, NJ, 07621
PH: 201-374-2159
Zena MOBILE: 551-275-3771
Teo MOBILE: 646-546-9455
EMAIL: teoteojohnson@outlook.com

**From:** Kip Beach <kip.beach@csscompany.com>
**Sent:** Wednesday, December 15, 2021 1:12:56 PM
**To:** teo johnson <teoteojohnson@outlook.com>
**Cc:** collections@cloudkitchens.com <collections@cloudkitchens.com>; Kira Sergacheva <kira.sergacheva@cloudkitchens.com>; Thomas Lee <thomas.lee@cloudkitchens.com>
**Subject:** Re: Your November Outstanding balance - FINAL NOTICE

Hey Zena,

Following up from our conversation yesterday about a mutual termination. You have requested we return everything you have paid thus far, which is outlined below. Additionally I have outlined what is past due.

**Total Paid - $11,902.16**
July 28 - $7,200 - Refundable One Time Fee
Sep 10 - $1,066.67
Oct 10 - $3,635.49


**Outstanding - $9,120.55**
Nov - $4,620.23
Dec - $4,500.32

Unfortunately we are not in a position to return any previously paid invoices, and will not be able to agree with the terms proposed. The previous termination letter Kira sent on 12/8/2021 still represents our current position.

We do want you to have all of your belongings and will extend the move out date to Sunday, 12/19/2021. Please let me know if you have any questions.

--
Kip

On Mon, Dec 13, 2021 at 4:34 PM teo johnson <teoteojohnson@outlook.com> wrote:
> I appreciate the email I will provide the court order on Friday.
>
> Thank you,
>
> Zena Powell
>
> Get Outlook for iOS
>
> _____
> **From:** teo johnson <teoteojohnson@outlook.com>
> **Sent:** Monday, December 13, 2021 4:33:03 PM
> **To:** collections@cloudkitchens.com <collections@cloudkitchens.com>
> **Cc:** Kira Sergacheva <kira.sergacheva@cloudkitchens.com>; Kip Beach <kip.beach@csscompany.com>; Thomas Lee <thomas.lee@cloudkitchens.com>
> **Subject:** Re: Your November Outstanding balance - FINAL NOTICE
>
> Ok, thanks for the update.
>
> Get Outlook for iOS
>
> _____
> **From:** collections@cloudkitchens.com <collections@cloudkitchens.com>
> **Sent:** Monday, December 13, 2021 2:39:08 PM
> **To:** teo johnson <teoteojohnson@outlook.com>
> **Cc:** Kira Sergacheva <kira.sergacheva@cloudkitchens.com>; Kip Beach <kip.beach@csscompany.com>;

Thomas Lee <thomas.lee@cloudkitchens.com>
**Subject:** Re: Your November Outstanding balance - FINAL NOTICE

Hello Zena,

Thank you for giving us a call this morning.

Unfortunately, there is nothing that can be done to stop the termination process.

Best,
Laura


On Sat, Dec 11, 2021 at 6:23 PM teo johnson <teoteojohnson@outlook.com> wrote:
Allow me time to pay the balance through out the month as I get my deposits but again it's just me doing it all.

Get Outlook for iOS

**From:** teo johnson <teoteojohnson@outlook.com>
**Sent:** Saturday, December 11, 2021 6:36:28 PM
**To:** Kira Sergacheva <kira.sergacheva@cloudkitchens.com>
**Cc:** Kip Beach <kip.beach@csscompany.com>; collections@cloudkitchens.com <collections@cloudkitchens.com>; Thomas Lee <thomas.lee@cloudkitchens.com>
**Subject:** Re: Your November Outstanding balance - FINAL NOTICE

I never said I could not pay stop putting words in my mouth or that I had no intention of paying I said I could not pay that amount and then received a termination letter in which you will now receive another set of documents specifically for you and this facility on Monday December 13th, 2021. Your organization refused to discuss with me what I could pay but for your information I can give you a $1000 yby December 17th, 2021 and 2 consecutive payments of $500 weekly thereafter to make an attempt to catch up but the services promised are null and void as stated to make that possible so we will have to go court.

But don't you think your company would benefit more if they actually did what they said they would do and not use deceptive sales people in place of real estate brokers and leases in place of licensing agreements that are not honored. You have been in breach and will receive that letter but before that I need to see in federal court if your model is designed as it seems outline intentionally for businesses to fail and the only way to do that is to access the records federally through subpoena upon litigation in a civil suit.

Get Outlook for iOS

**From:** teo johnson <teoteojohnson@outlook.com>
**Sent:** Saturday, December 11, 2021 5:35:35 PM
**To:** Kira Sergacheva <kira.sergacheva@cloudkitchens.com>
**Cc:** Kip Beach <kip.beach@csscompany.com>; collections@cloudkitchens.com

<collections@cloudkitchens.com>; Thomas Lee <thomas.lee@cloudkitchens.com>
**Subject:** Re: Your November Outstanding balance - FINAL NOTICE

So as explained you must go to court as the authorities will explain in Newark and you can inform them there is a case in Newark federal court regarding the matter period and they will explain they don't have jurisdiction once I filed the case per our conversation today you threatened to change locks and deny me access to my kitchen without court paperwork of eviction. As stated it is required for you go to court. This is to inform you of the violation and that I will call Belleville police and even if you are not here they will just call the fire department to break any locks as you cannot deny me access without court paperwork which is funny why you don't want to go to court

Get Outlook for iOS

**From:** Kira Sergacheva <kira.sergacheva@cloudkitchens.com>
**Sent:** Wednesday, December 8, 2021 3:36:18 PM
**To:** teo johnson <teoteojohnson@outlook.com>
**Cc:** Kip Beach <kip.beach@csscompany.com>; collections@cloudkitchens.com
<collections@cloudkitchens.com>; Thomas Lee <thomas.lee@cloudkitchens.com>
**Subject:** Re: Your November Outstanding balance - FINAL NOTICE

Hi Zena,

I understand that you are not agreeing to the proposal to pay half of the past due amount by Friday and the other half on a payment plan. Unfortunately, we will need to move forward with terminating your agreement due to breach for non-payment. I have answered your questions about fees and your license with the company in the past and the company has complied with its obligations under your agreement. You have continuously challenged your agreement and demand that the company provides you with services on your terms while using those services. Previously, you insisted that companies could not license real property, but now it seems you are claiming that a license for real property needs to be through the SEC. We continue to disagree. I am attaching the notice of termination of your agreement. Please see my previous email about removing your equipment. We want you to have your belongings and we cannot hold them for you.

Best,

Kira

On Wed, Dec 8, 2021 at 11:04 AM teo johnson <teoteojohnson@outlook.com> wrote:
> I have included otter your partners since they have not stopped trying to interfere with my sales
> since I began and I actively caught them attempting to pause my store on DoorDash from an iPad I
> have it all in black and white how you have disrupted my business from the beginning through
> now with the attempted lock out last night or this morning rather and I am not responsible for
> any repairs if the fire department at the police department's direction has to cut any locks to let
> me in as they stated what you are doing is illegal and will be addressed.
>
> Get Outlook for iOS

**From:** teo johnson <teoteojohnson@outlook.com>
**Sent:** Wednesday, December 8, 2021 10:30:13 AM
**To:** Kira Sergacheva <kira.sergacheva@cloudkitchens.com>; Kip Beach
<kip.beach@csscompany.com>; collections@cloudkitchens.com
<collections@cloudkitchens.com>; Thomas Lee <thomas.lee@cloudkitchens.com>
**Subject:** Re: Your November Outstanding balance - FINAL NOTICE

Kira and all others,

Please refer the sec.gov example of what a real property commercial licensing agreement must
consist of and be approved by them prior to functioning within the industry for in place of
commercial leases and how they cannot be altered after approval unless resubmitted for approval
for use by the securities exchange commission.

Get Outlook for iOS

**From:** teo johnson <teoteojohnson@outlook.com>
**Sent:** Wednesday, December 8, 2021 10:27:04 AM
**To:** Kira Sergacheva <kira.sergacheva@cloudkitchens.com>; Kip Beach
<kip.beach@csscompany.com>; collections@cloudkitchens.com
<collections@cloudkitchens.com>; Thomas Lee <thomas.lee@cloudkitchens.com>
**Subject:** Re: Your November Outstanding balance - FINAL NOTICE

Furthermore, you have yet to state what I am paying licensing fees for which has been asked in
multiple emails and you have yet to answer so I will not be paying them until you can provide a
legal explanation as to what they are for. Secondly, I have asked why I am charged for storage if I
am paying operational fees that is double dipping then why would I pay operational fees for a
shared facility cost when I am not able to use the space within the facility required for storage
without you attempting to charge me an additional fee. Third I have no security or cleaning
services nightly as promised. Fourth you or anyone else who is osha and hvac certified are not
there as should be to turn off gas lines in the event of an emergency. No one knows what to do
including you Kira so the facility is being run unsafe at the behest of its merchants. And naturally
you are emailing me about payment but have yet to address the services pitched during the sales
presentation of cleaning staff and cleaning our kitchens and equipment but not our service
cookwares a general cleaning is not just sweeping and mopping my floor as stated in the
presentation it is cleaning down my entire kitchen nightly. That was the help I was assured I
would have during and after signing the contract as it states general cleaning which that is what
that is in accordance with the industry you are servicing. In addition I advised them I was disabled
and if that was not what it was there would be a legal problem for lying and they as well as you
were under the assumption I was ignorant and uneducated in the field of law and compliance as a
corporate entity and in actuality that was and is my field of expertise. Again please advise what is
it that you are licensing that I would be charged licensing fees for.

Get Outlook for iOS

**From:** Kira Sergacheva <kira.sergacheva@cloudkitchens.com>
**Sent:** Monday, December 6, 2021 8:39:28 PM
**To:** teo johnson <teoteojohnson@outlook.com>; Kip Beach <kip.beach@csscompany.com>;

collections@cloudkitchens.com <collections@cloudkitchens.com>; Thomas Lee <thomas.lee@cloudkitchens.com>
**Subject:** Your November Outstanding balance - FINAL NOTICE

Hi Zena,

I'm following up on your outstanding balance for the month of November for the amount of $4,620.23. As our collection team mentioned in their email on December 2nd, we need at least 50% of the outstanding balance to be paid in order for us to put you on the payment plan for the rest of the balance.

**50% of the outstanding balance, which is $2,310.12, must be received by 2pm on Friday, 12/10/2021, in the form of a money order, cashier's check or wire transfer.** The following is other information you may need to wire:

- Legal Name: Cloud Kitchens
- Address: 777 Figueroa St Suite 41000 Los Angeles, CA 90017

If you chose to wire you need to respond to this email with a screenshot confirmation that the wire has been initiated no later than 2pm on Friday, 12/10/2021.

Please let us know immediately if you are planning to pay the half the outstanding balance no later than 2pm on Friday, 12/10/2021. If not, we will need to move forward with terminating the agreement immediately for breach due to non-payment. If you do not respond within 48 hours to confirm you will be paying at least half of the outstanding balance by 2pm on Friday, we will take that to mean you will not be paying and we will need to move forward with terminating t he agreement immediately for breach due to non-payment.

With termination, you will no longer have access to the kitchen space, so I urge you to remove your equipment before termination if you are not intending to pay. If you still have equipment in your kitchen after termination, we will work with you so that you can pick it up at a mutually agreeable time. Please be aware that we do not store equipment, so you will need to coordinate picking up anything remaining as soon as possible and in no case later than 9 days from termination.

Best,

Kira


--
Kip

# EXHIBIT C

Button not working? Click the following link below:
https://manager.tryotter.com/billing/135988bd-a46a-43fd-bb71-6fcf281b3768/paymentMethods

**We're here to help**

If you have any questions regarding billing, please email us at billing@cloudkitchens.com.

Best,
CloudKitchens team

Otter. All Rights Reserved.
Privacy Policy | Terms & Conditions

**CloudKitchens**®

## Proposal:

| | |
|---|---|
| **Kitchen #** | 1 |
| **Monthly license fees** | $3,600 |
| **ROEs/Operating Costs**<br>Gas, electric, water, security, cleaning, hood maintenance, internet, trash, landscaping, pest, grease removal | $1,800* |
| **Onboarding** | FREE<br>Covers health permit application and CAD drawing on kitchen floor plan |
| **Processing Fee** | 3% per order |
| **Concessions** | 2 month deposit instead of 3 |

## Here's what's included:

- Fire outlets
- Gas points
- High power lighting
- Cold/Hot water lines
- Gas/fire safety system
- WiFi
- Ethernet connections

- Hoods, extraction
- Makeup and tempered air
- High throughput power and gas
- Industrial-grade water heating
- Grease-trap/interceptor
- High-end walk-in cold + dry storage

**CloudKitchens**®

cloudkitchens.com

# Here's what's included (detailed)

**Core Product Offering**

- **Pre-built, Move-in Ready Kitchen:** 9 ft. hood w/fire suppression, 3-compartment, hand wash, and food prep sinks, outlets, water + gas valves, make-up air unit (value: $200,000)
- **Managed Services:** Water, electricity, gas, basic kitchen wipe down (nightly), hood cleaning, grease removal, trash, recycling, sewage, internet, pest control, and security - straight passthrough (value: cost savings from pooling services across multiple licensees - $500/month)
- **Common Areas:** Restrooms, break room, ice machine, trash room
- **Order Fulfillment Service:** CloudKitchens employees take your food from kitchen to driver (value: decreased kitchen to driver time/lower driver handoff error, less labor)

**Value-Added Services**

- **Delivery Platform Onboarding:** Menu and image upload, menu optimization, account management with platforms, ability to add unlimited brands at any time (one-time value: $1,000)
- **Order Processing/Kitchen management software:** 1 tablet and printer provided to you which integrates with DoorDash, GrubHub, UberEats, Postmates, and Chownow (value: $75 - 200/ month)
- **Operational Health Permit:** We help you file and manage the application process with the city
- **Ongoing Customer Support - Otter:** CloudKitchens support team will handle 95% of customer inquiries with delivery platforms, is available to 86 menu items, and more (value: $270 / month)
- **Future Foods & CaterMate:** Access to additional brands and catering services developed & supported by us that you can run out of your kitchen (save +$10k of brand creation cost)

**Additional Cost Savings**

- **Health & Building Permits:** Coordination and time and lower costs where feasible
- **Kitchen Planning:** Design consultation and CAD drawings to ensure equipment fit and power requirements are met - required for permitting (one-time value: $3,000)
- **Discounts & Partnerships:** TriMark: 10% discount off kitchen equipment, Made In Cookware: 20% discount off premium cookware

  *Note: savings estimates based on existing facilities vs standalone location*

**Order Form for Kitchen Services**                 New Jersey - Belleville

This Order Form for Kitchen Services ("**Order Form**"), along with the Kitchen Services Terms and Conditions, available as of the Effective Date at https://www.cloudkitchens.com/documents/legal/us/ksa/ksa070921.pdf, and to be attached to the Order Form upon signature ("**Terms and Conditions**"), together form an agreement between the Licensor and Customer identified below ("**Kitchen Services Agreement**" or "**Agreement**"). Capitalized terms not defined in this Order Form shall be as defined in the Terms and Conditions. In this Agreement, "you" means Customer and "we" or "us" means Licensor.

**Licensor Information:**

| Name 500 Cortlandt Street BEL LLC , a Delaware limited liability company |
|---|
| Address for Notices: 777 S. Figueroa Street, Floor 41, Los Angeles, California 90017 |

| Contact: Limited Liability Company Manager | Email: sales@cloudkitchens.com | Phone: (888) 419-5458 |
|---|---|---|
| Delivery Hub Address: 500 Cortlandt st, Belleville NJ, 07109 | | |

**Customer/Licensee Information:**

| Name: Soul Kitchen , a Sole Proprietorship |
|---|
| Address for Notices: 20 Howard Drive, Apt V, Bergenfield NJ, 07621 |

| Contact: Zena Powell | Email: teoteojohnson@outlook.com |
|---|---|
| Phone: 5512753771 | EIN: |

**Licensed Space:**

1   kitchen(s) in the Delivery Hub ("**Kitchen(s)**"), along with any designated storage racks (subject to separate fees) outside of the Kitchen(s) and including certain Delivery Hub common areas as designated by us from time to time (e.g., break rooms, etc.). The Kitchen is "as is" and built out in a similar manner to other kitchens in the Delivery Hub. Any Changes (i) shall be outlined in a separate improvements agreement provided by Licensor and (ii) must be approved by Licensor and paid for by Customer as further set forth in the Terms and Conditions. You are still responsible for beginning payment on the License Fee Start Date whether or not your access is delayed because of the Changes. The maximum amps per Kitchen is up to 60 amps.

**Important Dates:**

| Term: Period from Effective Date until the expiration of the Initial Term, Renewal Term(s) (if any) or any Continuing Term, whichever is later. |
|---|

| Effective Date: Date of last signature below | Access Date: 2021-09-01 |
|---|---|
| Initial Term: 12   months beginning on License Fee Start Date | License Fee Start Date: 30   days after the Access Date, provided your Operating Expenses and Storage Services Fees begin on the Access Date. |

**Customer Fees:**

| Payment Method: | [_] ACH | [_] EFT | [_] Credit Card (as primary) | [_] Credit Card (for backup) | [_] Other [ n/a          ] |
|---|---|---|---|---|---|
| License Fee: | $ 3600.00   per month ($ 3600.00   per Kitchen), starting on the License Fee Start Date. License Fee will be increased on each anniversary of the Access Date by the greater of (a) 3% or (b) the CPI Increase (defined in the Agreement). | | | | |
| Processing Services Fee: | 3% of the Total Order as defined in Section 1(b)(i). | | | | |
| Storage Services Fee: | The specific fees vary depending on the number of racks and type of storage you wish to use (freezer, dry, etc) and will be set out in the Kitchen Rules or communicated to you by email. Parties shall agree in writing (email sufficient) as to the number of racks and type from time to time. | | | | |
| Operating Expenses: | $ USD 1800.00 Plus electricity   per month ($ 1800   per Kitchen), as Customer's portion (estimated) for utilities and shared services. **The Operating Expenses commence on the Access Date.** | | | | |
| Refundable One-Time Fee: | $ 7200.00   , due upon the Effective Date. If you fail to pay us the Refundable One-Time Fee on the Effective Date, we can immediately terminate this Agreement by providing you with email notice. **You will not be allowed to access the Licensed Space if you have not paid the Refundable-One Time Fee. Return of your Refundable One-Time Fee is subject to Section 3(b).** | | | | |
| Setup Fee: | $ .00   , due prior to the Access Date. The Setup Fee is a one-time and nonrefundable fee used to cover our setup costs. | | | | |
| Beta Products Fees: | Some Delivery Hubs are equipped with the Digital Platform. If available and you use the Digital Platform you shall pay a Program Fee of 4% of the Total Order, and a Credit Card Processing Fee of 2.9% of the Total Order as further described in Section 14 (in addition to the Processing Services Fee). You may terminate your use of (or opt back into) the Digital Platform by providing three (3) days written notice to Licensor or by checking this box ☐ | | | | |

**Kitchen Tech:**

| You are required to use the Kitchen Tech in your Kitchen to ensure efficient operations at the Delivery Hub (e.g. so we can provide the Processing Services). The Kitchen Tech allows you to aggregate your orders from the following online ordering services for no additional fee: UberEats, DoorDash, Grubhub, and Postmates. Additional integrations (including with a point of sale or direct to consumer website) requires additional fees. |
|---|

| Other Terms: | During the first three months of the Initial Term, Customer shall receive a 50% discount off the License Fee.<br><br>We strive to enable your access to the Licensed Space on the access date. You acknowledge however, that the Licensed Space may not be available on the Access date due to inspections, construction, cleaning or various other delays. In such an event, we will notify you of your adjusted access date. |

By signing below, each party confirms that it has read and hereby agrees to the terms set forth in this Agreement (including the Terms and Conditions available as of the Effective Date at https://www.cloudkitchens.com/documents/legal/us/ksa/ksa070921.pdf, and to be attached to the Order Form upon signature). The parties agree that electronic signatures shall have the same effect as originals. If there is any conflict between this Order Form and the Terms and Conditions, this Order Form shall prevail. The parties have executed this Agreement as of the date of the last signature below:

**Licensor**:

By: _____

Printed Name: Marcel Comtois
_____

Title: _____

Date: _____

**Customer**:

By: _____

Printed Name: Zena Powell
_____

Title: General manager
_____

Date: _____

DocuSign Envelope ID: 51B8B2F9-7431-48FC-9268-A83D85AF6EF0

## Kitchen Services Terms and Conditions

New Jersey – Belleville

These Kitchen Services Terms and Conditions ("**Terms and Conditions**"), taken together with an executed order form for Kitchen Services that references these Terms and Conditions ("**Order Form**"), form an agreement between the Licensor and Customer designated in the Order Form (the "**Kitchen Services Agreement**" or "**Agreement**"). If there is any conflict between these Terms and Conditions and an applicable Order Form, the Order Form shall prevail. If the same parties enter into multiple Order Forms, each Order Form shall be treated as a standalone agreement. Capitalized terms not defined in these Terms and Conditions shall be as defined in the applicable Order Form. You agree that the Order Form and the Terms and Conditions constitute our Confidential Information and shall not be disclosed to any third party.

1. **Kitchen Services**

   a) **Access and Use**. Subject to your compliance with the terms of the Agreement, we grant you and your employees a limited, non-transferable, non-exclusive, fee-bearing license, commencing on the Access Date and for the remainder of the Term, to access the Licensed Space identified in the applicable Order Form only for the Permitted Use. You agree that you are only receiving a limited license to use the Licensed Space and that you are not being granted a lease or other real property interest in the Licensed Space nor are you receiving any ownership, leasehold estate, leasehold interest, or tenancy rights in the Licensed Space. You are not permitted to exclude us or our invitees, from the Licensed Space, and we may enter at any time, with or without notice, for any reasonable purpose, including for the purpose of inspecting, cleaning and maintaining the Licensed Space. You also agree that the Delivery Hub and the Licensed Space may be subject to inspections by food, fire and health and safety officials, all having the power to regulate your access and use of the Licensed Space, and you agree to promptly pay any fines or penalties imposed upon us from inspections or audits arising from your acts or omissions.

      i) **Initial Access**. We strive to enable your access to the Licensed Space on the Access Date. You acknowledge, however, that the Licensed Space may not be available on the Access Date due to inspection, construction, cleaning or various other delays. In such an event, we will notify you of your adjusted Access Date, and the Term and your License Fee and other monthly fee payment obligations will be based upon the new Access Date. You agree that an adjustment of your Access Date as provided herein does not constitute a breach of the Agreement, and you agree that we shall have no liability to you whatsoever for the Licensed Space not being available by the Access Date, including for any staff or supply costs you may incur. You also agree that you are solely responsible for ensuring you have sufficient permits and licenses to prepare food within your Kitchen (and your Access Date will not be delayed if you have not obtained your required permits or licenses). We will be responsible for any facility-wide permits required by Applicable Law.

      ii) **Changes**. You agree to not make any Changes to the Licensed Space (including installing any signage or other branding inside or outside the Kitchen) without our prior written consent. If we agree to let you make a Change or if we make a Change at your request, you will be solely responsible for the costs for such Change. Third party contractors or subcontractors may not be used for Changes without our prior written consent. Your approved contractors shall be properly licensed and insured as required in the applicable jurisdiction. You and your contractors shall abide by any rules we set on how, when and where Changes can be made to minimize disruption to the overall Delivery Hub. If you or your contractors fail to do so, we retain the right to prevent your contractors from finishing the work, and you agree to pay us for the costs to finish or remove the Changes. You must ensure that any Changes made by you or your contractors comply with applicable laws, including required inspections and permits. You acknowledge that you must still pay the License Fee and other applicable fees starting on the License Fee Start Date even if your approved Changes are pending, in process or not complete. You are solely responsible for all restoration costs to revert your Changes to the standard "as is" build similar to other Kitchens in the Delivery Hub.

   b) **Processing**

      i) **Processing Services**. You agree to use our order processing services to facilitate the fulfillment of your Orders to your customers using Third Party Vendors ("**Processing Services**"), which Processing Services may include, among other things, order verification, final packaging and labeling, Delivery Hub runner personnel or Third Party Vendors courier distribution. You may not use the Licensed Space to prepare food and beverage product orders that do not utilize our Processing Services. You understand that the Processing Services will be provided to you in exchange for your payment of the Processing Services Fee, which is in addition to the License Fee. You also agree to use the Kitchen Tech, provided by our partner subject to separate terms available at https://www.tryotter.com/documents/legal/us/tou/kl-073120 (by signing this Agreement you are agreeing to the separate Kitchen Tech terms). The use of the Kitchen Tech is required in order to provide you with the Processing Services and to ensure efficient operations at the Delivery Hub. The Processing Services Fee is calculated based on information from Third Party Vendors. The Processing Services Fee shall be calculated as follows: the percentage listed in the Order Form multiplied by the total order amount charged by customer, excluding sales tax, promotions, and other discounts ("Total Order"). Licensor may modify the Processing Services Fee by providing you with 30 days email notice.

      ii) **Limitations**. You understand that the services of Third Party Vendors and the Kitchen Tech are provided by third parties and as such, Licensor has no responsibility for the Third Party Vendors, Kitchen Tech, or the technology or services they provide. You agree that Licensor will not be liable to you or to any third party for any modification, suspensions, or discontinuance of the Kitchen Tech. Notwithstanding anything to the contrary, if you materially breach the Kitchen Tech terms of use and such terms of use are terminated in accordance therein, we may also immediately terminate this Agreement or suspend your access to the Kitchen Tech without any further obligation or liability.

iii) **Storage.** If you elect to license storage racks in dry, refrigerated and/or frozen storage in the Delivery Hub, we will make such storage racks available to you in exchange for your payment of the applicable Storage Services Fee (as communicated to you via email or the Kitchen Rules), which is in addition to the License Fee. You may increase your use of storage racks on a month to month basis by submitting a written request to us and we will attempt to accommodate your use request, subject to availability. You may decrease your use of storage racks or terminate your right to use storage racks in our storage racks by providing at least 30 days prior notice (email sufficient). You agree that we may update your Storage Services Fee to reflect your then-current use of storage racks.

*During the first three months of the initial term, Customer shall receive a 50% discount off the License Fee.*

*Customer acknowledges that we strive to provide Customer with access to available kitchens at least thirty (30) days prior to the Access Date but the date may be determined by several factors. An access date is subject to inspections, construction, cleaning or various other delays. In such an event, we will notify you of your adjusted access date.*

## 2. Operational Terms

a) **Rules and Restrictions.** You acknowledge that each Delivery Hub is subject to a set of rules established by Licensor that govern the use of the Delivery Hub and the Licensed Space ("**Kitchen Rules**"), and you agree to abide by the Kitchen Rules. You agree that we may unilaterally modify the Kitchen Rules at our discretion at any time upon notice to you; provided such modifications will be reasonable, non-discriminatory and will not conflict with this Agreement. You are required to keep your Kitchen(s) in a sanitary, clean and usable condition and in first class order, repair and appearance as required by the Kitchen Rules and Applicable Law. You agree to only use the Licensed Space for the Permitted Use and no other purpose. Only you and your employees may access the Delivery Hub. All other persons or entities must receive our prior written approval prior to access any portion of the Delivery Hub. You agree to not use the Licensed Space in a way that may be dangerous or a nuisance to other licensees in the Delivery Hub. You agree that we may move you to a different Kitchen within the same Delivery Hub with at least 30 days' prior notice (email sufficient) at our sole expense. We will apply the Kitchen Rules in a nondiscriminatory manner.

b) **Compliance.** You agree to comply with all Applicable Laws applicable to the operation of your business and use of the Licensed Space. In addition, you agree all finished Orders and all raw materials, ingredients, processing aids, and packaging material (i) will be stored and shipped under sanitary conditions, in strict compliance with all Applicable Laws, (ii) will be manufactured, labeled, and packaged in strict compliance with all Applicable Laws, as well as current good manufacturing and other industry practices, and (iii) will be wholesome, merchantable, fit for their intended purpose, and fit for human consumption, consistent with current good manufacturing and other industry practices, and Applicable Laws.

c) **Monitoring.** You agree to not take, and not let any third party take, any pictures, videos or other representations of the Licensed Space or other materials that you receive or have access to in the course of performance of the Agreement. We may utilize video and audio recording devices to monitor portions of the Delivery Hub, including your Kitchen(s) and the common areas. This technology may also include temperature and air flow sensors, electrical use meters, facial recognition software and other technology. You agree to notify your employees and your other approved visitors, in writing (e.g. through an employee handbook), of the existence of these devices and shall indemnify us for any claims, losses or expenses incurred by us for your failure to do so.

d) **Vacating the Licensed Space.** At the end of the Term, we will perform a deep clean of your Kitchen(s) and deduct the cost from the Refundable One-Time Fee (approximately $250 per Kitchen). Notwithstanding the foregoing, you agree to ensure the Licensed Space is cleaned and in good order, repair and condition on your last day of access. You also agree to remove all of your furniture, equipment, personal property and trade fixtures from the Licensed Space ("**Remove**") not installed or provided by us (unless we otherwise agree in writing) prior to your last day of access. If you fail to do so, you agree (i) we have the right, at your expense, to keep, sell, or otherwise dispose of your furniture, equipment, personal property or trade fixtures that you did not remove by your last date of access, and (ii) you are required to pay us for any costs or losses incurred to get the Licensed Space ready for the next customer, including the costs of any deep cleaning or repairs and our lost revenue from the inability to license the space to the next customer due to your failure to Remove.

*DocuSigned by:*
*Sena Power*
*General Manager*

## 3. Fees and Payment Terms

a) **Fees.** You agree to pay us the fees for our services as specified in the Order Form, without setoff or deduction, in accordance with the terms of this Agreement. Operating Expenses and Storage Services Fees begin on your Access Date and may be prorated for partial months. License Fee payment obligations commence on the License Fee Start Date and may be prorated for partial months. You agree that any fees owed to us are non-refundable (except for the Refundable One-Time Fee). All fees due to us must be paid by the Payment Method indicated on the Order Form and by the due date indicated on the invoice (and if no date is given or specified in this Agreement, within thirty days of the invoice date). We reserve the right to require you to provide a credit card as a backup Payment Method. You agree to use our specified third party payment platform to facilitate your payments to us, and you acknowledge and agree to the payment platform terms available at https://www.cloudkitchens.com/documents/legal/us/ksa/ppt072720.pdf which are hereby incorporated by reference. If you fail to pay us on time, we have the right to collect interest on such sum equal to the lesser of 1.5% monthly or the highest rate permitted by law. You are also responsible for our costs in collecting unpaid fees, including any attorneys' fees and costs. During a Continuing Term (defined below), we may increase or decrease the License Fee, Processing Services Fee or Storage Services Fee upon sixty (60) days' notice.

b) **Refundable One-Time Fee.** On the Effective Date, you agree to pay us the Refundable One-Time Fee. Within 60 days of the expiration of the Agreement, we agree to return the Refundable One-Time Fee, excluding the cost to perform the deep clean (as outlined in Section 2(d)), subject first to the satisfaction of outstanding amounts owed to us. We may use the Refundable One-Time Fee to satisfy outstanding amounts owed by you or charges incurred by you, including penalty amounts or unforeseen amounts related to Changes or otherwise. Additionally, in the event you breach the Agreement without cure, you forfeit the Refundable One-Time Fee, and we reserve the right to pursue additional legal remedies for your breach. If we apply your Refundable One-Time Fee towards anything in accordance with the Agreement, you agree to immediately pay us an additional Refundable One-Time Fee (or pay an amount sufficient to restore the Refundable One-Time Fee to its original balance).

DocuSign Envelope ID: 51B8B2F9-7431-48FC-9268-A83D85AF5EF0

c) **Treatment of Operating Expenses**. You shall be responsible for all costs and fees we incur for utilities and other shared services applicable to the Licensed Space from and after the Access Date (collectively, "**Operating Expenses**"). Our reasonable estimate of your monthly Operating Expenses shall be billed to you each month. Such estimate shall be based on (i) metering and other reasonable methods of monitoring which are used to calculate a reasonable approximation and apportionment of your actual consumption of utilities, (ii) an equitable apportionment of all kitchens in the Delivery Hub that use such utilities and shared services; or (iii) a combination of (i) and (ii). On an annual basis (or more frequently if we elect), we may reasonably determine if the Operating Expenses incurred prior to the date of determination were more or less than the Operating Expenses payments you actually made prior to the date of such determination. If your payments exceed the actual Operating Expenses, then you will receive a credit towards your future Operating Expenses until reimbursed in full, and if your payments are less than the actual Operating Expenses, then you shall pay us the difference within 30 days following receipt of our invoice. Additionally, we may change your estimated monthly Operating Expenses (with email notice) if, in our reasonable discretion, we believe your actual Operating Expenses will exceed your estimated payments. If you fail to timely pay your estimated Operating Expenses or any reconciliation payments due hereunder, we may discontinue providing some or all such services hereunder, and you agree we are not liable for damages or losses resulting from such discontinuance. You agree that we are not responsible or liable for ensuring uninterrupted availability of any utilities or other services provided by or for you under the Agreement, except to the extent caused by our gross negligence. You are required to use our existing internet network, provided, you may use your own firewall, subject to our approval (which cannot be unreasonably withheld). You are solely responsible for all costs for maintaining, installing and testing your own firewall.

d) **Taxes**. The fees you owe to us do not include any Taxes. You are responsible for paying all Taxes associated with the Agreement and the services we provide except for Taxes assessable on our income or employees. Without limiting the foregoing, you agree to be the seller with respect to the sale of any food or products sold or distributed out of the Licensed Space and as such, you also agree to be responsible for the payment of any Taxes for such food or products. If you don't pay your Taxes (or the government alleges you haven't done so), we have the right to immediately terminate the Agreement. You are liable for, and must pay before delinquency, Taxes levied against any personal facility or trade fixtures placed by you in the Kitchen.

4. **Insurance**. We shall maintain commercial general liability insurance and property insurance for the Delivery Hub. You agree to maintain, during the Term: (a) a commercial general liability insurance policy, in accordance with Insurance Services Office Form CG 00 01, on an occurrence basis, including protection for your operations, completed operations and personal and advertising injury, covering the Kitchen and insuring use thereof against claims for injuries, death and property damage occurring on or about the Kitchen, with limits no less than two million dollars per occurrence; (b) workers' compensation insurance (with statutory limits if applicable) and Employer's Liability Insurance with limits no less than one million dollars per occurrence; (c) food borne illness insurance (with industry standard limits); (d) property insurance in amounts not less than full replacement cost value of your property and providing such form of protection against risk consistent with prevailing industry standards for property insurance (with no coinsurance penalty provision), covering the personal property (including any fixtures or equipment) located within the Delivery Hub (policy must also include loss of business income and extra expense for a minimum of twelve months); (e) business automobile liability insurance for all owned, non-owned and hired vehicles, including loss of property of others in your care, as well as the loss of use your property and property of others in your care with limits no less than one million dollars per occurrence and two million dollars general aggregate; and (f) if we approve for you to sell alcohol out of our space (in writing) and you are legally permitted to do so, Liquor Liability insurance, of at least one million dollars per occurrence and general aggregate limits of at least two million dollars. You agree to furnish a certificate of insurance evidencing the above policy limits. All liability insurance maintained by you must (i) name Licensor, its affiliates and their respective members, officers, directors, officials, employees, contractors, and volunteers (and its mortgagee, if applicable) as additional insured under such policy; (ii) be in a form reasonably satisfactory to us, with an insurance carrier reasonably satisfactory to us; and (iii) be primary insurance (at least as broad as ISO CG 20 01 04 13). Any insurance or self-insurance maintained by Licensor, its affiliates and their respective members, officers, directors, officials, employees, contractors, and volunteers, shall be excess of your insurance and shall not contribute with it. All such insurance is subject to modification or cancellation only upon ten (10) days' written notice to each certificate holder. The issuance of any insurance policy required under the Agreement, or the minimum limits specified in the Agreement with respect to your insurance coverage, will not be deemed to limit or restrict in any way your liability arising under or with respect to the Agreement. You hereby grant to Licensor a waiver of any right to subrogation which any of your insurers may acquire against the Licensor by virtue of the payment of any loss under such insurance. You agree to obtain any endorsement that may be necessary to affect this waiver of subrogation, but this provision applies regardless of whether or not the Licensor has received a waiver of subrogation endorsement from the insurer.

5. **Confidentiality.** Each party agrees to not use the other party's Confidential Information except as necessary for the performance of the Agreement and will not disclose the other party's Confidential Information to any third party except to those of the receiving party's employees and contractors who have a need to know such Confidential Information for the performance of the Agreement, provided that each such employee or contractor is bound by a written agreement that contains use and nondisclosure restrictions consistent with the terms set forth in the Agreement. You agree that the fact you have entered into the Agreement and are licensing space from us, and the terms of the Agreement, constitute our Confidential Information. Each party will employ all reasonable steps to protect the other party's Confidential Information from unauthorized use or disclosure, including the steps you take to protect its own Confidential Information. The foregoing obligations will not restrict the receiving party from disclosing the other party's Confidential Information: (a) pursuant to the order or requirement of a court, administrative agency, or other governmental body, provided that the receiving party give reasonable notice to the disclosing party to contest such order or requirement; and (b) to receiving party's legal or financial advisors, provided the receiving party is responsible for ensuring such information remains confidential. The receiving party is liable for any breaches of confidentiality by its employees, contractors, legal or financial advisors.

6. **Representations and Warranties**. Each party represents and warrants as to itself that (a) it has the right to enter into and perform the Agreement and that the individual signing the Order Form has the right to bind their respective company, and (b) it will not violate any Applicable Law or obligations to any third party by entering into and performing under the Agreement. You represent and warrant that you have all permits and licenses required to prepare and sell food and beverage products out of the Licensed Space (including any permits required for you to prepare food in the Kitchen).

7. **Disclaimers; Limits of Liability**

   a) **Disclaimers**. EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, (i) WE DO NOT MAKE ANY WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, REGARDING THE SUBJECT MATTER OF THE AGREEMENT, AND ALL WARRANTIES, INCLUDING IMPLIED WARRANTIES OF MERCHANTABILITY, CARE, NON-INFRINGEMENT, PERFORMANCE, SUITABILITY, AND FITNESS FOR A PARTICULAR PURPOSE, ARE HEREBY EXPRESSLY DISCLAIMED, AND (ii) THE LICENSED SPACE AND RELATED SERVICES, THE TECHNOLOGY AND RELATED HARDWARE, AND ANY OTHER GOODS, SERVICES, OR TECHNOLOGY THAT MAY BE PROVIDED BY US OR OUR PARTNERS HEREUNDER ARE PROVIDED "AS IS" AND "AS AVAILABLE." YOU BEAR ALL RISK OF LOSS OR DAMAGE TO YOUR FOOD AND BEVERAGE PRODUCTS. YOU AGREE THAT NEITHER WE, NOR ANY OF OUR AGENTS, HAVE MADE ANY REPRESENTATION OR WARRANTY WITH RESPECT TO THE LICENSED SPACE, THE DELIVERY HUB OR THE TECHNOLOGY, OR WITH RESPECT TO THEIR SUITABILITY FOR THE CONDUCT OF YOUR BUSINESS, EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT.

   b) **Limits of Liability**. TO THE FULLEST EXTENT PERMISSIBLE BY APPLICABLE LAW, WE SHALL NOT, AND OUR AFFILIATES SHALL NOT, BE LIABLE TO YOU OR ANY THIRD PARTY FOR ANY CONSEQUENTIAL, INCIDENTAL, INDIRECT, SPECIAL, PUNITIVE OR SIMILAR DAMAGES, WHETHER FORESEEABLE OR UNFORESEEABLE, REGARDLESS OF THE CAUSE OF ACTION UPON WHICH THEY ARE BASED, INCLUDING CLAIMS FOR LOSS OF GOODWILL OR LOST PROFITS, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IN NO EVENT SHALL WE BE LIABLE TO YOU OR TO ANY OTHER PARTY FOR ANY LOSS, COST, DAMAGE OR OTHER LIABILITY THAT RESULTS FROM ANY SCHEDULED OR UNSCHEDULED DOWNTIME OF THE KITCHEN TECH OR YOUR INABILITY TO ACCESS YOUR KITCHEN. NOTWITHSTANDING ANYTHING TO THE CONTRARY ELSEWHERE IN THE AGREEMENT, OUR TOTAL AGGREGATE LIABILITY TO YOU IN CONNECTION WITH THIS AGREEMENT WILL NOT EXCEED THE MONTHLY LICENSE FEES PAID BY YOU IN THE TWELVE (12) MONTHS PRECEDING THE EVENT THAT GAVE RISE TO THE CLAIM. NOTHING IN THIS SECTION SHALL LIMIT A PARTY'S LIABILITY FOR GROSS NEGLIGENCE, WILLFUL MISCONDUCT OR UNLAWFUL ACTIVITY.

8. **Indemnification**. You agree, at your sole expense, to indemnify, hold harmless and, at our election, defend Indemnitees from and against any and all losses, costs and expenses of any kind, including reasonable attorneys' fees, claim, demand or action, incurred by any Indemnitee arising from or related to: (a) your business, your food and beverage products or your use of Third Party Vendors; (b) your negligence or willful misconduct; (c) risks against which you are insured or required to be insured against as specified in the Agreement; (d) acts or omissions of your employees, contractors or any other of your invitees to the Licensed Space; or (e) a breach or alleged breach of the Agreement by you or your employees. You agree to not settle or otherwise dispose of any third party claim, demand or action against an Indemnitee without our prior written approval, which shall not be unreasonably withheld.

9. **Term and Termination**

   a) **Term**. The Agreement will begin as of the Effective Date and remain in effect until the end of the later of the Initial Term, Renewal Term or Continuing Term. Either party may terminate this Agreement by providing a written notice of non-renewal no later than 60 days prior ("**Notice**") to the end of the applicable Initial Term or Renewal Term. If neither party has provided Notice, at the end of the later of the (i) Initial Term or (ii) Renewal Term (if any), this Agreement shall continue until either party terminates this Agreement by providing at least sixty (60) notice ("**Continuing Term**"). For example, if the last day of the Initial Term is July 17 (and there is no Renewal Term) and you provide 60 days notice on August 1, then the Continuing Term will continue until (and the Agreement will terminate on) September 30.

   b) **Termination**. A party may terminate the Agreement in the event of a material breach by the other party, provided, such other party is provided with written notice of such breach and at least 30 days to cure the breach after receipt of such notice. Notwithstanding the foregoing, in addition, we may terminate the Agreement (including your right to access the Licensed Space) immediately upon written notice to you if any of the following occur: (i) you fail to make any payments owed to us and fail to cure within 7 days, (ii) you breach Sections 1(b) or 5 of this Agreement, (iii) you fail to use the Licensed Space within 15 days of the Access Date or communicate that you do not intend to use the Licensed Space, (iv) you breach the Agreement and the breach involves an illegal, hazardous or dangerous condition, including your failure (or an allegation that you have failed) to comply with all Applicable Laws, (v) you file for bankruptcy, have an administrator appointed over your business or assets, pursue a corporate reorganization, corporate voluntary arrangement, or similar, you make an assignment for the benefit of creditors, are insolvent, or admit you won't be able to meet your debts as they mature, or (vi) if any part of the Licensed Space is taken by the exercise of the power of eminent domain.

   c) **Effect of Termination**. Upon termination or expiration of this Agreement you may no longer access the Licensed Space. Outstanding payment obligations and Sections 5-13 will survive any termination or expiration of the Agreement. Without limiting our other rights or remedies, in the event the Agreement is terminated (except for our breach), you forfeit the Refundable One-Time Fee and you will owe the License Fees for the remainder of the Term.

10. **Force Majeure**. A "**Force Majeure Event**" means an event beyond the reasonable control of a party, which prevents the party from complying with its obligations under the Agreement, including an act of God (fire, earthquake, flood, drought, epidemic, pandemic, etc.), war or other hostilities, acts or threats of terrorism, strikes or acts of civil disturbance, utility outages, and shortages of materials or labor. In no event shall either party be considered in breach of this Agreement to the extent its obligations are prevented or delayed, directly or indirectly, by a Force Majeure Event, and the period of time for performance shall be extended until such event has ended. Notwithstanding anything to the

DocuSign Envelope ID: 51B8B2F9-7431-48FC-9268-A83D85AF6EE0

contrary, obligations to pay fees owed hereunder shall not be delayed, waived, canceled, or otherwise affected by a Force Majeure Event, even if you cannot use the Licensed Space due to the Force Majeure Event.

11. **Arbitration. BY ENTERING INTO THE AGREEMENT, EACH PARTY IS REQUIRED TO USE ARBITRATION TO RESOLVE CLAIMS OR DISPUTES ON AN INDIVIDUAL BASIS, AS FURTHER SET FORTH IN THIS SECTION.** Except for claims or disputes related to a party's intellectual property, each party agrees that any claim or dispute arising out of or relating to this Agreement, or the breach thereof, shall be settled by binding arbitration before a single arbitrator, and not in a court of law. The arbitration will be administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules. A party who desires to initiate arbitration must provide the other party with a written demand for arbitration as specified in such rules. Unless the parties agree in writing otherwise, the arbitration will be conducted in the city of Los Angeles, California. The award and decision of the arbitrator will be conclusive and binding upon all parties, and judgment upon the award may be entered in any court of competent jurisdiction. The arbitrator will have the right to include in the award any relief which he or she deems proper in the circumstances, only to the extent permitted by the Agreement and Applicable Law, provided that the arbitrator will not have the authority to award exemplary or punitive damages. The arbitrator shall award the prevailing party its reasonable attorneys' fees and expenses. Each party hereby agrees that arbitration will be conducted on an individual, not a class-wide, basis and that any arbitration proceeding between you and Licensor will not be consolidated with any other arbitration proceeding involving Licensor or any other person or entity.

12. **Miscellaneous**. Any notice or other communication to Licensor under this Agreement shall be in writing and either delivered to the address in the Order Form in person (effective when received) or by an overnight commercial delivery service (effective one business day after sending). You agree that we may use the email address on the Order Form to send you notices under this Agreement (effective on the day sent). You may not assign, convey, delegate, lease, sublet, sublicense or otherwise transfer in any manner this Agreement, or any of your rights, remedies or obligations hereunder, in whole or in part, by operation of law or otherwise, to any third party without our prior written consent, and any purported assignment or transfer by you in violation of this provision is void. We may assign or otherwise transfer this Agreement, including any of our rights, remedies or obligations, in whole or in part, at any time. The Agreement will be binding upon each party and its successors and permitted assigns. We may subcontract any of the services in our sole discretion. The Agreement may only be modified, supplemented or amended in a writing signed by both parties. No failure or delay by a party in exercising any right, power, or privilege under the Agreement will operate as a waiver hereunder. The invalidity or unenforceability of any provision of the Agreement will not affect the validity or enforceability of any other provision of the Agreement, all of which will remain in full force and effect. This Agreement shall be governed by the laws of the State of California, without regard to its choice of law rules. Subject to the section entitled "**Arbitration**" above, the parties agree that any dispute arising from or related to the Agreement must be resolved exclusively in Federal or State courts located in Los Angeles County, California. The Agreement contains the entire understanding of the parties regarding its subject matter, and supersedes all prior and related contemporaneous agreements and understandings between the parties. When used herein, the term "including" shall be deemed to mean "including, without limitation".

13. **Definitions**.

    a) "**Access Date**" means the estimated date you will be able to access your Kitchen (your actual first day of access may be pushed back or moved up due to inspection, construction, cleaning or various other delays).

    b) "**Applicable Laws**" means applicable federal, state, local, or other laws, rules, regulations, ordinances, or similar, including all applicable health and safety and employment and labor laws.

    c) "**Changes**" means any alterations, modifications, changes, or improvements to the Licensed Space made by either you or us.

    d) "**CPI Increase**" means the increase in the Consumer Price Index (CPI-U, All Urban Consumers, U.S. City Average, 1982/84=100) over the Base Index. The Base Index is that value published immediately prior to the Access Date.

    e) "**Confidential Information**" means information or materials that: (a) are disclosed in writing or orally and are either marked or identified as "confidential" or "proprietary" by the disclosing party at the time of disclosure; or (b) the receiving party knows or has reason to know, by the nature or circumstances surrounding their disclosure, should be treated as confidential, including technical, business, marketing, product and financial information, in any form or format; provided, however, that Confidential Information does not include information that: (i) is in or enters the public domain through no act or omission of the receiving party; (ii) a party lawfully received from a third party without restriction on use or disclosure and without breach of a non-disclosure obligation or expectation of confidentiality; (iii) a party knew prior to receiving such Confidential Information from the party who owns it and without restriction as to use or disclosure; or (iv) a party independently developed without use of, or access to, any Confidential Information.

    f) "**Indemnitees**" means Licensor and its parent, affiliates, and subsidiaries, and their respective employees, agents, directors, officers, shareholders, members, and representatives, and our other space licensees and their employees and contractors.

    g) "**Kitchen Tech**" means the proprietary technology platform (including all related software, services and hardware) provided by our partner, which facilitates the Processing Services and enables interaction with Third Party Vendors while in the Licensed Space. Your use of the Kitchen Tech is subject to the terms of use available at https://www.tryotter.com/documents/legal/us/tou/kl-073120

    h) "**Orders**" means orders for the delivery of food and beverage products placed by the end users of Third Party Vendors apps, websites or other means for ordering.

    i) "**Permitted Use**" means the storing, preparing and packaging of your food and beverage products for delivery to your customers to fulfill Orders in the ordinary course of your restaurant and/or catering business.

    j) "**Taxes**" means taxes, levies, duties or other similar government assessments of any nature, including value added, sales and use, or withholding taxes.

    k) "**Third Party Vendors**" means third party delivery service platforms, point of sale vendors, online ordering platforms and/or other third party vendors or service providers that you may elect to use.

    l)

14. **Beta Products.** We are constantly looking to evolve and create new products and services to make your use of the licensed Kitchen more efficient. As such, we developed new beta products and services (collectively, "**Beta Products**") which you can use in accordance with the terms below. Orders placed via the new Beta Products shall be included within the definition of Orders, and as such, all other terms in the Agreement shall apply to your use of these services and these Orders. The following outlines the Beta Products that may be made available.

a) **Flipdish Kiosk and Online Ordering.** In the Delivery Hub, we may allow the public to access the Delivery Hub and place orders via a kiosk ("**Kiosk**") and/or through an online ordering portal ("**Web Platform**" together with Kiosk "**Digital Platform**"). You agree to offer your merchandise and products for purchase via the Digital Platform. The public may be able to place orders via the Digital Platform for brands owned and operated by you or also brands owned and operated by us (if you've signed an agreement to comanage Future Foods brands).

   i) **Please note that the Digital Platform services are provided in partnership by Flipdish. To use the Digital Platform, you must accept and agree to Flipdish's terms and conditions, which may be accessed when you sign on and access the Digital Platform.**

   ii) For each Order made through the Digital Platform, in addition to the Processing Fee in the Kitchen Services Agreement or any other Flipdish specific fees, you agree to pay the additional fees outlined below:
   (1) Program Fee of 4% of the Total Order, and
   (2) Credit Card Processing Fee of 2.9% of the Total Order plus the applicable sales tax.

   iii) You hereby grant us and our affiliates a worldwide, royalty-free, non-exclusive license to use Your IP for the purpose of providing the Digital Platform services. You will retain ownership of Your IP at all times. "**Your IP**" means your restaurant names, trademarks, other identifying indicators, your menu descriptions and pictures, and any marketing assets you provide us to help market your products.

   iv) You agree not to access, collect, store, retain, transfer, use, disclose, or otherwise process in any manner Digital Platform Data (defined below), except as required to fulfill the food or product order and as otherwise required to perform your obligations and services under the Agreement. If you become aware of any unauthorized access to Digital Platform Data, you agree to immediately notify us, consult and cooperate with investigations and potentially required notices, and provide any information reasonably requested by us. You agree to implement and use security procedures, protocols or access credentials as reasonably requested by us and will be responsible for damages resulting from your failure to comply. You will be responsible for damages resulting from sharing your login credentials with unauthorized third parties or otherwise permitting unauthorized access to your account. You may not allow any third party to copy, modify, rent, lease, sell, distribute, reverse engineer, or otherwise attempt to gain access to the source code of the Digital Platform; damage, destroy or impede the services provided through the Digital Platform; transmit injurious code; or bypass or breach any security protection on the Digital Platform. Digital Platform Data shall mean any information that we provide or make accessible to you through the Digital Platform, including without limitation any personal information. "**Digital Platform Data**" shall mean any information that we provide or make accessible to you through the Digital Platform, including without limitation Personal Information. "**Personal Information**" means information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular individual or household.

   v) In using the Digital Platform, you agree to: (i) continuously update your in-store menu, including the price of each item on such menu; (ii) continuously monitor your menu and store information on the Digital Platform, promptly make updates to reflect the most up-to-date products, pricing and other information or immediately notify us of any errors or changes in writing; (iii) accept all food or product orders placed from your then-current menu; (iv) prepare the orders for customer pickup at the designated time; (iv) process in the order in which they are received; (v) continuously update the pricing, availability, description, or other characteristics of the food or products; (vi) notify us if you closes earlier than your standard hours of operation or plans to close earlier than your standard hours of operation; provide the same utensils, napkins, bags and other materials that you would typically provide in a standard take-out or delivery order; and (vii) on an ongoing basis, review and confirm the transactions, fees and charges on orders via the Digital Platform, and promptly communicate to us and Flipdish of any inaccuracies.

   vi) YOU ACKNOWLEDGE THAT FLIPDISH IS PROVIDING THE DIGITAL PLATFORM SERVICES, INCLUDING THE COLLECTION AND DISBURSEMENT OF FEES AND PAYMENTS. YOU HEREBY WAIVE, RELEASE AND DISCHARGE FOREVER FULLY AND UNCONDITIONALLY RELEASE US, AND OUR AFFILIATES, AGENTS, REPRESENTATIVES, SUBSIDIARIES FROM ALL DAMAGES, CLAIMS, CAUSES OF ACTION, LOSSES, DEMANDS, JUDGEMENTS, ATTORNEYS' FEES ARISING FROM OR RELATED TO YOUR USE OF A BETA PRODUCT OR ANY ACTIONS OR INACTIONS OF FLIPDISH OR ANY OTHER THIRD PARTY PROVIDER THAT PROVIDES SERVICES UNDER THE DIGITAL PLATFORM. YOU ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND, AND HEREBY EXPRESSLY WAIVE, THE BENEFITS OF SECTION 1542 OF THE CIVIL CODE OF CALIFORNIA, AND ANY SIMILAR LAW OF ANY STATE OR TERRITORY, WHICH PROVIDES AS FOLLOWS: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

b) **Notwithstanding anything to the contrary, we may modify or discontinue the Beta Products at any time, and we can suspend or terminate your use of the Beta Products at any time with or without notice to you. You agree that we may unilaterally modify the terms and conditions (including fees owed by you) regarding the use of the Beta Products. In such an event, we will provide you with at least thirty (30) days notice of any modification. By continuing to use the Beta Products, you agree to such modification.**

c) The Beta Products may contain features, functionality or modules that will not be included in the final production version of the Beta Products, if released, or that will be marketed separately for additional fees. You expressly agree that we do not have an obligation to ensure the Beta Products function properly or at all. You hereby release Indemnitees for any losses, claims (known or unknown), expenses, or liability resulting from your use of the Beta Products. Further, you agree to indemnify, defend and hold Indemnitees harmless for any losses (including, without limitation, losses incurred in connection with any claims) arising from or related to your use of the Beta Products. This obligation shall survive any termination or expiration of the Agreement.  YOUR USE OF THE BETA PRODUCTS IS AT YOUR OWN RISK. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE AGREEMENT, OUR AND OUR AFFILIATES TOTAL LIABILITY

ARISING OUT OF OR RELATED TO YOUR USE OF THE BETA PRODUCTS SHALL BE LIMITED TO $500. THESE LIMITATIONS SHALL APPLY NOTWITHSTANDING ANY FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY.

## Kitchen Services Terms and Conditions    New Jersey – Belleville

These Kitchen Services Terms and Conditions ("**Terms and Conditions**"), taken together with an executed order form for Kitchen Services that references these Terms and Conditions ("**Order Form**"), form an agreement between the Licensor and Customer designated in the Order Form (the "**Kitchen Services Agreement**" or "**Agreement**"). If there is any conflict between these Terms and Conditions and an applicable Order Form, the Order Form shall prevail. If the same parties enter into multiple Order Forms, each Order Form shall be treated as a standalone agreement. Capitalized terms not defined in these Terms and Conditions shall be as defined in the applicable Order Form. You agree that the Order Form and the Terms and Conditions constitute our Confidential Information and shall not be disclosed to any third party.

500 Cortlandt Street BEL LLC

1.  **Kitchen Services**

a)  **Access and Use.** Subject to your compliance with the terms of the Agreement, we grant you and your employees a limited, non-transferable, non-exclusive, fee-bearing license, commencing on the Access Date and for the remainder of the Term, to access the Licensed Space identified in the applicable Order Form only for the Permitted Use. You agree that you are only receiving a limited license to use the Licensed Space and that you are not being granted a lease or other real property interest, nor are you receiving any ownership, leasehold estate, leasehold interest, or tenancy rights in the Licensed Space. You are not permitted to exclude us or our invitees, from the Licensed Space, and we, or anyone we authorize, may enter at any time, with or without notice to you, for any reasonable purpose, including for the purpose of inspecting, cleaning and maintaining the Licensed Space. You also agree that the Delivery Hub and the Licensed Space may be subject to inspections by food, fire and health and safety officials, all having the power to regulate your access and use of the Licensed Space, and you agree to promptly pay any fines or penalties imposed upon inspection if such fines or penalties arise from your acts or omissions.

500 Cortlandt St, Belleville NJ, 07109

i)  **Initial Access.** We strive to enable your access to the Licensed Space on the Access Date. You acknowledge, however, that the Licensed Space may not be available on the Access Date due to inspection, construction, cleaning or various other delays. In such an event, we will notify you of your adjusted Access Date, and the Term and your License Fee and other monthly fee payment obligations will be based upon the new Access Date. You agree that an adjustment of your Access Date as provided herein does not constitute a breach of the Agreement, and you agree that we shall have no liability to you whatsoever for the Licensed Space not being available by the Access Date, including for any staff or supply costs you may incur. You also agree that you are solely responsible for ensuring you have sufficient permits and licenses to prepare food within your Kitchen (and your Access Date will not be delayed if you have not obtained your required permits or licenses). We will be responsible for any facility-wide permits required by Applicable Law.

ii)  **Changes.** You agree to not make any Changes to the Licensed Space (including installing any signage or other branding inside or outside the Kitchen) without our prior written consent. If we agree to let you make a Change or if we make a Change at your request, you will be solely responsible for the costs for such Change. Your contractors or subcontractors may not be used for Changes without our prior written consent. Your approved contractors shall be properly licensed and insured as required in the applicable jurisdiction. You and your contractors shall abide by any rules we set on how, when and where Changes can be made to minimize disruption to the overall Delivery Hub. If you or your contractors fail to do so, we retain the right to prevent your contractors from finishing the work, and you agree to pay us for the costs to finish or remove the Changes. You must ensure that any Changes made by you or your contractors comply with applicable laws, including required inspections and permits. You acknowledge that you must still pay the License Fee and other applicable fees starting on the License Fee Start Date even if your approved Changes are pending, in process or not complete. You are solely responsible for all restoration costs to revert your Changes to the standard "as is" build similar to other Kitchens in the Delivery Hub.

b)  **Processing**

i)  **Processing Services.** You agree to use our order processing services to facilitate the fulfillment of your Orders to your customers using Third Party Vendors ("**Processing Services**"), which Processing Services may include, among other things, order verification, final packaging and labeling, Delivery Hub runner personnel or Third Party Vendors courier distribution. You may not use the Licensed Space to prepare food and beverage product orders that do not utilize our Processing Services. You understand that the Processing Services will be provided to you in exchange for your payment of the Processing Services Fee, which is in addition to the License Fee. You also agree to use the Kitchen Tech, provided by our partner subject to separate terms available at https://www.tryotter.com/documents/legal/us/tou/kl-073120 (by signing this Agreement you are agreeing to the separate Kitchen Tech terms). The use of the Kitchen Tech is required in order to provide you with the Processing Services and to ensure efficient operations at the Delivery Hub. The Processing Services Fee is calculated based on information from Third Party Vendors. The Processing Services Fee shall be calculated as follows: the percentage listed in the Order Form multiplied by the total order amount charged by customer, excluding sales tax, promotions, and other discounts ("Total Order"). Licensor may modify the Processing Services Fee by providing you with 30 days email notice.

ii)  **Limitations.** You understand that the services of Third Party Vendors and the Kitchen Tech are provided by third parties and as such, Licensor has no responsibility for the Third Party Vendors, Kitchen Tech, or the technology or services they provide. You agree that Licensor will not be liable to you or to any third party for any modification, suspensions, or discontinuance of the Kitchen Tech. Notwithstanding anything to the contrary, if you materially breach the Kitchen Tech terms of use and such terms of use are terminated in accordance therein, we may also immediately terminate this Agreement or suspend your access to the Kitchen Tech without any further obligation or liability.

1 – v070921

DocuSign Envelope ID: 51B8B2F9-7431-48FC-9268-A83D85A56EE0

iii) **Storage**. If you elect to license storage racks in dry, refrigerated and/or frozen storage in the Delivery Hub, we will make such storage racks available to you in exchange for your payment of the applicable Storage Services Fee (as communicated to you via email or the Kitchen Rules), which is in addition to the License Fee. You may increase your use of storage racks on a month to month basis by submitting a written request to us and we will attempt to accommodate your storage needs subject to availability. You may decrease your use of storage racks or terminate your right to use storage racks for any of our storage racks by providing at least 30 days' prior notice (email sufficient). You agree that we may update your Storage Services Fee to reflect your then-current use of storage racks.

*During the first three months of the initial Term, Customer shall receive a 50% discount off the License Fee.*

*We strive to accommodate customer needs subject to availability. You acknowledge that we may update your access date due to inspections, construction, cleaning or various other delays. In such an event, we will notify you of your adjusted access date.*

## 2. Operational Terms

a) **Rules and Restrictions**. You acknowledge that each Delivery Hub is subject to a set of rules established by Licensor that govern the use of the Delivery Hub and the Licensed Space ("**Kitchen Rules**"), and you agree to abide by the Kitchen Rules. You agree that we may unilaterally modify the Kitchen Rules at our discretion at any time upon notice to you; provided such modifications will be reasonable, non-discriminatory and will not conflict with this Agreement. You are required to keep your Kitchen(s) in a sanitary, clean and usable condition and in first class order, repair and appearance as required by the Kitchen Rules and Applicable Law. You agree to only use the Licensed Space for the Permitted Use and no other purpose. Only you and your employees may access the Delivery Hub. All other persons or entities must receive our prior written approval prior to access any portion of the Delivery Hub. You agree to not use the Licensed Space in a way that may be dangerous or a nuisance to other licensees in the Delivery Hub. You agree that we may move you to a different Kitchen within the same Delivery Hub with at least 30 days' prior notice (email sufficient) at our sole expense. We will apply the Kitchen Rules in a nondiscriminatory manner.

b) **Compliance**. You agree to comply with all Applicable Laws applicable to the operation of your business and use of the Licensed Space. In addition, you agree all finished Orders and all raw materials, ingredients, processing aids, and packaging material (i) will be stored and shipped under sanitary conditions, in strict compliance with all Applicable Laws, (ii) will be manufactured, labeled, and packaged in strict compliance with all Applicable Laws, as well as current good manufacturing and other industry practices, and (iii) will be wholesome, merchantable, fit for their intended purpose, and fit for human consumption, consistent with current good manufacturing and other industry practices, and Applicable Laws.

c) **Monitoring**. You agree to not take, and not let any third party take, any pictures, videos or other representations of the Licensed Space or other materials that you receive or have access to in the course of performance of the Agreement. We may utilize video and audio recording devices to monitor portions of the Delivery Hub, including your Kitchen(s) and the common areas. This technology may also include temperature and air flow sensors, electrical use meters, facial recognition software and other technology. You agree to notify your employees and your other approved visitors, in writing (e.g. through an employee handbook), of the existence of these devices and shall indemnify us for any claims, losses or expenses incurred by us for your failure to do so.

*Zena L. Powell*

d) **Vacating the Licensed Space**. At the end of the Term, we will perform a deep clean of your Kitchen(s) and deduct the cost from the Refundable One-Time Fee (approximately $250 per Kitchen). Notwithstanding the foregoing, you agree to ensure the Licensed Space is cleaned and in good order, repair and condition on your last day of access. You also agree to remove all of your furniture, equipment, personal property and trade fixtures from the Licensed Space ("**Remove**") not installed or provided by us (unless we otherwise agree in writing) prior to your last day of access. If you fail to do so, you agree (i) we have the right, at your expense, to keep, sell, or otherwise dispose of your furniture, equipment, personal property or trade fixtures that you did not remove by your last date of access, and (ii) you are required to pay us for any costs or losses incurred to get the Licensed Space ready for the next customer, including the costs of any deep cleaning or repairs and our lost revenue from the inability to license the space to the next customer due to your failure to Remove.

*Zena L. Powell   General Manager*
*July 27, 2021*

## 3. Fees and Payment Terms

a) **Fees**. You agree to pay us the fees for our services as specified in the Order Form, without setoff or deduction, in accordance with the terms of this Agreement. Operating Expenses and Storage Services Fees begin on your Access Date and may be prorated for partial months. License Fee payment obligations commence on the License Fee Start Date and may be prorated for partial months. You agree that any fees owed to us are non-refundable (except for the Refundable One-Time Fee). All fees due to us must be paid by the Payment Method indicated on the Order Form and by the due date indicated on the invoice (and if no date is given or specified in this Agreement, within thirty days of the invoice date). We reserve the right to require you to provide a credit card as a backup Payment Method. You agree to use our specified third party payment platform to facilitate your payments to us, and you acknowledge and agree to the payment platform terms available at https://www.cloudkitchens.com/documents/legal/us/ksa/ppt072720.pdf which are hereby incorporated by reference. If you fail to pay us on time, we have the right to collect interest on such sum equal to the lesser of 1.5% monthly or the highest rate permitted by law. You are also responsible for our costs in collecting unpaid fees, including any attorneys' fees and costs. During a Continuing Term (defined below), we may increase or decrease the License Fee, Processing Services Fee or Storage Services Fee upon sixty (60) days' notice.

b) **Refundable One-Time Fee**. On the Effective Date, you agree to pay us the Refundable One-Time Fee. Within 60 days of the expiration of the Agreement, we agree to return the Refundable One-Time Fee, excluding the cost to perform the deep clean (as outlined in Section 2(d)), subject first to the satisfaction of outstanding amounts owed to us. We may use the Refundable One-Time Fee to satisfy outstanding amounts owed by you or charges incurred by you, including penalty amounts or unforeseen amounts related to Changes or otherwise. Additionally, in the event you breach the Agreement without cure, you forfeit the Refundable One-Time Fee, and we reserve the right to pursue additional legal remedies for your breach. If we apply your Refundable One-Time Fee towards anything in accordance with the Agreement, you agree to immediately pay us an additional Refundable One-Time Fee (or pay an amount sufficient to restore the Refundable One-Time Fee to its original balance).

DocuSign Envelope ID: 51B8B2F9-7431-48EC-9268-A83D85AF5EF0

c) **Treatment of Operating Expenses**. You shall be responsible for all costs and fees we incur for utilities and other shared services applicable to the Licensed Space from and after the Access Date (collectively, "**Operating Expenses**"). Our reasonable estimate of your monthly Operating Expenses shall be billed to you each month. Such estimate shall be based on (i) metering and other reasonable methods of monitoring which are used to calculate a reasonable approximation and apportionment of your actual consumption of utilities, (ii) an equitable apportionment of all kitchens in the Delivery Hub that use such utilities and shared services; or (iii) a combination of (i) and (ii). On an annual basis (or more frequently if we elect), we may reasonably determine if the Operating Expenses incurred prior to the date of determination were more or less than the Operating Expenses payments you actually made prior to the date of such determination. If your payments exceed the actual Operating Expenses, then you will receive a credit towards your future Operating Expenses until reimbursed in full, and if your payments are less than the actual Operating Expenses, then you shall pay us the difference within 30 days following receipt of our invoice. Additionally, we may change your estimated monthly Operating Expenses (with email notice) if, in our reasonable discretion, we believe your actual Operating Expenses will exceed your estimated payments. If you fail to timely pay your estimated Operating Expenses or any reconciliation payments due hereunder, we may discontinue providing some or all such services hereunder, and you agree we are not liable for damages or losses resulting from such discontinuance. You agree that we are not responsible or liable for ensuring uninterrupted availability of any utilities or other services provided by or for you under the Agreement, except to the extent caused by our gross negligence. You are required to use our existing internet network, provided, you may use your own firewall, subject to our approval (which cannot be unreasonably withheld). You are solely responsible for all costs for maintaining, installing and testing your own firewall.

d) **Taxes**. The fees you owe to us do not include any Taxes. You are responsible for paying all Taxes associated with the Agreement and the services we provide except for Taxes assessable on our income or employees. Without limiting the foregoing, you agree to be the seller with respect to the sale of any food or products sold or distributed out of the Licensed Space and as such, you also agree to be responsible for the payment of any Taxes for such food or products. If you don't pay your Taxes (or the government alleges you haven't done so), we have the right to immediately terminate the Agreement. You are liable for, and must pay before delinquency, Taxes levied against any personal facility or trade fixtures placed by you in the Kitchen.

4. **Insurance**. We shall maintain commercial general liability insurance and property insurance for the Delivery Hub. You agree to maintain, during the Term: (a) a commercial general liability insurance policy, in accordance with Insurance Services Office Form CG 00 01, on an occurrence basis, including protection for your operations, completed operations and personal and advertising injury, covering the Kitchen and insuring use thereof against claims for injuries, death and property damage occurring on or about the Kitchen, with limits no less than two million dollars per occurrence; (b) workers' compensation insurance (with statutory limits if applicable) and Employer's Liability Insurance with limits no less than one million dollars per occurrence; (c) food borne illness insurance (with industry standard limits); (d) property insurance in amounts not less than full replacement cost value of your property and providing such form of protection against risk consistent with prevailing industry standards for property insurance (with no coinsurance penalty provision), covering the personal property (including any fixtures or equipment) located within the Delivery Hub (policy must also include loss of business income and extra expense for a minimum of twelve months); (e) business automobile liability insurance for all owned, non-owned and hired vehicles, including loss of property of others in your care, as well as the loss of use your property and property of others in your care with limits no less than one million dollars per occurrence and two million dollars general aggregate; and (f) if we approve for you to sell alcohol out of our space (in writing) and you are legally permitted to do so, Liquor Liability insurance, of at least one million dollars per occurrence and general aggregate limits of at least two million dollars. You agree to furnish a certificate of insurance evidencing the above policy limits. All liability insurance maintained by you must (i) name Licensor, its affiliates and their respective members, officers, directors, officials, employees, contractors, and volunteers (and its mortgagee, if applicable) as additional insured under such policy; (ii) be in a form reasonably satisfactory to us, with an insurance carrier reasonably satisfactory to us; and (iii) be primary insurance (at least as broad as ISO CG 20 01 04 13). Any insurance or self-insurance maintained by Licensor, its affiliates and their respective members, officers, directors, officials, employees, contractors, and volunteers, shall be excess of your insurance and shall not contribute with it. All such insurance is subject to modification or cancellation only upon ten (10) days' written notice to each certificate holder. The issuance of any insurance policy required under the Agreement, or the minimum limits specified in the Agreement with respect to your insurance coverage, will not be deemed to limit or restrict in any way your liability arising under or with respect to the Agreement. You hereby grant to Licensor a waiver of any right to subrogation which any of your insurers may acquire against the Licensor by virtue of the payment of any loss under such insurance. You agree to obtain any endorsement that may be necessary to affect this waiver of subrogation, but this provision applies regardless of whether or not the Licensor has received a waiver of subrogation endorsement from the insurer.

5. **Confidentiality.** Each party agrees to not use the other party's Confidential Information except as necessary for the performance of the Agreement and will not disclose the other party's Confidential Information to any third party except to those of the receiving party's employees and contractors who have a need to know such Confidential Information for the performance of the Agreement, provided that each such employee or contractor is bound by a written agreement that contains use and nondisclosure restrictions consistent with the terms set forth in the Agreement. You agree that the fact you have entered into the Agreement and are licensing space from us, and the terms of the Agreement, constitute our Confidential Information. Each party will employ all reasonable steps to protect the other party's Confidential Information from unauthorized use or disclosure, including the steps you take to protect its own Confidential Information. The foregoing obligations will not restrict the receiving party from disclosing the other party's Confidential Information: (a) pursuant to the order or requirement of a court, administrative agency, or other governmental body, provided that the receiving party give reasonable notice to the disclosing party to contest such order or requirement; and (b) to receiving party's legal or financial advisors, provided the receiving party is responsible for ensuring such information remains confidential. The receiving party is liable for any breaches of confidentiality by its employees, contractors, legal or financial advisors.

6. **Representations and Warranties**. Each party represents and warrants as to itself that (a) it has the right to enter into and perform the Agreement and that the individual signing the Order Form has the right to bind their respective company, and (b) it will not violate any Applicable Law or obligations to any third party by entering into and performing under the Agreement. You represent and warrant that you have all permits and licenses required to prepare and sell food and beverage products out of the Licensed Space (including any permits required for you to prepare food in the Kitchen).

7. **Disclaimers; Limits of Liability**

   a) **Disclaimers**. EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, (i) WE DO NOT MAKE ANY WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, REGARDING THE SUBJECT MATTER OF THE AGREEMENT, AND ALL WARRANTIES, INCLUDING IMPLIED WARRANTIES OF MERCHANTABILITY, CARE, NON-INFRINGEMENT, PERFORMANCE, SUITABILITY, AND FITNESS FOR A PARTICULAR PURPOSE, ARE HEREBY EXPRESSLY DISCLAIMED, AND (ii) THE LICENSED SPACE AND RELATED SERVICES, THE TECHNOLOGY AND RELATED HARDWARE, AND ANY OTHER GOODS, SERVICES, OR TECHNOLOGY THAT MAY BE PROVIDED BY US OR OUR PARTNERS HEREUNDER ARE PROVIDED "AS IS" AND "AS AVAILABLE." YOU BEAR ALL RISK OF LOSS OR DAMAGE TO YOUR FOOD AND BEVERAGE PRODUCTS. YOU AGREE THAT NEITHER WE, NOR ANY OF OUR AGENTS, HAVE MADE ANY REPRESENTATION OR WARRANTY WITH RESPECT TO THE LICENSED SPACE, THE DELIVERY HUB OR THE TECHNOLOGY, OR WITH RESPECT TO THEIR SUITABILITY FOR THE CONDUCT OF YOUR BUSINESS, EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT.

   b) **Limits of Liability**. TO THE FULLEST EXTENT PERMISSIBLE BY APPLICABLE LAW, WE SHALL NOT, AND OUR AFFILIATES SHALL NOT, BE LIABLE TO YOU OR ANY THIRD PARTY FOR ANY CONSEQUENTIAL, INCIDENTAL, INDIRECT, SPECIAL, PUNITIVE OR SIMILAR DAMAGES, WHETHER FORESEEABLE OR UNFORESEEABLE, REGARDLESS OF THE CAUSE OF ACTION UPON WHICH THEY ARE BASED, INCLUDING CLAIMS FOR LOSS OF GOODWILL OR LOST PROFITS, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IN NO EVENT SHALL WE BE LIABLE TO YOU OR TO ANY OTHER PARTY FOR ANY LOSS, COST, DAMAGE OR OTHER LIABILITY THAT RESULTS FROM ANY SCHEDULED OR UNSCHEDULED DOWNTIME OF THE KITCHEN TECH OR YOUR INABILITY TO ACCESS YOUR KITCHEN. NOTWITHSTANDING ANYTHING TO THE CONTRARY ELSEWHERE IN THE AGREEMENT, OUR TOTAL AGGREGATE LIABILITY TO YOU IN CONNECTION WITH THIS AGREEMENT WILL NOT EXCEED THE MONTHLY LICENSE FEES PAID BY YOU IN THE TWELVE (12) MONTHS PRECEDING THE EVENT THAT GAVE RISE TO THE CLAIM. NOTHING IN THIS SECTION SHALL LIMIT A PARTY'S LIABILITY FOR GROSS NEGLIGENCE, WILLFUL MISCONDUCT OR UNLAWFUL ACTIVITY.

8. **Indemnification**. You agree, at your sole expense, to indemnify, hold harmless and, at our election, defend Indemnitees from and against any and all losses, costs and expenses of any kind, including reasonable attorneys' fees, claim, demand or action, incurred by any Indemnitee arising from or related to: (a) your business, your food and beverage products or your use of Third Party Vendors; (b) your negligence or willful misconduct; (c) risks against which you are insured or required to be insured against as specified in the Agreement; (d) acts or omissions of your employees, contractors or any other of your invitees to the Licensed Space; or (e) a breach or alleged breach of the Agreement by you or your employees. You agree to not settle or otherwise dispose of any third party claim, demand or action against an Indemnitee without our prior written approval, which shall not be unreasonably withheld.

9. **Term and Termination**

   a) **Term**. The Agreement will begin as of the Effective Date and remain in effect until the end of the later of the Initial Term, Renewal Term or Continuing Term. Either party may terminate this Agreement by providing a written notice of non-renewal no later than 60 days prior ("**Notice**") to the end of the applicable Initial Term or Renewal Term. If neither party has provided Notice, at the end of the later of the (i) Initial Term or (ii) Renewal Term (if any), this Agreement shall continue until either party terminates this Agreement by providing at least sixty (60) notice ("**Continuing Term**"). For example, if the last day of the Initial Term is July 17 (and there is no Renewal Term) and you provide 60 days notice on August 1, then the Continuing Term will continue until (and the Agreement will terminate on) September 30.

   b) **Termination**. A party may terminate the Agreement in the event of a material breach by the other party, provided, such other party is provided with written notice of such breach and at least 30 days to cure the breach after receipt of such notice. Notwithstanding the foregoing, in addition, we may terminate the Agreement (including your right to access the Licensed Space) immediately upon written notice to you if any of the following occur: (i) you fail to make any payments owed to us and fail to cure within 7 days, (ii) you breach Sections 1(b) or 5 of this Agreement, (iii) you fail to use the Licensed Space within 15 days of the Access Date or communicate that you do not intend to use the Licensed Space, (iv) you breach the Agreement and the breach involves an illegal, hazardous or dangerous condition, including your failure (or an allegation that you have failed) to comply with all Applicable Laws, (v) you file for bankruptcy, have an administrator appointed over your business or assets, pursue a corporate reorganization, corporate voluntary arrangement, or similar, you make an assignment for the benefit of creditors, are insolvent, or admit you won't be able to meet your debts as they mature, or (vi) if any part of the Licensed Space is taken by the exercise of the power of eminent domain.

   c) **Effect of Termination**. Upon termination or expiration of this Agreement you may no longer access the Licensed Space. Outstanding payment obligations and Sections 5-13 will survive any termination or expiration of the Agreement. Without limiting our other rights or remedies, in the event the Agreement is terminated (except for our breach), you forfeit the Refundable One-Time Fee and you will owe the License Fees for the remainder of the Term.

10. **Force Majeure**. A "**Force Majeure Event**" means an event beyond the reasonable control of a party, which prevents the party from complying with its obligations under the Agreement, including an act of God (fire, earthquake, flood, drought, epidemic, pandemic, etc.), war or other hostilities, acts or threats of terrorism, strikes or acts of civil disturbance, utility outages, and shortages of materials or labor. In no event shall either party be considered in breach of this Agreement to the extent its obligations are prevented or delayed, directly or indirectly, by a Force Majeure Event, and the period of time for performance shall be extended until such event has ended. Notwithstanding anything to the

contrary, obligations to pay fees owed hereunder shall not be delayed, waived, canceled, or otherwise affected by a Force Majeure Event, even if you cannot use the Licensed Space due to the Force Majeure Event.

11. **Arbitration. BY ENTERING INTO THE AGREEMENT, EACH PARTY IS REQUIRED TO USE ARBITRATION TO RESOLVE CLAIMS OR DISPUTES ON AN INDIVIDUAL BASIS, AS FURTHER SET FORTH IN THIS SECTION.** Except for claims or disputes related to a party's intellectual property, each party agrees that any claim or dispute arising out of or relating to this Agreement, or the breach thereof, shall be settled by binding arbitration before a single arbitrator, and not in a court of law. The arbitration will be administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules. A party who desires to initiate arbitration must provide the other party with a written demand for arbitration as specified in such rules. Unless the parties agree in writing otherwise, the arbitration will be conducted in the city of Los Angeles, California. The award and decision of the arbitrator will be conclusive and binding upon all parties, and judgment upon the award may be entered in any court of competent jurisdiction. The arbitrator will have the right to include in the award any relief which he or she deems proper in the circumstances, only to the extent permitted by the Agreement and Applicable Law, provided that the arbitrator will not have the authority to award exemplary or punitive damages. The arbitrator shall award the prevailing party its reasonable attorneys' fees and expenses. Each party hereby agrees that arbitration will be conducted on an individual, not a class-wide, basis and that any arbitration proceeding between you and Licensor will not be consolidated with any other arbitration proceeding involving Licensor or any other person or entity.

12. **Miscellaneous.** Any notice or other communication to Licensor under this Agreement shall be in writing and either delivered to the address in the Order Form in person (effective when received) or by an overnight commercial delivery service (effective one business day after sending). You agree that we may use the email address on the Order Form to send you notices under this Agreement (effective on the day sent). You may not assign, convey, delegate, lease, sublet, sublicense or otherwise transfer in any manner this Agreement, or any of your rights, remedies or obligations hereunder, in whole or in part, by operation of law or otherwise, to any third party without our prior written consent, and any purported assignment or transfer by you in violation of this provision is void. We may assign or otherwise transfer this Agreement, including any of our rights, remedies or obligations, in whole or in part, at any time. The Agreement will be binding upon each party and its successors and permitted assigns. We may subcontract any of the services in our sole discretion. The Agreement may only be modified, supplemented or amended in a writing signed by both parties. No failure or delay by a party in exercising any right, power, or privilege under the Agreement will operate as a waiver hereunder. The invalidity or unenforceability of any provision of the Agreement will not affect the validity or enforceability of any other provision of the Agreement, all of which will remain in full force and effect. This Agreement shall be governed by the laws of the State of California, without regard to its choice of law rules. Subject to the section entitled "**Arbitration**" above, the parties agree that any dispute arising from or related to the Agreement must be resolved exclusively in Federal or State courts located in Los Angeles County, California. The Agreement contains the entire understanding of the parties regarding its subject matter, and supersedes all prior and related contemporaneous agreements and understandings between the parties. When used herein, the term "including" shall be deemed to mean "including, without limitation".

13. **Definitions.**

    a) "**Access Date**" means the estimated date you will be able to access your Kitchen (your actual first day of access may be pushed back or moved up due to inspection, construction, cleaning or various other delays).

    b) "**Applicable Laws**" means applicable federal, state, local, or other laws, rules, regulations, ordinances, or similar, including all applicable health and safety and employment and labor laws.

    c) "**Changes**" means any alterations, modifications, changes, or improvements to the Licensed Space made by either you or us.

    d) "**CPI Increase**" means the increase in the Consumer Price Index (CPI-U, All Urban Consumers, U.S. City Average, 1982/84=100) over the Base Index. The Base Index is that value published immediately prior to the Access Date.

    e) "**Confidential Information**" means information or materials that: (a) are disclosed in writing or orally and are either marked or identified as "confidential" or "proprietary" by the disclosing party at the time of disclosure; or (b) the receiving party knows or has reason to know, by the nature or circumstances surrounding their disclosure, should be treated as confidential, including technical, business, marketing, product and financial information, in any form or format; provided, however, that Confidential Information does not include information that: (i) is in or enters the public domain through no act or omission of the receiving party; (ii) a party lawfully received from a third party without restriction on use or disclosure and without breach of a non-disclosure obligation or expectation of confidentiality; (iii) a party knew prior to receiving such Confidential Information from the party who owns it and without restriction as to use or disclosure; or (iv) a party independently developed without use of, or access to, any Confidential Information.

    f) "**Indemnitees**" means Licensor and its parent, affiliates, and subsidiaries, and their respective employees, agents, directors, officers, shareholders, members, and representatives, and our other space licensees and their employees and contractors.

    g) "**Kitchen Tech**" means the proprietary technology platform (including all related software, services and hardware) provided by our partner, which facilitates the Processing Services and enables interaction with Third Party Vendors while in the Licensed Space. Your use of the Kitchen Tech is subject to the terms of use available at https://www.tryotter.com/documents/legal/us/tou/kl-073120

    h) "**Orders**" means orders for the delivery of food and beverage products placed by the end users of Third Party Vendors apps, websites or other means for ordering.

    i) "**Permitted Use**" means the storing, preparing and packaging of your food and beverage products for delivery to your customers to fulfill Orders in the ordinary course of your restaurant and/or catering business.

    j) "**Taxes**" means taxes, levies, duties or other similar government assessments of any nature, including value added, sales and use, or withholding taxes.

    k) "**Third Party Vendors**" means third party delivery service platforms, point of sale vendors, online ordering platforms and/or other third party vendors or service providers that you may elect to use.

    l)

14. **Beta Products.** We are constantly looking to evolve and create new products and services to make your use of the licensed Kitchen more efficient. As such, we developed new beta products and services (collectively, "**Beta Products**") which you can use in accordance with the terms below. Orders placed via the new Beta Products shall be included within the definition of Orders, and as such, all other terms in the Agreement shall apply to your use of these services and these Orders. The following outlines the Beta Products that may be made available.

   a) **Flipdish Kiosk and Online Ordering.** In the Delivery Hub, we may allow the public to access the Delivery Hub and place orders via a kiosk ("**Kiosk**") and/or through an online ordering portal ("**Web Platform**" together with Kiosk "**Digital Platform**"). You agree to offer your merchandise and products for purchase via the Digital Platform. The public may be able to place orders via the Digital Platform for brands owned and operated by you or also brands owned and operated by us (if you've signed an agreement to comanage Future Foods brands).

      i) **Please note that the Digital Platform services are provided in partnership by Flipdish. To use the Digital Platform, you must accept and agree to Flipdish's terms and conditions, which may be accessed when you sign on and access the Digital Platform.**

      ii) For each Order made through the Digital Platform, in addition to the Processing Fee in the Kitchen Services Agreement or any other Flipdish specific fees, you agree to pay the additional fees outlined below:
         (1) Program Fee of 4% of the Total Order, and
         (2) Credit Card Processing Fee of 2.9% of the Total Order plus the applicable sales tax.

      iii) You hereby grant us and our affiliates a worldwide, royalty-free, non-exclusive license to use Your IP for the purpose of providing the Digital Platform services. You will retain ownership of Your IP at all times. "**Your IP**" means your restaurant names, trademarks, other identifying indicators, your menu descriptions and pictures, and any marketing assets you provide us to help market your products.

      iv) You agree not to access, collect, store, retain, transfer, use, disclose, or otherwise process in any manner Digital Platform Data (defined below), except as required to fulfill the food or product order and as otherwise required to perform your obligations and services under the Agreement. If you become aware of any unauthorized access to Digital Platform Data, you agree to immediately notify us, consult and cooperate with investigations and potentially required notices, and provide any information reasonably requested by us. You agree to implement and use security procedures, protocols or access credentials as reasonably requested by us and will be responsible for damages resulting from your failure to comply. You will be responsible for damages resulting from sharing your login credentials with unauthorized third parties or otherwise permitting unauthorized access to your account. You may not allow any third party to copy, modify, rent, lease, sell, distribute, reverse engineer, or otherwise attempt to gain access to the source code of the Digital Platform; damage, destroy or impede the services provided through the Digital Platform; transmit injurious code; or bypass or breach any security protection on the Digital Platform. Digital Platform Data shall mean any information that we provide or make accessible to you through the Digital Platform, including without limitation any personal information. "**Digital Platform Data**" shall mean any information that we provide or make accessible to you through the Digital Platform, including without limitation Personal Information. "**Personal Information**" means information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular individual or household.

      v) In using the Digital Platform, you agree to: (i) continuously update your in-store menu, including the price of each item on such menu; (ii) continuously monitor your menu and store information on the Digital Platform, promptly make updates to reflect the most up-to-date products, pricing and other information or immediately notify us of any errors or changes in writing; (iii) accept all food or product orders placed from your then-current menu; (iv) prepare the orders for customer pickup at the designated time; (iv) process in the order in which they are received; (v) continuously update the pricing, availability, description, or other characteristics of the food or products; (vi) notify us if you closes earlier than your standard hours of operation or plans to close earlier than your standard hours of operation; provide the same utensils, napkins, bags and other materials that you would typically provide in a standard take-out or delivery order; and (vii) on an ongoing basis, review and confirm the transactions, fees and charges on orders via the Digital Platform, and promptly communicate to us and Flipdish of any inaccuracies.

      vi) YOU ACKNOWLEDGE THAT FLIPDISH IS PROVIDING THE DIGITAL PLATFORM SERVICES, INCLUDING THE COLLECTION AND DISBURSEMENT OF FEES AND PAYMENTS. YOU HEREBY WAIVE, RELEASE AND DISCHARGE FOREVER FULLY AND UNCONDITIONALLY RELEASE US, AND OUR AFFILIATES, AGENTS, REPRESENTATIVES, SUBSIDIARIES FROM ALL DAMAGES, CLAIMS, CAUSES OF ACTION, LOSSES, DEMANDS, JUDGEMENTS, ATTORNEYS' FEES ARISING FROM OR RELATED TO YOUR USE OF A BETA PRODUCT OR ANY ACTIONS OR INACTIONS OF FLIPDISH OR ANY OTHER THIRD PARTY PROVIDER THAT PROVIDES SERVICES UNDER THE DIGITAL PLATFORM. YOU ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND, AND HEREBY EXPRESSLY WAIVE, THE BENEFITS OF SECTION 1542 OF THE CIVIL CODE OF CALIFORNIA, AND ANY SIMILAR LAW OF ANY STATE OR TERRITORY, WHICH PROVIDES AS FOLLOWS: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

   b) **Notwithstanding anything to the contrary, we may modify or discontinue the Beta Products at any time, and we can suspend or terminate your use of the Beta Products at any time with or without notice to you. You agree that we may unilaterally modify the terms and conditions (including fees owed by you) regarding the use of the Beta Products. In such an event, we will provide you with at least thirty (30) days notice of any modification. By continuing to use the Beta Products, you agree to such modification.**

   c) The Beta Products may contain features, functionality or modules that will not be included in the final production version of the Beta Products, if released, or that will be marketed separately for additional fees. You expressly agree that we do not have an obligation to ensure the Beta Products function properly or at all. You hereby release Indemnitees for any losses, claims (known or unknown), expenses, or liability resulting from your use of the Beta Products. Further, you agree to indemnify, defend and hold Indemnitees harmless for any losses (including, without limitation, losses incurred in connection with any claims) arising from or related to your use of the Beta Products. This obligation shall survive any termination or expiration of the Agreement.  YOUR USE OF THE BETA PRODUCTS IS AT YOUR OWN RISK. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE AGREEMENT, OUR AND OUR AFFILIATES TOTAL LIABILITY

ARISING OUT OF OR RELATED TO YOUR USE OF THE BETA PRODUCTS SHALL BE LIMITED TO $500. THESE LIMITATIONS SHALL APPLY NOTWITHSTANDING ANY FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY.

**Order Form for Kitchen Services**         New Jersey – Belleville

This Order Form for Kitchen Services ("**Order Form**"), along with the Kitchen Services Terms and Conditions, available as of the Effective Date at https://www.cloudkitchens.com/documents/legal/us/ksa/ksa070921.pdf, and to be attached to the Order Form upon signature ("**Terms and Conditions**"), together form an agreement between the Licensor and Customer identified below ("**Kitchen Services Agreement**" or "**Agreement**"). Capitalized terms not defined in this Order Form shall be as defined in the Terms and Conditions. In this Agreement, "you" means Customer and "we" or "us" means Licensor.

**Licensor Information:**

| | |
|---|---|
| Name 500 Cortlandt Street BEL LLC , a Delaware limited liability company | |
| Address for Notices: 777 S. Figueroa Street, Floor 41, Los Angeles, California 90017 | |

| Contact: Limited Liability Company Manager | Email: sales@cloudkitchens.com | Phone: (888) 419-5458 |
|---|---|---|

Delivery Hub Address:  500 Cortlandt st, Belleville NJ, 07109

**Customer/Licensee Information:**

| |
|---|
| Name: Soul Kitchen , a Sole Proprietorship |
| Address for Notices: 20 Howard Drive, Apt V, Bergenfield NJ, 07621 |

| Contact: Zena Powell | Email: teoteojohnson@outlook.com |
|---|---|
| Phone: 5512753771 | EIN: 121608951 |

**Licensed Space:**

1   kitchen(s) in the Delivery Hub ("**Kitchen(s)**"), along with any designated storage racks (subject to separate fees) outside of the Kitchen(s) and including certain Delivery Hub common areas as designated by us from time to time (e.g., break rooms, etc.). The Kitchen is "as is" and built out in a similar manner to other kitchens in the Delivery Hub. Any Changes (i) shall be outlined in a separate improvements agreement provided by Licensor and (ii) must be approved by Licensor and paid for by Customer as further set forth in the Terms and Conditions**.** You are still responsible for beginning payment on the License Fee Start Date whether or not your access is delayed because of the Changes. The maximum amps per Kitchen is up to 60 amps.

**Important Dates:**

| | |
|---|---|
| Term: Period from Effective Date until the expiration of the Initial Term, Renewal Term(s) (if any) or any Continuing Term, whichever is later. | |
| Effective Date: Date of last signature below | Access Date: 2021-09-01 |
| Initial Term: 12    months beginning on License Fee Start Date | License Fee Start Date: 30    days after the Access Date, provided your Operating Expenses and Storage Services Fees begin on the Access Date. |

**Customer Fees:**

| | |
|---|---|
| Payment Method: | [ ] ACH    [ ] EFT    [X] Credit Card (as primary)    [ ] Credit Card (for backup)    [ ] Other [ n/a____ ] |
| License Fee: | $ 3600.00    per month ($ 3600.00    per Kitchen), starting on the License Fee Start Date. License Fee will be increased on each anniversary of the Access Date by the greater of (a) 3% or (b) the CPI Increase (defined in the Agreement). |
| Processing Services Fee: | 3% of the Total Order as defined in Section 1(b)(i). |
| Storage Services Fee: | The specific fees vary depending on the number of racks and type of storage you wish to use (freezer, dry, etc) and will be set out in the Kitchen Rules or communicated to you by email. Parties shall agree in writing (email sufficient) as to the number of racks and type from time to time. |
| Operating Expenses: | $ USD 1800.00 Plus electricity    per month ($ 1800    per Kitchen), as Customer's portion (estimated) for utilities and shared services. **The Operating Expenses commence on the Access Date.** |
| Refundable One-Time Fee: | $ 7200.00    , due upon the Effective Date. If you fail to pay us the Refundable One-Time Fee on the Effective Date, we can immediately terminate this Agreement by providing you with email notice. **You will not be allowed to access the Licensed Space if you have not paid the Refundable-One Time Fee. Return of your Refundable One-Time Fee is subject to Section 3(b).** |
| Setup Fee: | $ .00    , due prior to the Access Date. The Setup Fee is a one-time and nonrefundable fee used to cover our setup costs. |
| Beta Products Fees: | Some Delivery Hubs are equipped with the Digital Platform. If available and you use the Digital Platform you shall pay a Program Fee of 4% of the Total Order, and a Credit Card Processing Fee of 2.9% of the Total Order as further described in Section 14 (in addition to the Processing Services Fee). You may terminate your use of (or opt back into) the Digital Platform by providing three (3) days written notice to Licensor or by checking this box [ X ] |

**Kitchen Tech:**

You are required to use the Kitchen Tech in your Kitchen to ensure efficient operations at the Delivery Hub (e.g. so we can provide the Processing Services). The Kitchen Tech allows you to aggregate your orders from the following online ordering services for no additional fee: UberEats, DoorDash, Grubhub, and Postmates. Additional integrations (including with a point of sale or direct to consumer website) requires additional fees.

| Other Terms: | During the first three months of the Initial Term, Customer shall receive a 50% discount off the License Fee.<br><br>We strive to enable your access to the Licensed Space on the access date. You acknowledge however, that the Licensed Space may not be available on the Access date due to inspections, construction, cleaning or various other delays. In such an event, we will notify you of your adjusted access date. |
| --- | --- |

By signing below, each party confirms that it has read and hereby agrees to the terms set forth in this Agreement (including the Terms and Conditions available as of the Effective Date at https://www.cloudkitchens.com/documents/legal/us/ksa/ksa070921.pdf, and to be attached to the Order Form upon signature). The parties agree that electronic signatures shall have the same effect as originals. If there is any conflict between this Order Form and the Terms and Conditions, this Order Form shall prevail. The parties have executed this Agreement as of the date of the last signature below:

**Licensor:**

By: _____

Printed Name: Marcel Comtois

Title: General Manager

Date: July 30, 2021

**Customer:**

By: _____

Printed Name: Zena L. Powell

Title: Zena L. Powell General manager

Date: July 27, 2021

# EXHIBIT D

| TIMESTAMP_UTC_TIME | TIMESTAMP_UTC_DATE | TIMESTAMP_LOCAL_TIME |
|---|---|---|
| 12:27 AM | 10/12/2021 | 8:27 PM |
| 1:57 AM | 10/12/2021 | 9:57 PM |
| 2:24 AM | 10/12/2021 | 10:24 PM |
| 2:41 AM | 10/12/2021 | 10:41 PM |
| 1:53 AM | 10/15/2021 | 9:53 PM |
| 4:42 PM | 10/16/2021 | 12:42 PM |
| 1:11 AM | 10/17/2021 | 9:11 PM |
| 9:24 AM | 10/21/2021 | 5:24 AM |

| TIMESTAMP_LOCAL_DATE | PAYOUT_TIME | PAYOUT_DATE | STORE_ID | BUSINESS_ID |
|---|---|---|---|---|
| 10/11/2021 | 9:24 AM | 10/21/2021 | 2387244 | 947313 |
| 10/11/2021 | 9:24 AM | 10/21/2021 | 2387244 | 947313 |
| 10/11/2021 | 9:24 AM | 10/21/2021 | 2387244 | 947313 |
| 10/11/2021 | 9:24 AM | 10/21/2021 | 2387244 | 947313 |
| 10/14/2021 | 9:24 AM | 10/21/2021 | 2387244 | 947313 |
| 10/16/2021 | 9:24 AM | 10/21/2021 | 2387244 | 947313 |
| 10/16/2021 | 9:24 AM | 10/21/2021 | 2387244 | 947313 |
| 10/21/2021 | 9:24 AM | 10/21/2021 | 2387244 | 947313 |

| STORE_NAME | TRANSACTION_TYPE | TRANSACTION_ID |
|---|---|---|
| The Soul Kitchen (Cortlandt St) | DELIVERY | 1f05224c-8086-4bde-b2ca-945069943a31 |
| The Soul Kitchen (Cortlandt St) | DELIVERY | c5cc64c8-6dc3-4019-981c-a1135314bbde |
| The Soul Kitchen (Cortlandt St) | ERROR_CHARGE | 301087559 |
| The Soul Kitchen (Cortlandt St) | DELIVERY | 6a4f96d5-270f-4a62-a087-4d98f24fafaf |
| The Soul Kitchen (Cortlandt St) | DELIVERY | 0464a773-627a-41ff-98ee-e4a428d5cd60 |
| The Soul Kitchen (Cortlandt St) | ADJUSTMENT | 303435029 |
| The Soul Kitchen (Cortlandt St) | DELIVERY | d6743816-03a0-472c-b70e-984ea9613f00 |
| The Soul Kitchen (Cortlandt St) | PAYOUT | 178093571 |

| DOORDASH_ORDER_ID | DESCRIPTION | FINAL_ORDER_STATUS | CURRENCY |
|---|---|---|---|
| 69943a31 | Order Received Time: 2021-10-11 | Delivered | USD |
| 5314bbde | Order Received Time: 2021-10-12 | Delivered | USD |
| 5314bbde | Issue: 1 Fried Fish Dinner missing | Delivered | USD |
| f24fafaf | Order Received Time: 2021-10-12 | Delivered | USD |
| 28d5cd60 | Order Received Time: 2021-10-15 | Delivered | USD |
| 5314bbde | merchant_payment_adjustment | Delivered - Paid | USD |
| a9613f00 | Order Received Time: 2021-10-17 | Delivered | USD |
| NULL | NULL | N/A | USD |

| SUBTOTAL | TAX_SUBTOTAL | COMMISSION | COMMISSION_TAX_AMOUNT | MARKETING_FEES | CREDIT |
|---|---|---|---|---|---|
| $43.00 | $2.85 | $12.90 | $0.00 | $0.00 | $32.95 |
| $53.00 | $3.51 | $15.90 | $0.00 | $0.00 | $40.61 |
| $16.86 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| $16.00 | $1.06 | $4.80 | $0.00 | $0.00 | $12.26 |
| $17.00 | $1.13 | $5.10 | $0.00 | $0.00 | $13.03 |
| $16.86 | $0.00 | $0.00 | $0.00 | $0.00 | $16.86 |
| $66.00 | $4.74 | $16.20 | $0.00 | $12.99 | $41.55 |
| $140.40 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

| DEBIT | DOORDASH_TRANSACTION_ID | PAYOUT_ID | DRIVE_CHARGE |
|---|---|---|---|
| $0.00 | | 178093571 | $0.00 |
| $0.00 | 3068564145 | 178093571 | $0.00 |
| $16.86 | 3068701096 | 178093571 | $0.00 |
| $0.00 | 3068776459 | 178093571 | $0.00 |
| $0.00 | 3082582062 | 178093571 | $0.00 |
| $0.00 | 3090246444 | 178093571 | $0.00 |
| $0.00 | 3093445582 | 178093571 | $0.00 |
| $140.40 | NULL | 178093571 | $0.00 |

| TAX_REMITTED_BY_DOORDASH_TO_STATE | SUBTOTAL_FOR_TAX |
|---|---|
| $0.00 | $43.00 |
| $0.00 | $53.00 |
| $0.00 | $0.00 |
| $0.00 | $16.00 |
| $0.00 | $17.00 |
| $0.00 | $0.00 |
| $0.00 | $54.00 |
| $0.00 | $0.00 |

DOORDASH_FUNDED_SUBTOTAL_DISCOUNT_AMOUNT
NULL
NULL
NULL
NULL
NULL
NULL
NULL
NULL

MERCHANT_FUNDED_SUBTOTAL_DISCOUNT_AMOUNT
NULL
NULL
NULL
NULL
NULL
NULL
                                        12.00
NULL

| TIMESTAMP_UTC_TIME | TIMESTAMP_UTC_DATE | TIMESTAMP_LOCAL_TIME |
|---|---|---|
| 10:20 PM | 10/21/2021 | 6:20 PM |
| 11:03 PM | 10/21/2021 | 7:03 PM |
| 11:07 PM | 10/21/2021 | 7:07 PM |
| 12:44 AM | 10/22/2021 | 8:44 PM |
| 12:44 AM | 10/22/2021 | 8:44 PM |
| 1:32 AM | 10/22/2021 | 9:32 PM |
| 1:50 AM | 10/22/2021 | 9:50 PM |
| 12:18 AM | 10/23/2021 | 8:18 PM |
| 12:18 AM | 10/23/2021 | 8:18 PM |
| 12:20 AM | 10/23/2021 | 8:20 PM |
| 1:18 AM | 10/23/2021 | 9:18 PM |
| 2:04 AM | 10/23/2021 | 10:04 PM |
| 2:11 AM | 10/23/2021 | 10:11 PM |
| 2:17 AM | 10/23/2021 | 10:17 PM |
| 2:46 AM | 10/23/2021 | 10:46 PM |
| 3:03 AM | 10/23/2021 | 11:03 PM |
| 3:12 AM | 10/23/2021 | 11:12 PM |
| 3:46 AM | 10/23/2021 | 11:46 PM |
| 4:13 AM | 10/23/2021 | 12:13 AM |
| 4:43 AM | 10/23/2021 | 12:43 AM |
| 5:56 AM | 10/23/2021 | 1:56 AM |
| 4:26 PM | 10/23/2021 | 12:26 PM |
| 7:09 PM | 10/23/2021 | 3:09 PM |
| 9:26 PM | 10/23/2021 | 5:26 PM |
| 9:59 PM | 10/23/2021 | 5:59 PM |
| 10:01 PM | 10/23/2021 | 6:01 PM |
| 10:06 PM | 10/23/2021 | 6:06 PM |
| 10:40 PM | 10/23/2021 | 6:40 PM |

| | | |
|---|---|---|
| 5:41 PM | 10/24/2021 | 1:41 PM |
| 6:06 PM | 10/24/2021 | 2:06 PM |
| 6:07 PM | 10/24/2021 | 2:07 PM |
| 8:29 PM | 10/24/2021 | 4:29 PM |
| 9:18 PM | 10/24/2021 | 5:18 PM |
| 8:53 AM | 10/28/2021 | 4:53 AM |

| TIMESTAMP_LOCAL_DATE | PAYOUT_TIME | PAYOUT_DATE | STORE_ID | BUSINESS_ID |
|---|---|---|---|---|
| 10/21/2021 | 8:53 AM | 10/28/2021 | 2387244 | 947313 |
| 10/21/2021 | 8:53 AM | 10/28/2021 | 2387244 | 947313 |
| 10/21/2021 | 8:53 AM | 10/28/2021 | 2387244 | 947313 |
| 10/21/2021 | 8:53 AM | 10/28/2021 | 2387244 | 947313 |
| 10/21/2021 | 8:53 AM | 10/28/2021 | 2387244 | 947313 |
| 10/21/2021 | 8:53 AM | 10/28/2021 | 2387244 | 947313 |
| 10/21/2021 | 8:53 AM | 10/28/2021 | 2387244 | 947313 |
| 10/22/2021 | 8:53 AM | 10/28/2021 | 2387244 | 947313 |
| 10/22/2021 | 8:53 AM | 10/28/2021 | 2387244 | 947313 |
| 10/22/2021 | 8:53 AM | 10/28/2021 | 2387244 | 947313 |
| 10/22/2021 | 8:53 AM | 10/28/2021 | 2387244 | 947313 |
| 10/22/2021 | 8:53 AM | 10/28/2021 | 2387244 | 947313 |
| 10/22/2021 | 8:53 AM | 10/28/2021 | 2387244 | 947313 |
| 10/22/2021 | 8:53 AM | 10/28/2021 | 2387244 | 947313 |
| 10/22/2021 | 8:53 AM | 10/28/2021 | 2387244 | 947313 |
| 10/22/2021 | 8:53 AM | 10/28/2021 | 2387244 | 947313 |
| 10/22/2021 | 8:53 AM | 10/28/2021 | 2387244 | 947313 |
| 10/22/2021 | 8:53 AM | 10/28/2021 | 2387244 | 947313 |
| 10/23/2021 | 8:53 AM | 10/28/2021 | 2387244 | 947313 |
| 10/23/2021 | 8:53 AM | 10/28/2021 | 2387244 | 947313 |
| 10/23/2021 | 8:53 AM | 10/28/2021 | 2387244 | 947313 |
| 10/23/2021 | 8:53 AM | 10/28/2021 | 2387244 | 947313 |
| 10/23/2021 | 8:53 AM | 10/28/2021 | 2387244 | 947313 |
| 10/23/2021 | 8:53 AM | 10/28/2021 | 2387244 | 947313 |
| 10/23/2021 | 8:53 AM | 10/28/2021 | 2387244 | 947313 |
| 10/23/2021 | 8:53 AM | 10/28/2021 | 2387244 | 947313 |
| 10/23/2021 | 8:53 AM | 10/28/2021 | 2387244 | 947313 |
| 10/23/2021 | 8:53 AM | 10/28/2021 | 2387244 | 947313 |

| 10/24/2021 | 8:53 AM | 10/28/2021 | 2387244 | 947313 |
|---|---|---|---|---|

| 10/24/2021 | 8:53 AM | 10/28/2021 | 2387244 | 947313 |
|---|---|---|---|---|

| 10/24/2021 | 8:53 AM | 10/28/2021 | 2387244 | 947313 |
|---|---|---|---|---|

| 10/24/2021 | 8:53 AM | 10/28/2021 | 2387244 | 947313 |
|---|---|---|---|---|
| 10/24/2021 | 8:53 AM | 10/28/2021 | 2387244 | 947313 |
| 10/28/2021 | 8:53 AM | 10/28/2021 | 2387244 | 947313 |

| STORE_NAME | MERCHANT_STORE_ID | TRANSACTION_TYPE |
|---|---|---|
| The Soul Kitchen (Cortlandt St) | NULL | DELIVERY |
| The Soul Kitchen (Cortlandt St) | NULL | ERROR_CHARGE |
| The Soul Kitchen (Cortlandt St) | NULL | DELIVERY |
| The Soul Kitchen (Cortlandt St) | NULL | DELIVERY |
| The Soul Kitchen (Cortlandt St) | NULL | DELIVERY |
| The Soul Kitchen (Cortlandt St) | NULL | DELIVERY |
| The Soul Kitchen (Cortlandt St) | NULL | DELIVERY |
| The Soul Kitchen (Cortlandt St) | NULL | DELIVERY |
| The Soul Kitchen (Cortlandt St) | NULL | DELIVERY |
| The Soul Kitchen (Cortlandt St) | NULL | DELIVERY |
| The Soul Kitchen (Cortlandt St) | NULL | DELIVERY |
| The Soul Kitchen (Cortlandt St) | NULL | ERROR_CHARGE |
| The Soul Kitchen (Cortlandt St) | NULL | DELIVERY |
| The Soul Kitchen (Cortlandt St) | NULL | DELIVERY |
| The Soul Kitchen (Cortlandt St) | NULL | DELIVERY |
| The Soul Kitchen (Cortlandt St) | NULL | DELIVERY |
| The Soul Kitchen (Cortlandt St) | NULL | DELIVERY |
| The Soul Kitchen (Cortlandt St) | NULL | DELIVERY |
| The Soul Kitchen (Cortlandt St) | NULL | DELIVERY |
| The Soul Kitchen (Cortlandt St) | NULL | DELIVERY |
| The Soul Kitchen (Cortlandt St) | NULL | DELIVERY |
| The Soul Kitchen (Cortlandt St) | NULL | DELIVERY |
| The Soul Kitchen (Cortlandt St) | NULL | DELIVERY |
| The Soul Kitchen (Cortlandt St) | NULL | DELIVERY |
| The Soul Kitchen (Cortlandt St) | NULL | DELIVERY |
| The Soul Kitchen (Cortlandt St) | NULL | DELIVERY |
| The Soul Kitchen (Cortlandt St) | NULL | DELIVERY |
| The Soul Kitchen (Cortlandt St) | NULL | DELIVERY |
| The Soul Kitchen (Cortlandt St) | NULL | DELIVERY |

| | | |
|---|---|---|
| The Soul Kitchen (Cortlandt St) | NULL | DELIVERY |
| The Soul Kitchen (Cortlandt St) | NULL | DELIVERY |
| The Soul Kitchen (Cortlandt St) | NULL | DELIVERY |
| The Soul Kitchen (Cortlandt St) | NULL | DELIVERY |
| The Soul Kitchen (Cortlandt St) | NULL | DELIVERY |
| The Soul Kitchen (Cortlandt St) | NULL | PAYOUT |

| TRANSACTION_ID | DOORDASH_ORDER_ID | DESCRIPTION |
|---|---|---|
| 61525909-16e1-41fd-8e2d-28f102a1aea1 | 02a1aea1 | Order |
| 306244559 | 02a1aea1 | Issue: 1 Peach |
| 19eb9c00-b66a-4721-9c47-2974756f1b8e | 756f1b8e | Order |
| 08c218a5-7c3a-4eee-9a0f-4095facec8a1 | facec8a1 | Order |
| 931fc14a-7244-445f-91f2-27338e769672 | 8e769672 | Order |
| 1a2d0258-088c-4a83-96ce-688eefc5fadb | efc5fadb | NULL |
| 857bce93-61fa-42a1-bd64-6f8a67715167 | 67715167 | Order |
| 3980b001-e518-4e35-b783-5a50004864d7 | 004864d7 | Order |
| d9250ce9-7ab1-4b80-8d72-4e16f8cd9ba9 | f8cd9ba9 | Order |
| 8b77a621-2ea0-45d0-b293-cff20c3ed178 | 0c3ed178 | Order |
| 94201cf5-9665-49e7-be3e-ea4afc4b0341 | fc4b0341 | NULL |
| 306906759 | 0c3ed178 | Issue: 1 Fried |
| 39cc1117-cdc1-493b-91ae-b4976d75bd49 | 6d75bd49 | Order |
| 1112b034-c33a-44a6-9007-ca988bfb4baa | 8bfb4baa | Order |
| 2dd2dab1-e64a-4434-9799-9a4746feaeee | 46feaeee | Order |
| e1a0248e-2442-483a-91c2-ce66abfad8ae | abfad8ae | Order |
| 4d0f7982-c5e3-4056-8720-dca7933a462d | 933a462d | Order |
| 0a173441-d68f-412e-9b38-5853472256a8 | 472256a8 | Order |
| 55925ebe-d474-4394-80f7-3dbb2f0e341b | 2f0e341b | Order |
| 8c480799-89fe-4ef4-9fcb-4f55d6440874 | d6440874 | Order |
| 0ece129d-bda9-4cf4-bdc8-6a3af06c4026 | f06c4026 | Order |
| d01df8cf-2310-488a-8bd2-a93abb6ab255 | bb6ab255 | NULL |
| f49a3ac3-54df-4500-b40a-d431e8d9d7d8 | e8d9d7d8 | NULL |
| 972be1a1-4272-45df-ae8b-41d52cf8cefe | 2cf8cefe | NULL |
| 85b51cab-946e-445a-a674-be03457c0c72 | 457c0c72 | NULL |
| 31945d7d-27c1-4160-ac08-f84e369d2be2 | 369d2be2 | NULL |
| 61bf2412-de9a-48f7-aae6-94785c8f427b | 5c8f427b | NULL |
| | | Order |
| | | Received |
| | | Time: 2021-10-23 |
| | | 17:37:01.4921 53000 |
| | | Order Pickup |
| | | Time: 2021-10-23 |
| | | 22:40:10.7159 |
| d3955056-8745-48d9-9bc4-7248ac5e29aa | ac5e29aa | 34000 |

| | | |
|---|---|---|
| | | Order Received Time: 2021-10-24 15:25:47.061560000 |
| | | Order Pickup Time: 2021-10-24 17:41:13.276753000 |
| 8c333b1e-b63d-497c-a498-339c39748dec | 39748dec | Order Received Time: 2021-10-24 16:55:07.700900000 |
| | | Order Pickup Time: 2021-10-24 18:06:18.890155000 |
| 0e7a3a55-fe27-4ef9-83af-3901fc86575d | fc86575d | Order Received Time: 2021-10-24 16:19:03.370395000 |
| | | Order Pickup Time: 2021-10-24 18:07:57.083115000 |
| b2833e0d-15ee-4425-9c67-deef896c327f | 896c327f | Order Received Time: 2021-10-24 19:55:13.414215000 |
| | | Order Pickup Time: 2021-10-24 20:29:16.274888000 |
| 645de779-4d53-40fb-8c3e-6d508f6e561e | 8f6e561e | |
| 51759325-4afb-43bd-b55c-10ce41cfcb73 | 41cfcb73 | NULL |
| 179528705 | NULL | NULL |

| FINAL_ORDER_STATUS | CURRENCY | SUBTOTAL | TAX_SUBTOTAL | COMMISSION |
|---|---|---|---|---|
| Delivered | USD | 32 | 2.13 | 7.68 |
| Delivered | USD | 4.6 | 0 | 0 |
| Delivered | USD | 23 | 2.07 | 6.9 |
| Delivered | USD | 51 | 3.16 | 12.24 |
| Delivered | USD | 14 | 0.93 | 4.2 |
| Cancelled - Paid | USD | 14 | 0.93 | 4.2 |
| Delivered | USD | 13 | 1.17 | 3.9 |
| Delivered | USD | 17 | 1.13 | 5.1 |
| Delivered | USD | 53 | 2.81 | 12.72 |
| Delivered | USD | 26 | 1.72 | 7.8 |
| Cancelled - Paid | USD | 21 | 1.39 | 6.3 |
| Delivered | USD | 9.97 | 0 | 0 |
| Delivered | USD | 14.25 | 0.94 | 4.28 |
| Delivered | USD | 37 | 1.96 | 8.88 |
| Delivered | USD | 13 | 0.86 | 3.9 |
| Delivered | USD | 39 | 2.07 | 9.36 |
| Delivered | USD | 21.25 | 1.41 | 6.38 |
| Delivered | USD | 28 | 1.86 | 8.4 |
| Delivered | USD | 15 | 0.99 | 4.5 |
| Delivered | USD | 49 | 2.6 | 11.76 |
| Picked Up | USD | 38 | 2.01 | 1.82 |
| Cancelled - Paid | USD | 31 | 1.64 | 7.44 |
| Cancelled - Paid | USD | 14.25 | 0.94 | 4.28 |
| Cancelled - Paid | USD | 28 | 1.86 | 8.4 |
| Cancelled - Paid | USD | 28 | 1.86 | 8.4 |
| Cancelled - Paid | USD | 23 | 1.52 | 6.9 |
| Cancelled - Paid | USD | 24 | 1.59 | 7.2 |
| Delivered | USD | 36 | 1.91 | 8.64 |

| Delivered | USD | 36.5 | 1.93 | 8.76 |

| Delivered | USD | 44 | 2.33 | 10.56 |

| Delivered | USD | 29 | 1.92 | 8.7 |

| Delivered | USD | 40 | 2.12 | 9.6 |
| Cancelled - Paid | USD | 35 | 1.86 | 8.4 |
| N/A | USD | 581.53 | 0 | 0 |

| COMMISSION_TAX_AMOUNT | MARKETING_FEES | CREDIT | DEBIT | DOORDASH_TRANSACTION_ID |
|---|---|---|---|---|
| 0 | 7.39 | 19.06 | 0 | 3116744309 |
| 0 | 0 | 0 | 4.6 | 3117042513 |
| 0 | 0 | 18.17 | 0 | 3117077038 |
| 0 | 11.19 | 30.73 | 0 | 3117842440 |
| 0 | 0 | 10.73 | 0 | 3117842525 |
| 0 | 0 | 10.73 | 0 | 3117541148 |
| 0 | 0 | 10.27 | 0 | 3118324030 |
| 0 | 0 | 13.03 | 0 | 3123102051 |
| 0 | 11.59 | 31.5 | 0 | 3123102870 |
| 0 | 0 | 19.92 | 0 | 3123117249 |
| 0 | 0 | 16.09 | 0 | 3123071689 |
| 0 | 0 | 0 | 9.97 | 3124010834 |
| 0 | 0 | 10.91 | 0 | 3124066652 |
| 0 | 8.39 | 21.69 | 0 | 3124108530 |
| 0 | 0 | 9.96 | 0 | 3124299838 |
| 0 | 8.79 | 22.92 | 0 | 3124399352 |
| 0 | 0 | 16.28 | 0 | 3124451213 |
| 0 | 0 | 21.46 | 0 | 3124618604 |
| 0 | 0 | 11.49 | 0 | 3124728371 |
| 0 | 10.79 | 29.05 | 0 | 3124824878 |
| 0 | 8.59 | 29.6 | 0 | 3124995164 |
| 0 | 7.19 | 18.01 | 0 | 3125697372 |
| 0 | 0 | 10.91 | 0 | 3126597765 |
| 0 | 0 | 21.46 | 0 | 3127906860 |
| 0 | 0 | 21.46 | 0 | 3127911519 |
| 0 | 0 | 17.62 | 0 | 3127876573 |
| 0 | 0 | 18.39 | 0 | 3128088835 |
| 0 | 8.19 | 21.08 | 0 | 3127963526 |

| | | | | |
|---|---|---|---|---|
| 0 | 8.29 | 21.38 | 0 | 3131788630 |
| 0 | 9.79 | 25.98 | 0 | 3131925056 |
| 0 | 0 | 22.22 | 0 | 3131934361 |
| 0 | 8.99 | 23.53 | 0 | 3132746191 |
| 0 | 7.99 | 20.47 | 0 | 3132785261 |
| 0 | 0 | 0 | 581.53 | NULL |

| PAYOUT_ID | DRIVE_CHARGE | TAX_REMITTED_BY_DOORDASH_TO_STATE | SUBTOTAL_FOR_TAX |
|---|---|---|---|
| 179528705 | 0 | 0 | 25.6 |
| 179528705 | 0 | 0 | 0 |
| 179528705 | 0 | 0 | 23 |
| 179528705 | 0 | 0 | 40.8 |
| 179528705 | 0 | 0 | 14 |
| 179528705 | 0 | 0 | 14 |
| 179528705 | 0 | 0 | 13 |
| 179528705 | 0 | 0 | 17 |
| 179528705 | 0 | 0 | 42.4 |
| 179528705 | 0 | 0 | 26 |
| 179528705 | 0 | 0 | 21 |
| 179528705 | 0 | 0 | 0 |
| 179528705 | 0 | 0 | 14.25 |
| 179528705 | 0 | 0 | 29.6 |
| 179528705 | 0 | 0 | 13 |
| 179528705 | 0 | 0 | 31.2 |
| 179528705 | 0 | 0 | 21.25 |
| 179528705 | 0 | 0 | 28 |
| 179528705 | 0 | 0 | 15 |
| 179528705 | 0 | 0 | 39.2 |
| 179528705 | 0 | 0 | 30.4 |
| 179528705 | 0 | 0 | 24.8 |
| 179528705 | 0 | 0 | 14.25 |
| 179528705 | 0 | 0 | 28 |
| 179528705 | 0 | 0 | 28 |
| 179528705 | 0 | 0 | 23 |
| 179528705 | 0 | 0 | 24 |
| 179528705 | 0 | 0 | 28.8 |

| | | | |
|---|---|---|---|
| 179528705 | 0 | 0 | 29.2 |
| 179528705 | 0 | 0 | 35.2 |
| 179528705 | 0 | 0 | 29 |
| 179528705 | 0 | 0 | 32 |
| 179528705 | 0 | 0 | 28 |
| 179528705 | 0 | 0 | 0 |

DOORDASH_FUNDED_SUBTOTAL_DISCOUNT_AMOUNT
NULL
NULL
NULL
NULL
NULL
NULL
NULL
NULL
NULL
                                                        3.9
NULL
NULL
NULL
NULL
NULL
NULL
NULL
NULL
NULL
NULL
NULL
NULL
NULL
NULL
NULL
NULL
                                                        4.8




NULL

NULL

NULL

NULL

NULL
NULL
NULL

MERCHANT_FUNDED_SUBTOTAL_DISCOUNT_AMOUNT

| | |
|---|---|
| | 6.4 |
| NULL | |
| NULL | |
| | 10.2 |
| NULL | |
| NULL | |
| NULL | |
| NULL | |
| | 10.6 |
| NULL | |
| NULL | |
| NULL | |
| NULL | |
| | 7.4 |
| NULL | |
| | 7.8 |
| NULL | |
| NULL | |
| NULL | |
| | 9.8 |
| | 7.6 |
| | 6.2 |
| NULL | |
| NULL | |
| NULL | |
| NULL | |
| NULL | |
| | 7.2 |

7.3

8.8

NULL

8
7

NULL

# CloudKitchens®

# Invoice

| BILL TO | BILL FROM | | |
|---|---|---|---|
| **Soul Kitchen** | **500 CORTLANDT STREET BEL LLC** | **Invoice Number** | 4ad45 |
| | 500 Cortlandt St | **Date issued** | 2021-07-27 |
| | Belleville, NJ, 07109 | **Due Date** | 2021-07-28 |
| | | **Currency** | USD |

| ITEM | QUANTITY | UNIT PRICE | TOTAL PRICE |
|---|---|---|---|
| Refundable One Time Fee | 1 | $7,200 | $7,200.00 |

| | |
|---|---|
| **Subtotal** | $7,200.00 |
| **Total** | $7,200.00 |

Please pay your invoice by visiting manager.tryotter.com/billing or by using the following bank details for bank transfers (wire or ACH)

QUESTIONS?

If you have any questions regarding billing, please email us at billing@cloudkitchens.com.

| | |
|---|---|
| **Bank Name** | WELLS FARGO BANK, N.A. |
| **Routing Number** | 121000248 |
| **Account Number** | 4063019576259854O |
| **SWIFT Code** | WFBIUS6S |



Reports  Beta

Download

Order history

Locations

October 2021

Integrations

-$3,744.55

. LLC

Pay manually via wire transfer

Announcements  **2**

Order manager

**Billing**

Support

Settings

Reports  Beta

Order history

Locations

Integrations

$3,600.00

$300.00

$2,000.00

-$2,264.51

$3,635.49
$0.00
$109.06
**$3,744.55**
-$3,744.55
**$0.00**

:h out to billing@cloudkitchens.com with any questions.

Announcements   **2**

Order manager

Billing

Settings

# EXHIBIT E



FEDERAL TRADE COMMISSION
ReportFraud.ftc.gov

FTC Report Number

142363557

## Consumer Report To The FTC

The FTC cannot resolve individual complaints, but we can provide information about next steps to take.   We share your report with local, state, federal, and foreign law enforcement partners. Your report might be used to investigate cases in a legal proceeding. Please read our Privacy Policy to learn how we protect your personal information, and when we share it outside the FTC.

## About you

Name: ZENA POWELL

Email: TEOTEOJOHNSON@OUTLOOK.COM

Address:  20 Howard Davis Dr APT. V

Phone: 551-275-3771

City: BERGENFIELD   State: New Jersey   Zip Code: 07621

Country: USA

## What happened

ON JULY 22, 2021 I ENTERED I BEGAN A RELATIONSHIP WITH CLOUD KITCHENS VIA A ZOOM SALES CALL FOR ME TO EXPLORE MY OPTIONS OF OWNING A FOOD SERVICE BUSINESS. THE CALL WAS SET UP WITH GEORGIA MORHBACHER AND ON THE CALL TWO OTHER REPRESENTATIVES FROM CLOUD WERE PRESENT FROM THE ONBOARDING TEAM. I ALSO HAD MY SON TEO POWELL, JANICE JENNINGS, AND TEO JOHNSON PRESENT FOR THE ZOOM SALES CALL SO THEY COULD DECIDE AS A FAMILY IF THEY WOULD BE ASSISTING ME IN THIS BUSINESS VENTURE. ON THE CALL I HAD A LAUNDRY LIST OF QUESTIONS THAT I WENT OVER WITH GEORGIA INQUIRING ABOUT THE SERVICES AND GETTING TO NITTY-GRITTY OF THE COST MONTHLY TO ENTER INTO ANY OF THEIR KITCHENS. SHE THEN STATED TO ME IT WOULD BE $5500.00 MONTHLY FOR THE KITCHEN AND I STATED THEN IT WOULD NOT BE WORTH IT TO ME TO DO THAT FOR A 200 SQUARE FOOT KITCHEN AND WE HAVE NOT EVEN HIRED STAFF THAT BRICH AND MORTAR COST PER MONTH IS $3700.00 MONTHLY AND SO I WOULD HAVE TO DECLINE THIS OFFER AND THEN SHE BEGAN TO EXPLAIN THAT THERE ARE A NUMBER OF SERVICES PROVIDED INCLUDED IN THIS COST IT IS NOT JUST THE MONTHLY COMMERCIAL LEASING PAYMENT BUT NIGHTLY CLEANING OF MY KITCHEN IS INCLUDED, MENU CREATION AND MARKETING ASSISTANCE, DELIVERY PLATFORM ONBOARDING ASSISTANCE AND MANAGEMENT, WEEKLY HOOD CLEANING SERVICES, OIL DISPOSAL, AND THE REQUIRED STORAGE FOR ANY RESTAURANT TO OPERATE WITHIN THE SAFETY REQUIREMENTS ALONG WITH ONSITE SECURITY AND FOOD RUNNERS. THE OTHER REPRESENTATIVES CONFIRMED THIS AND I WENT INTO ASK DETAIL OF WHAT NIGHTLY CLEANING INCLUDED AND SHE STATED AGAIN OF MY KITCHEN AFTER THE END OF EACH DAYS BUSINESS CLEANING STAFF WILL COME IN AND CLEAN MY KITCHEN BECAUSE I AM DISABLED I KNEW I COULD NOT AFFORD TOHIRE STAFF INITIALLY SO IF THIS WAS NOT THE CASE THEN AGAIN I WOULD NOT BE ABLE TO ENTER INTO THIS CONTRACT AND IF ANYTHING OTHER THEN THIS SHOULD TAKE PLACE IT WOULD BECOME A LEGAL ISSUE FOR ME BECAUSE I AM INFORMING YOU I AM DIABLED AND THIS WOULD CAUSE BOTH FINANCIAL AND PHYSICAL HARDHSIP HEALTH WISE. SHE THEN STATED TO ME NO ITS INCLUDED AND THERE ARE NO OTHER ADDITIONAL COST BUT IF I TOOK THE DEAL NOW SHE WOULD GUARANTEE ME THE RATE OF 50% OFF AND THAT MY EXPENSE WOULD ONLY BE A FLAT FEE OF $3600. PER MONTH UNTIL JANUARY 2022. AFTER SIGINING ON 7/24/2021 I IMMEDIATELY RECEIVED A BILL FOR $7200 AND BEGAN THE ONBOARDING PROCESS. WHERE I SHORTLY LEARNED THAT THEY ACTUALLY DID NOTHING FOR ME BUT SEND INSTRUCTIONS ON WHAT TO DO MYSELF WHICH I ALREADY KNEW FROM RUNNING OTHER BUSINESSES. IT WAS THE FIRST SIGN OF BREACH AND BAIT AND SWITCH AS TIME WENT ON THEY TOOK THE MENU I SENT THEM FOR UPLAODING MULTIPLE TIMES AND LAUNCHED MY BRAND PRIOR TO ME APPROVING THE LAUNCH DATE ON DOOR DASH AND I WAS ALREADY RECEIVING ORDERS WHEN I WAS NOT YET IN POSSESSION OF THE SPACE I PAID TO OBTAIN. I DID NOT TAKE POSSESSION OF THE SPACE UNTIL SEPTEMBER LATE TO BE EXACT 9/9/2021 WHERE I MET HADIYAH FOR THE FIRST TIME AND WAS NOTIFIED THAT STORAGE IS A SEPARATE FEE OF 250 PER RACK WHICH IS A SEPARATE FEE OUTSIDE OF THE MONTHLY FEES WHICH IF I AM ALREADY PAYING OPERATIONAL FEES FOR THE ENTIRE FACILITY SHARED THEN I AM ALREADY PAYING FOR THE SAME STORAGE SPACE YOU ARE STATING IS SEPARATE FROM THE MONTHLY OPERATIONAL AND LICENSING FEES. I THEN EMAILED THEM ABOUT THE LAUNCH DATE AND OPERATIONAL COST BILL RECEIVED FOR SEPTEMBER OF $1098.67 AND I WAS NOT IN THE BUILDING HAD NO EQUIPMENT THERE AT ALL BUT RECEIVED AN INVOICE FOR SEPTEMBER WHICH I STATED THEY WERE

NOT SUPPOSE TO DO.

## How it started

| Date fraud began: | Amount I was asked for: | Amount I Paid: |
|---|---|---|
| 10/26/2021 | | $12,259.22 |
| Payment Used: | | How I was contacted: |
| Debit Card | | In Person |

## Details about the company, business, or individual

| Company/Person | | |
|---|---|---|
| Name:<br>CLOUD KITCHENS | | |
| Address Line 1:<br>777 TOWER 777 FIGUEROA ST | Address Line 2:<br>SUITE 4100 | City:<br>LOS ANGELES |
| State:<br>California | Zip Code:<br>90017 | Country:<br>USA |
| Email Address:<br>GEORGIA.MORHBACHER@CLOUDKITCHENS.COM | | |
| Phone:<br>888-419-5458 | | |
| Website:<br>https://cloudkitchens.com | | |
| Name of Person You Dealt With:<br>GEROGIA MORHBACHER | | |



## Your Next Steps

**If you paid a scammer with a credit or debit card:**

- File a dispute (also called a "chargeback") with your credit or debit card company.

  - Online: Log onto your credit or debit card company's website and go through the company's dispute process.

  - By phone: Call the phone number on the back of your card and tell them why you're filing a dispute.

- Follow up with a letter to your credit or debit card company. To protect any rights you may have, follow up in writing by sending a letter to the address listed for billing disputes or errors. Use our sample letter.

- Save your records. Keep any letters, notes, or emails related to the scam - they could help prove you're entitled to a refund if the credit or debit card company has any questions.

- Find out your rights at  ftc.gov/credit.

**Scam Advice:**

- Learn more about different scams and how to recover from them at    ftc.gov/scams.

- You also can file a report with your   state attorney general.

 ## What Happens Next

- Your report will help us in our efforts to protect all consumers. Thank You!

- We can't resolve your individual report, but we use reports to investigate and bring cases against fraud, scams, and bad business practices.

- We share your report with our law enforcement partners who also use reports to investigate and bring cases against fraud, scams, and bad business practices.

- We use reports to spot trends, educate the public, and provide data about what is happening in your community. You can check out what is going on in your state and metro area by visiting ftc.gov/exploredata .

- Investigations and cases do take time, but when we bring cases, we try to get money back for people. Check out ftc.gov/refunds  to see recent FTC cases that resulted in refunds.

# EXHIBIT G

**From:** no-reply@tryotter.com
**Sent:** Tuesday, July 27, 2021 10:14 AM
**To:** teoteojohnson@outlook.com
**Subject:** Your CloudKitchens invoice is ready for payment

otter

Hi Soul Kitchen

Your invoice for 500 CORTLANDT STREET BEL LLC is ready for review. Please click the button below to continue to your Otter account to view and pay your invoice by 11:59PM Jul 28, 2021. You can also find your invoice attached below.

**$7,200**                                    Due Jul 28, 2021

**Location**

500 CORTLANDT STREET BEL LLC

500 Cortlandt St
Belleville, NJ, 07109

**Pay Invoice**

If you have enabled autopay no further action is required, funds will be deducted from your selected payment method on the due date of your invoice.

Button not working? Click the following link below:
https://manager.tryotter.com/billing/135988bd-a46a-43fd-bb71-6fcf281b3768/invoice/4ad45414-7086-4fdd-bcd5-57a6f2eba49a

**We're here to help**

If you have any questions regarding billing, please email us at billing@cloudkitchens.com.

Best,
CloudKitchens team

Otter. All Rights Reserved.
Privacy Policy | Terms & Conditions

**From:** no-reply@tryotter.com
**Sent:** Tuesday, July 27, 2021 10:14 AM
**To:** teoteojohnson@outlook.com
**Subject:** Your CloudKitchens invoice is ready for payment

## otter

Hi Soul Kitchen

Your invoice for 500 CORTLANDT STREET BEL LLC is ready for review. Please click the button below to continue to your Otter account to view and pay your invoice by 11:59PM Jul 28, 2021. You can also find your invoice attached below.

**$7,200**                                  Due Jul 28, 2021

**Location**

500 CORTLANDT STREET BEL LLC

500 Cortlandt St
Belleville, NJ, 07109

**Pay Invoice**

If you have enabled autopay no further action is required, funds will be deducted from your selected payment method on the due date of your invoice.

Button not working? Click the following link below:
https://manager.tryotter.com/billing/135988bd-a46a-43fd-bb71-6fcf281b3768/invoice/4ad45414-7086-4fdd-bcd5-57a6f2eba49a

**We're here to help**

If you have any questions regarding billing, please email us at billing@cloudkitchens.com.

Best,
CloudKitchens team

Otter. All Rights Reserved.
Privacy Policy | Terms & Conditions

Belleville 500
Cortlandt Street.

We'd love to get
started by
introducing you to
our team and
walking through our
onboarding process
in detail during a
Welcome Call. **I will
reach out to get
that scheduled
shortly.**

**Kitchen
Onboarding**

Meet **Jordan
Palacios**, from the
Kitchen Onboarding
team. They will
ensure your kitchen
is planned,
permitted, and

**From:** Georgia Mohrbacher
**Sent:** Thursday, July 29, 2021 11:34 AM
**To:** teoteojohnson@outlook.com; shyanne.gaston@cloudkitchens.com; georgia.mohrbacher@cloudkitchens.com; richard.jordanpalacios@cloudkitchens.com; kira.sergacheva@cloudkitchens.com
**Cc:** USC-OB@cloudkitchens.com; kitchenonboarding-us@cloudkitchens.com
**Subject:** Welcome to CloudKitchens, Zena! K4 - New Jersey - Belleville

## CloudKitchens®

# Thank you for partnering with us!

Hi Zena,

Welcome to the CloudKitchens family! We are excited to have Soul Kitchen join us at New Jersey -

ready to operate. In order to keep you on schedule, please compile the following documents before the call:

1. **Detailed list of Food Service Equipment** that you plan to bring to your kitchen.
2. **Specification "Cut Sheets"**, one for each piece of equipment (learn more)

**Digital Onboarding**

Meet **Shyanne Gaston**, from the Digital Onboarding team. They will guide you to set up your accounts on the delivery platforms, and get them connected to our Kitchen Technology. Please take the following steps before the call:

1. **Watch** this video to familiarize yourself with the process
2. **Complete a draft of your menu** (with prices)

**Key Dates**

Please remember that your Kitchen Access Date is **9/1/2021**.

- Reimbursable Operating Expenses (ROEs) and Storage Fees (if applicable) will start on this date.
- Your monthly License Fee will start 30 days after your Access Date.
- In the case of delays in the facility's construction, we will let you know about

updated
dates.

We look forward to
working together
and speaking with
you soon!

Georgia
Mohrbacher

CloudKitchens®

CloudKitchens© 2021  All rights reserved.
0065G00000aDuAN

**From:** no-reply@tryotter.com
**Sent:** Thursday, July 29, 2021 10:02 AM
**To:** teoteojohnson@outlook.com
**Subject:** CloudKitchens - Payment successful



otter

Hi Soul Kitchen

Payment for your invoice at 500 CORTLANDT STREET BEL LLC has been successfully initiated to your payment method visa ****8788.

**$7,416**                    ✓ Paid on Jul 29, 2021

**Location**                  **Payment method**

500 CORTLANDT STREET BEL LLC   visa
500 Cortlandt St               8788
Belleville, NJ, 07109

View Invoice

If this was an error please immediately email us at billing@cloudkitchens.com and someone will further assist you.

Button not working? Click the following link below:
https://manager.tryotter.com/billing/135988bd-a46a-43fd-bb71-6fcf281b3768/invoice/4ad45414-7086-4fdd-bcd5-57a6f2eba49a

**We're here to help**

If you have any questions regarding billing, please email us at billing@cloudkitchens.com.

Best,
CloudKitchens team

Otter. All Rights Reserved.
Privacy Policy | Terms & Conditions

**From:** no-reply@tryotter.com
**Sent:** Sunday, September 5, 2021 12:42 AM
**To:** teoteojohnson@outlook.com
**Subject:** Your CloudKitchens invoice is ready for payment



otter

Hi Soul Kitchen

Your invoice for 500 CORTLANDT STREET BEL LLC is ready for review. Please click the button below to continue to your Otter account to view and pay your invoice by 11:59PM Sep 10, 2021. You can also find your invoice attached below.

**$1,066.67**                    Due Sep 10, 2021

**Location**

500 CORTLANDT STREET BEL LLC

500 Cortlandt St
Belleville, NJ, 07109

[ Pay Invoice ]

If you have enabled autopay no further action is required, funds will be deducted from your selected payment method on the due date of your

**From:** no-reply@tryotter.com
**Sent:** Tuesday, October 26, 2021 12:57 PM
**To:** teoteojohnson@outlook.com
**Subject:** [Action Required] CloudKitchens - Payment failed for invoice



otter

Hi Soul Kitchen

We want to inform you that payment for your invoice to 500 CORTLANDT STREET BEL LLC has failed. Please click the button below to re-initiate payment to a new payment method or after you've contacted your bank.

| $3,744.554,7 | ❌ Payment failed |
| --- | --- |

**Location**
500 CORTLANDT STREET BEL LLC
500 Cortlandt St
Belleville, NJ, 07109

**Payment method**
VISA
3551

Update payment method

invoice.

Button not working? Click the following link below:
https://manager.tryotter.com/billing/135988bd-a46a-43fd-bb71-6fcf281b3768/invoice/9d9ac2d8-5e14-4597-b6d0-30a03d2897c9

**We're here to help**

If you have any questions regarding billing, please email us at billing@cloudkitchens.com.

Best,
CloudKitchens team

Otter. All Rights Reserved.
Privacy Policy | Terms & Conditions



**$7,200.00**                                          Due Jul 28, 2021

**Location**                                          **Member**

500 CORTLANDT STREET BEL LLC                          Soul Kitchen

500 Cortlandt St
Belleville, NJ, 07109

Pay Invoice

## We're here to help

If you have any questions, please email us at billing@cloudkitchens.com

Best,
CloudKitchens team

| |

**From:** no-reply@tryotter.com
**Sent:** Friday, September 10, 2021 9:42 AM
**To:** teoteojohnson@outlook.com
**Subject:** CloudKitchens - Payment successful



otter

Hi Soul Kitchen

Payment for your invoice at 500 CORTLANDT STREET BEL LLC has
been successfully initiated to your payment method VISA ****8788.

**$1,098.670,1**                    ✓ Paid on Sep 10, 2021

**Location**                        **Payment method**
500 CORTLANDT STREET BEL LLC        VISA
500 Cortlandt St                    8788
Belleville, NJ, 07109

[ View Invoice ]

If this was an error please immediately email us at
billing@cloudkitchens.com and someone will further assist you.

Button not working? Click the following link below:

https://manager.tryotter.com/billing/135988bd-a46a-43fd-bb71-6fcf281b3768/invoice/9d9ac2d8-5e14-4597-b6d0-30a03d2897c9

**We're here to help**

If you have any questions regarding billing, please email us at billing@cloudkitchens.com.

Best,
CloudKitchens team

Otter. All Rights Reserved.
Privacy Policy | Terms & Conditions

December 8, 2021

Soul Kitchen
20 Howard Drive, Apt V.
Bergenfield, NJ 07621

Attn.: Zena Powell

**VIA EMAIL** - teoteojohnson@outlook.com

Re: Termination of Kitchen Services Agreement

Dear Ms. Powell:

Please be advised that the Kitchen Services Agreement ("Agreement") between 500 Cortlandt St BEL LLC, a Delaware limited liability company ("Licensor"), and Soul Kitchen ("Licensee" or "You"), pertaining to a limited license to use and occupy kitchen space ("Licensed Space"), is terminated effective immediately.

While You have continuously asserted that Licensor is not allowed to license commercial space, Licensor can do so and You are subject to the licensing contract you signed. Your refusals to pay for services do not allow you to use Licensor's services without payment. Unfortunately, You are in material breach of the Agreement because of non-payment of Your past due balance of $4,620.23 for fees through November 2021.[1] As You know, You have also rejected Licensor's prior proposal for payment in installments. Per Section 9(b)(i) of the Agreement, Licensor is terminating the Agreement, including Your right to access the Licensed Space, due to non-payment. The Agreement's first page states that the Refundable One-Time Fee is subject to Section 3(b). Section 3(b) of the Agreement entitles Licensor to retain Your Refundable One-Time Fee under these circumstances. Licensor will apply this amount to Your outstanding balance.

All remaining equipment and property belonging to You is required to be immediately removed. **The equipment and other property needs to be picked up between 9AM-5PM, by no later than December 17, 2021, otherwise, it will be deemed abandoned**. After this date, You will no longer be allowed access to the facility or the Licensed Space without our express consent. Licensor does not have space to store Your equipment if You refuse to pick it up. Please contact me immediately to coordinate the pickup of any additional equipment and other property belonging to You.

As You have stated multiple times that You intend to bring legal action because You do not believe a company can license the use of property, please be advised that all legal disputes must be brought in arbitration, as stated in Section 11 of the Agreement.

The foregoing is neither intended nor should it be construed as an exhaustive statement of the facts and matters at issue. Licensor reserves all of its legal and equitable claims, rights, defenses, and remedies. Thank You for Your attention to this important matter.

Sincerely,

/s/
Kira Sergacheva
kira.sergacheva@cloudkitchens.com
Operations Manager

---

[1] Please note that Licensor may assess to You any applicable additional fees, including cleaning fees and fees for any damages to the Licensed Space.